financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

- With respect to ARCP's internal controls, that they personally (i) were responsible for establishing and maintaining disclosure controls and procedures; (ii) designed or caused ARCP's controls or procedures to be designed to ensure that material information relating to ARCP and its consolidated subsidiaries was made known to them by others within those entities; (iii) designed or caused ARCP's controls over financial reporting and the preparation of financial statements for external purposes in accordance with GAAP; and (iv) evaluated the effectiveness of ARCP's disclosure controls and procedures and presented in ARCP's quarterly and annual filings their conclusions about the effectiveness of the disclosure controls and procedures.

## C.   Fourth Quarter 2011 Financial Results

96.    On March 19, 2012, ARCP issued a release announcing its financial results for the fourth quarter, ended December 31, 2011 ("4Q11").  The Company reported AFFO of $1,491,000, or $0.23 per share, and a net loss of ($1,117,000), or ($0.17) per share.  The release also noted that ARCP's "2012 AFFO should range from $0.94 to $0.96 per share."

97.    That same day, ARCP filed with the SEC its Form 10-K for the fiscal year ended December 31, 2011 (the "2011 Form 10-K").  The 2011 Form 10-K was signed by Defendants Schorsch and Block and reiterated ARCP's previously reported financial results.  It also represented that those financial results were accurate and presented in accordance with GAAP.  The 2011 Form 10-K further stated that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed therein.   The Form 10-K included SOX Certifications by Schorsch and Block, which were identical in all material respects to the certifications quoted in ¶ 95.

D.   **First Quarter 2012 Financial Results**

98.    On May 8, 2012, ARCP issued a release announcing its financial results for the first quarter, ended March 31, 2012 ("1Q12").   ARCP reported a 1Q12 AFFO of $1,583,000, or $0.22 per share, and a net loss of ($630,000), or ($0.09) per share. Defendant Schorsch was quoted in the release, stating:

> We continue to execute on our strategy of assembling a well-diversified portfolio of investment properties containing vintage net leases at attractive prices. . . . We are focused on increasing core earnings within our expanding portfolio. . . . We believe the corresponding results to ARCP's earnings are accretive to our existing common stockholders.

99.    The release also announced that ARCP was increasing its 2012 estimated AFFO, stating that in "March 2012, the Company estimated that 2012 AFFO should range from $0.94 to $0.96 per share . . . . [T]he Company is revising its 2012 estimated AFFO per share range to $1.04 to $1.07."

100.    Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 1Q12 financial results.  During the conference call, Defendant Schorsch commented that ARCP's "external management structure allows us to keep overhead low."   Additionally, in describing the revision to AFFO estimates, Defendant Schorsch stated that his upward adjustment of the Company's FY12 AFFO guidance by 11.5% was "due to the fact that the acquisitions that we have made continue to perform."

101.    On May 9, 2012, ARCP filed its Form 10-Q for the period ended March 30, 2012 with the SEC (the "1Q12 Form 10-Q").  The 1Q12 Form 10-Q was signed by Defendants Schorsch and Block and reiterated ARCP's previously reported financial results.  It also represented that the financial results contained therein were accurate and

presented in accordance with GAAP, that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed.  The 1Q12 Form 10-Q also included Defendants Schorsch's and Block's SOX Certifications, identical in all material respects to the certification quoted in ¶ 95.

102.    On or about June 18, 2012, ARCP raised $30.5 million via the sale of 3.25 million newly issued shares of ARCP common stock at $10 per share (the "June 2012 Equity Offering"), pursuant to a false registration statement filed May 25, 2012, along with a prospectus filed June 14, 2012, which was incorporated therein (collectively, the "June 2012 Equity Offering Documents").  The June 2012 Equity Offering Documents included ARCP's 1Q12 financial results, as well as its 1Q12 AFFO.

### E.    Second Quarter 2012 Financial Results

103.    On July 31, 2012, ARCP issued a release announcing its financial results for the second quarter, ended June 30, 2012 ("2Q12"), including a net loss of ($2.04 million), or ($0.28) per share, and AFFO of $1.9 million, or $0.25 per share. Emphasizing that "our core earnings have increased significantly," Defendant Schorsch commented on the Company's financial results, stating:

> Since our initial public offering, we have continually and consistently demonstrated our ability to grow earnings through accretive acquisitions. . . the proceeds from two recently completed follow-on offerings of common stock, the issuance of convertible preferred stock and operating partnership units, and prudent use of our cost effective credit facility.

> We are especially pleased to be able to raise our earnings guidance for calendar year 2012 by 8.5%, clarifying fiscal year 2012 guidance for AFFO of $1.13 to $1.16 per share, or $0.09 per share based on the mid-points of the respective ranges.  Furthermore, we are initiating preliminary guidance for 2013, at AFFO levels of 41.25 to $1.28 per share . . . thereby targeting AFFO growth of over 10% for 2013.

104.   On August 1, 2012, ARCP convened a conference call with analysts and investors to discuss the Company's 2Q12 financial results.  During the conference call, Defendants Schorsch and Block reiterated the increased 2012 AFFO guidance change outlined in the July 31, 2012 release, as well as the 2013 AFFO guidance described in the release.  Commenting on the Company's growth, Defendant Schorsch stated, "[s]ince our IPO we have consistently demonstrated our ability to grow our earnings through accretive acquisitions," and noted that ARCP was "targeting AFFO growth of an additional 10% for 2013 on top of the 8½ % for 2012."  Also on August 1, 2012, ARCP filed its Form 10-Q for the period ended June 30, 2012 with the SEC (the "2Q12 Form 10-Q"), which was signed by Defendants Schorsch and Block.  The 2Q12 Form 10-Q reiterated ARCP's previously reported financial results and represented that those financial results were accurate and presented in accordance with GAAP.  It also represented that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed therein.  The 2Q12 Form 10-Q also included Defendants Schorsch's and Block's SOX Certifications, identical in all materials respects to the certification quoted in ¶ 95.

105.   On August 1, 2012, ARCP filed a Form S-3 (the "2012 Shelf Registration Statement") with the SEC, which was automatically updated to incorporate by reference each of ARCP's subsequently filed Forms 10-K and 10-Q, as well as the Company's offering materials identified herein.  The 2012 Shelf Registration Statement was signed by Defendants Schorsch and Block.

**F.**    **Third Quarter 2012 Financial Results**

106.   On October 29, 2012, ARCP issued a release announcing its financial results for the third quarter, ended September 30, 2012 ("3Q12"). The Company reported 3Q12 AFFO of $3.1 million, or $0.28 per share, and a net loss of ($804,000), or ($0.09) per share. Commenting on ARCP's "core earnings," Defendant Block remarked:

> During the quarter ended September 30, 2012, the Company generated AFFO of $3.1 million, or $0.28 per share computed using basic weighted average shares outstanding. This represents a 15.0% increase in AFFO per share compared to the second quarter ended June 30, 2012. Further, our recently announced 'at the market' or ATM program will provide equity capital allowing us to purchase properties accretive to our dividend, fueling our growth strategy.

107.   Also on October 29, 2012, ARCP filed its Form 10-Q for the period ended September 30, 2012, with the SEC (the "3Q12 Form 10-Q"), which was signed by Defendants Schorsch and Block, and reiterated ARCP's previously reported financial results, represented that those financial results were accurate and presented in accordance with U.S. GAAP, represented that the Company's internal controls were effective, represented that any material changes to the Company's internal controls over financial reporting were disclosed, and included Defendants Schorsch's and Block's SOX Certifications, identical in all material respects to the certification quoted in ¶ 95.

108.   On October 30, 2012, ARCP held a conference call with analysts and investors to discuss the Company's 3Q12 financial results. During the call, Defendant Block reiterated the 3Q12 AFFO results disclosed in the October 29, 2012, release, while Defendant Schorsch commented that the 3Q12 results demonstrated that their strategy

permitted them to "grow three quarters in a row substantially our AFFO, which we believe is our primary measure."

109.    The statements referenced above in ¶¶ 93-108 each were materially false and misleading and omitted material facts when made.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch, and Block, were:

<blockquote>

(a)    Contrary to the statements referenced above in ¶¶ 94-96, 98-100, 103-104, 106, 108, ARCP's financial statements, including reported AFFO and earnings (or losses), were materially false and misleading, did not accurately portray the Company's financial performance, and were not prepared in accordance with GAAP;

(b)    Contrary to the statements referenced above in ¶¶ 95, 97, 104, 107, the Company lacked the internal financial and disclosure controls necessary to ensure that (i) its SEC filings were timely reviewed for accuracy; (ii) the estimates used to formulate its reported AFFO were reasonable and appropriately calculated; (iii) its reported AFFO was accurate; (iv) its formulation of AFFO guidance was reasonable, as was the Company's periodic reassessment of its ability to meet that guidance; (v) material changes made by management to ARCP's SEC filings and public statements were approved by the Audit Committee before dissemination; (vi) the Company would assess, authorize and monitor millions of dollars of related-party transactions, overseen by Defendants Schorsch and Block, between ARC Advisors and its affiliates, each of which was owned and/or controlled by Defendants Schorsch, Block, and other senior executives; (vii) the Company could calculate and track multimillion dollar grants of equity-based compensation; and (viii) the Company could undertake basic reconciliation and monitoring functions necessary to enable it to timely record and reconcile cash payments that it had received;

(c)    Contrary to the statements referenced above in ¶¶ 95, 97, 104, 107, Defendants Schorsch and Block were aware from their review of evaluation of the effectiveness of the Company's internal controls and financial reporting processes that the Company lacked reliable internal controls over financial reporting;

(d)    Contrary to the statements referenced above in ¶¶ 94, 96, 98-100, 103-104, 106, 108, the only way the Company could post AFFO

</blockquote>

growth at the reported levels was by making additional acquisitions using ARCP securities that were artificially inflated as a result of the wrongdoing detailed herein;

(e)     Contrary to the statements referenced above in ¶¶ 94-108, as a result of (a)-(d) above, Defendants ARCP, Schorsch, and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements were accurate and free from material misstatements.

### G.     ARCT III Merger

110.    On December 17, 2012, ARCP issued a release announcing that it had entered into an agreement to acquire the outstanding shares of ARCT III in a transaction valued at approximately $3 billion, and that the transaction was expected to close during 2Q13.  Commenting on the proposed merger, Defendant Block stated:  "We are guiding to AFFO per share in 2013 of $0.93, and $1.08 in 2014, which translates to 16% growth in earnings, about 4 times our peer group.  Assuming ARCP trades at a 15 times multiple, the implied share price is close to $14 for 2013."

111.    On January 22, 2013, the ARCP Board and ARCT III caused a Registration Statement to be filed with the SEC on Form S-4, and disseminated a Joint Proxy Statement/Prospectus (collectively, the "ARCT III Registration Statement/Proxy") to shareholders.  A copy of the merger agreement for the transaction was attached as Annex A to the ARCT III Registration Statement/Proxy and was incorporated by reference therein.  The ARCT III Registration Statement/Proxy was prepared, reviewed and/or signed by Defendants ARCP, Schorsch, and Block.

112.    The ARCT III Registration Statement/Proxy represented that the ARCT III board had unanimously determined that the merger was "advisable, fair to, and in the best

interests of ARCT III and its stockholders."  Likewise, the ARCP Board unanimously recommended that the transaction be approved.

113.    The ARCT III Registration Statement/Proxy incorporated by reference ARCP's 2011 Form 10-K, 1Q12 Form 10-Q, 2Q12 Form 10-Q and 3Q12 Form 10-Q, each of which was signed by Defendants Schorsch and Block, containing ARCP's financial results for the respective quarter, and assured investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

114.    Section 5.7 (c) of the ARCT III Merger Agreement represented that:

> (a) ARCP and its subsidiaries "maintain a system of internal accounting controls sufficient to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP.";

> (b) the members of the audit committee of ARCP's Board of Directors had been informed of "all significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting that are reasonably likely to adversely affect [ARCP]'s ability to record, process, summarize and report financial data."

115.    Section 5.7(c) of the ARCT III Merger Agreement further represented that:

[ARCP] ha[d] established and maintains disclosure controls and procedures (as such term is defined in Rule 13a-15 promulgated under the Exchange Act) designed to ensure that material information relating to [ARCP] required to be included in reports filed under the Exchange Act, including its consolidated subsidiaries, is made known to [ARCP's] principal executive officer and its principal financial officer by others within those entities, particularly during the periods in which the periodic reports required under the Exchange Act are being prepared, and, to the knowledge of [ARCP], such disclosure controls and procedures are effective in timely alerting [ARCP's] principal executive officer and its principal financial

officer to material information required to be included in [ARCP's] periodic reports required under the Exchange Act.

116. Section 5.7(a) of the ARCT III Merger Agreement also contained a representation by ARCP that its filings with the SEC "complied in all material respects with the requirements of the Securities Act or the Exchange Act, as the case may be, and the applicable rules and regulations of the SEC thereunder," and did not contain "any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements made therein, in the light of the circumstances under which they were made, not misleading."

117. Section 5.8(a) of the ARCT III Merger Agreement further represented that:

None of the information supplied or to be supplied in writing by or on behalf of [ARCP] for inclusion or incorporation by reference in (i) the Form S-4 [Registration Statement] will, at the time such document is filed with the SEC, at any time such document is amended or supplemented or at the time such document is declared effective by the SEC, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, or (ii) the Joint Proxy Statement will, at the date it is first mailed to the stockholders of [ARCT III and ARCP], at the time of the [ARCT III] Stockholder Meeting and the [ARCP] Stockholder Meeting, at the time the Form S-4 is declared effective by the SEC or at the Effective Time, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading.

118. Section 6.2(c)(xv) of the ARCT III Merger Agreement also contained a representation by ARCP that it would "maintain all financial books and records in all material respects in accordance with GAAP."

119.   The statements referenced above in ¶¶ 110-118 were each materially false and misleading and omitted material facts when made.   The facts, which were then known to or recklessly disregarded by Defendants ARCP, Schorsch, and Block, were:

(a)   Contrary to the statements referenced in ¶¶ 110, 116-118, the Company's financial statements, including reported AFFO and earnings (or losses) were materially false and misleading, and did not accurately portray the Company's financial performance, and were not prepared in accordance with GAAP;

(b)   Contrary to the statements referenced in ¶¶ 113-115, the Company lacked the internal financial and disclosure controls necessary to ensure that (i) its SEC filings were timely reviewed for accuracy; (ii) the estimates used to formulate its reported AFFO were reasonable and appropriately calculated; (iii) its reported AFFO was accurate; (iv) its formulation of AFFO guidance was reasonable, as was the Company's periodic reassessment of its ability to meet that guidance; (v) material changes made by management to ARCP's SEC filings and public statements were approved by the Audit Committee before dissemination; (vi) the Company would assess, authorize and monitor millions of dollars of related-party transactions, overseen by Defendants Schorsch and Block, between ARC Advisors and its affiliates, each of which was owned and/or controlled by Defendants Schorsch, Block, and other senior executives; (vii) the Company could calculate and track multimillion dollar grants of equity-based compensation; and (viii) the Company could undertake basic reconciliation and monitoring functions necessary to enable it to timely record and reconcile cash payments that it had received;

(c)   Contrary to the statements referenced in ¶¶ 113-115, Defendants Schorsch and Block were aware from their review of evaluation of the effectiveness of the Company's internal controls and financial reporting processes that the Company lacked reliable internal controls over financial reporting;

(d)   Contrary to the statements referenced in ¶ 110, the only way the Company could post AFFO growth at the reported levels was by making additional acquisitions using ARCP securities that were artificially inflated as a result of the wrongdoing detailed herein;

(e)   Contrary to the statements referenced in ¶¶ 113-118, as a result of (a)-(d) above, Defendants ARCP, Schorsch, and Block had no

reasonable basis to believe, and in fact did not believe, that ARCP's financial statements were accurate and free from material misstatements;

(f)     Contrary to the statement referenced in ¶ 112, the ARCT III merger was primarily a vehicle for generating more than $100 million in fees to be paid to Schorsch-related entities;

(g)     Contrary to the statement referenced in ¶ 112, as a result of (a)-(f), above, ARCP, Defendants Schorsch, and Block had no reasonable basis to believe, and did not in fact believe, that the ARCT III Merger was "fair to," or in the best interests of, shareholders.

### H.    January 2013 Equity Offering

120.    On or about January 29, 2013, ARCP completed the offering of over 2 million newly issued shares of ARCP common stock at $13.47 per share for proceeds of approximately $26.5 million (the "January 2013 Equity Offering").  The January 2013 Equity Offering was conducted pursuant to the 2012 Shelf Registration Statement (signed by Defendants Schorsch and Block) and Prospectus Supplements dated January 22, January 24 and January 25, 2013 (collectively, the "January 2013 Equity Offering Materials").  The January 2013 Equity Offering Materials specifically incorporated by reference ARCP's 2011 Form 10-K, 1Q12, 2Q12 and 3Q12 Form 10-Qs.

### I.    Fourth Quarter and Year-End 2012 Financial Results

121.    On February 28, 2013, ARCP issued a press release announcing its financial results for the fourth quarter of 2012 and the full year of 2012 (2012 FY Press Release), including fourth quarter AFFO of $3.4 million or $0.28 per share, and full year AFFO of $10.5 million, or $1.08 per share, a net loss of ($7.3 million), or ($0.84) per share.  In the 2012 FY Press Release, Defendant Schorsch emphasized the success and growth the Company reported during 2012, stating that:

Our first full calendar year of operations has seen us exceed our financial projections across the board . . . and that the ARCT III merger will result in geometric growth to our property portfolio that provides our shareholders with durable dividend income augmented by extraordinary earnings growth potential.

122.   The Company also reaffirmed its fiscal year 2013 AFFO guidance of $0.91-$0.95 per share and fiscal year 2014 AFFO guidance of $1.06-$1.10 per share. Defendant Block commented on ARCP's financial results, stating in pertinent part:

At $1.15 per share (basic), based on adjusted funds from operations, we're pleased to report that our 2012 earnings are at the high-end of our guidance published in July 2012 . . . .  Moreover, the Company is positioned for dynamic growth in the future. In fact, our earnings guidance for 2014 suggests a growth rate of 16% from 2013, an extraordinary trajectory for a net lease company. The Company's enterprise value is over $3 billion in an industry where size matters.

123.   Later that day, ARCP held a conference call with analysts and investors to discuss the Company's fourth quarter and full year 2012 financial results.  During the conference call, Defendant Block discussed ARCP's fourth quarter and full year 2012 AFFO, and reiterated the 2013 and 2014 AFFO guidance, emphasizing that the Company expected to see a "16% AFFO growth year over year."

124.   The same day, ARCP filed with the SEC its Form 10-K for the period ended December 31, 2012 (the "2012 Form 10-K").  The 2012 Form 10-K was prepared, reviewed and/or signed by Defendants Schorsch and Block.  The 2012 Form 10-K reiterated ARCP's previously reported financial results and stated that the financial results were accurate and presented in accordance with GAAP.  The 2012 Form 10-K also represented that the Company's internal controls were effective, and that any

material changes to the Company's internal controls over financial reporting were disclosed.

125.    The 2012 Form 10-K included the following table that quantified "the items deducted or added to net loss in our calculation of FFO and AFFO for the year ended December 31, 2012 and on a pro forma basis year ended December 31, 2012 (in thousands)," stating that "[a]mounts are presented net of any non-controlling interest effect where applicable":

| | Three Months Ended | | | | | |
| | March 31, 2012 | June 30, 2012 | September 30, 2012 | December 31, 2012 | Total | ARCP Pro Forma |
|---|---|---|---|---|---|---|
| Net loss attributable to stockholders (in accordance with U.S. GAAP) | $    (630) | $  (2,039) | $    (805) | $  (3,804) | $  (7,278) | $    5,404 |
| Merger & other related costs | — | 20 | — | 2,583 | 2,603 | 2,603 |
| Loss on held for sale properties | 323 | 83 | 47 | 147 | 600 | 600 |
| Depreciation and amortization | 1,519 | 1,756 | 2,817 | 3,230 | 9,322 | 111,245 |
| FFO | 1,212 | (180) | 2,059 | 2,156 | 5,247 | 117,249 |
| Acquisition and transaction related costs | 342 | 2,115 | 820 | 711 | 3,988 | 13,631 |
| Amortization of above-market lease | — | — | 56 | 61 | 117 | 202 |
| Amortization of deferred financing costs | 141 | 153 | 201 | 276 | 771 | 1,523 |
| Straight-line rent | (179) | (175) | (236) | (207) | (797) | (7,597) |
| Non-cash equity compensation expense | 137 | 183 | 473 | 378 | 1,170 | 1,191 |
| AFFO | $   1,653 | $  2,096 | $   3,373 | $   3,375 | $  10,496 | $  126,199 |

126.    Note 3 to the 2012 Form 10-K, which was entitled "Summary of Significant Accounting Policies," represented that ARCP's financial statements were "prepared on the accrual basis of accounting in accordance with U.S. GAAP."

127.    Under Item 9A, "Controls and Procedures," ARCP represented that Defendants Schorsch and Block had evaluated the effectiveness of ARCP's disclosure controls and procedures and determined that they were effective.  Specifically, it stated that:

**Disclosure Controls and Procedures**

In accordance with Rules 13a-15(b) and 15d-15(b) of the Exchange Act, management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Annual Report on Form 10-K.  Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded, as of the end of such period, that our disclosure controls and procedures are effective in recording, processing, summarizing and reporting, on a timely basis, information required to be disclosed by us in our reports that we file or submit under the Exchange Act.

**Management's Annual Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as defined in Rule 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended.  Our internal control over financial reporting is designed to provide reasonable assurance regarding the accordance with generally accepted accounting principles.

Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2012.  In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control-Integrated Framework.

Based on our assessment, our management believes that, as of December 31, 2012, our internal control over financial reporting is effective.

The effectiveness of our internal control over financial reporting as of December 31, 2012 has been audited by Grant Thornton LLP, an independent registered public accounting firm, as stated in their report included in this Annual Report on Form 10-K.

**Changes in Internal Control Over Financial Reporting**

During the fourth quarter of fiscal year ended December 31, 2012, there were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

128.    Further, in accordance with Section 302 of SOX, the 2012 Form 10-K contained Certifications signed by Defendants Schorsch and Block that were identical in all material respects to the certification quoted in ¶ 95.

**J.      First Quarter 2013 Financial Results**

129.    On May 6, 2013, ARCP issued a press release announcing its "Record First Quarter 2013 Operating Results" ("First Quarter 2013 Press Release").  That same day, the Company filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit.  The First Quarter 2013 Press Release reported an AFFO of $30.8 million, or $0.20 per fully diluted share, compared to AFFO of $3.4 million during the fourth quarter of 2012.

130.    The First Quarter 2013 Press Release contained the following statement from Defendant Schorsch regarding the Company's financial results:

> We are very pleased with our first quarter results which are in line with our earlier 2013 earnings guidance, projecting earnings growth of 16% between 2013 and 2014, and we are particularly well positioned for continued earnings growth . . . We intend to continue executing our highly accretive organic acquisition program on which our earnings guidance is constructed . . . .

131.    The First Quarter 2013 Press Release also stated:

> American Realty considers FFO and AFFO, which is FFO as adjusted to exclude acquisition-related fees and expenses, amortization of above-market lease assets and liabilities, amortization of deferred financing costs, straight-line rent, non-cash mark-to-market adjustments, amortization of restricted stock, non-cash compensation and gains and losses useful indicators of the performance of a REIT. Because FFO calculations exclude such factors as depreciation and amortization of real estate assets and gains or losses from sales of operating real estate assets (which can vary among owners of identical assets in similar conditions based on historical cost accounting and useful-life estimates), they facilitate comparisons of

operating performance between periods and between other REITs in our peer group.

\*      \*      \*

Additionally, the Company believes that AFFO, by excluding acquisition-related fees and expenses, amortization of above market lease assets and liabilities, amortization of deferred financing costs, straight-line rent, non-cash mark-to-market adjustments, amortization of restricted stock, non-cash compensation and gains and losses, provides information consistent with management's analysis of the operating performance of the properties. By providing AFFO, American Realty believes it is presenting useful information that assists investors and analysts to better assess the sustainability of our operating performance. Further, American Realty believes AFFO is useful in comparing the sustainability of our operating performance with the sustainability of the operating performance of other real estate companies, including exchange-traded and non-traded REITs.

As a result, the Company believes that the use of FFO and AFFO, together with the required GAAP presentations, provide a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operating, financing, and investing activities.

132.    Also on May 6, 2013, ARCP filed with the SEC its Form 10-Q for the quarter ended March 31, 2013 ("First Quarter 2013 Form 10-Q").  The First Quarter 2013 Form 10-Q was signed by Defendants Schorsch and Block, contained the same financial results and AFFO figures from the First Quarter 2013 Press Release, and represented that those financial results were accurate and presented in accordance with GAAP.  The First Quarter 2013 Form 10-Q also contained substantially similar statements about AFFO, including that it was a "useful" indicator of performance and facilitated comparisons between ARCP and other REITs.

133.    The First Quarter 2013 Form 10-Q included the following table that quantified "the items deducted or added to net loss in our calculation of FFO and AFFO

for the three months ended March 31 2013 and 2012 (amounts in thousands)," stating that "[a]mounts are presented net of any non-controlling interest effect where applicable":

| | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2013 | 2012 |
| Net loss attributable to stockholders (in accordance with U.S. GAAP) | $ (137,920) | $ (5,028) |
| Merger and other transaction costs | 137,769 | — |
| Gain on held for sale properties | (14) | 323 |
| Realized gains on investment securities | (451) | — |
| Depreciation and amortization | 25,109 | 3,535 |
| FFO | 24,493 | (1,170) |
| | | |
| Acquisition and transaction related costs | 5,582 | 4,785 |
| Amortization of above-market lease | 63 | — |
| Amortization of deferred financing costs | 1,108 | 211 |
| Straight-line rent | (1,370) | (221) |
| Non-cash equity compensation expense | 876 | 146 |
| AFFO | $ 30,752 | $ 3,751 |

134.    Note 3 to the First Quarter 2013 Form 10-Q, which was entitled "Summary of Significant Accounting Policies," represented that ARCP's financial statements "were prepared in conformity with U.S. GAAP" and that they included "all adjustments and accruals of a normal recurring nature, which, in the opinion of management, are necessary for a fair presentation of results for the interim periods."

135.    Under Item 4, Disclosure Controls and Procedures, ARCP represented that Defendants Schorsch and Block had evaluated the effectiveness of ARCP's disclosure controls and procedures and determined that they were effective.  Specifically, it stated that:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this

Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

No change occurred in our internal controls over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) during the three months ended March 31, 2013 that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

136.    The First Quarter 2013 Form 10-Q also contained the same internal disclosure control Certifications and SOX Certifications that were included with ARCP's 2012 Form 10-K. See ¶¶ 127-128, above.  Again, Defendants Schorsch and Block signed the Certifications.

137.    After the market closed on May 6, 2013, ARCP held a conference call to discuss the Company's first quarter of 2013 results. During the conference call, Defendant Schorsch re-articulated ARCP's growth strategy, and highlighted the purportedly "record" financial results:

We intend to grow our asset base and AFFO per share through both the execution of our organic acquisition program on which our earnings guidance is constructed, as well as through the pursuit of opportunities to buy large property portfolios and make strategic corporate acquisitions in the net lease sector. American Realty saw a 600% increase in revenue for the first quarter of 2013 compared to our fourth quarter of 2012 results and both FFO and AFFO per share increased in the first quarter 2013 compared to the fourth quarter of 2012.

138.    Defendant Block also noted:  "As we look at our projections for the balance of 2013, we reaffirm our forecasted AFFO per share of between $0.91 and $0.95 per share that was provided in our earnings guidance, as well as the forecast 2014 AFFO per share of $1.06 to $1.10."

### K.     CapLease Acquisition Announcement

139.   On May 28, 2013, ARCP issued a press release announcing that it had entered into an agreement to acquire CapLease, Inc. in a $2.2 billion transaction ("CapLease Press Release"). That same day, ARCP filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit. In the release, Defendant Block commented that the transaction would result in significant value to ARCP shareholders:

> This transaction offers significant operating synergies and value to our shareholders . . . .  We have announced revised earnings guidance for 2014 of between $1.17 to $1.21 per share based on AFFO, representing a 28% increase over previously announced 2013 guidance.

140.   The release also articulated that the transaction provided numerous benefits to ARCP's portfolio, including (1) Strategic Alignment: (2) Accretion to Earnings and Dividends; (3) Increased Diversification; (4) Maintains High Occupancy Levels and Low Lease Rollover; (5) Increased Size and Scale; (6) Impact on Balance Sheet; and (7) Management Additions, Integration and Operating Synergies.

141.   During a May 28, 2013, conference call with analysts and investors, Defendants Schorsch and Block further outlined the purported benefits of the CapLease acquisition.  Defendant Schorsch stated that the transaction would result in "accretive growth," "11% accretion to our AFFO in 2014" and "improved rental revenue quality through portfolio diversification."  He also stated that it would result in "meaningful earnings accretion.  Pro forma 2014 we expect to add $0.11 per share to our AFFO.  And based on doing that and upon closing, we anticipate raising the dividend $0.03 per share to $0.94."   Defendant Block remarked that the transaction supposedly resulted in

financial projections that were "impressive" and that ARCP was revising its 2014 estimates upward. Specifically, Defendant Block stated that "[t]he new 2014 earnings guidance range is projected between $1.17 to $1.21 AFFO per share on a fully diluted basis . . . [which] represents a 28% increase compared to our projected 2013 results."

### L.   ARCT IV Merger Announcement

142.   On July 2, 2013, ARCP issued a press release "American Realty Capital Properties to Acquire American Realty Capital Trust IV in a Merger Transaction Valued at $3.1 Billion" ("ARCT IV Press Release"). That same day, ARCP filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit. ARCP noted that, in connection with the proposed merger, ARCP was increasing its "2014[]     [AFFO] guidance to $1.19-$1.25 per share, equivalent to approximately 31% growth over 2013[] AFFO per share at the midpoint of the respective ranges. This projected AFFO growth rate leads the net lease industry."

143.   Defendant Schorsch commented that the transaction would result in significant value to ARCP shareholders, stating:

> With this acquisition we continue to further diversify our asset and tenant base and increase our projected 2014 AFFO per share. This acquisition is yet another example of executing our deliberate and focused strategy to: build size in an industry where size matters; improve profitability; increase asset and tenant diversification, thus mitigating risk; focus on constructing a portfolio of properties that produces durable income and potential asset appreciation, while preserving capital investment; provide some inflation and interest rate protection; and give us further cost of capital advantages enabling us to deliver AFFO per share earnings accretion. Our sector-leading 31% 2014 over 2013 projected AFFO growth is further proof of that.

144.    Defendant Block was similarly positive about the effect of the ARCT IV

Merger:

> This will result in growth in projected 2014 AFFO per share, as well as reduced
> balance sheet leverage . . . In addition, we are increasing our annualized per share
> dividend by $0.03, yet reducing our AFFO payout ratio below 80%, which
> provides capacity for further dividend increases in 2014, consistent with prior
> practice.

145.    The press release also highlighted that the ARCT IV Merger came along

with the following supposed "strategic, financial and portfolio benefits":  (1) AFFO

Growth;  (2) Enhanced  Portfolio  Diversification;  (3)  Increased  Lease  Duration;  (4)

Increased Size and Scale; and (5) Operating Synergies and Cost Reduction.

146.    Later that day, ARCP held a conference call to discuss the proposed ARCT

IV Merger.  During the call, Defendant Schorsch spoke about the proposed transaction

and its impact on the Company, stating:

> As we will discuss, however, this acquisition is not about growth for its
> own sake.
>
> . . .
>
> We will increase our dividend by $0.03 per share from $0.91 to $0.94 per
> share while at the same time taking our payout ratio down to 80%.  We are
> also increasing our AFFO earnings guidance range for 2014 to $1.19 to
> $1.25 per share.
>
> . . .
>
> I would like to take you through some of the significant benefits we believe
> this transaction offers our shareholders.   The transaction will provide
> immediate accretion to our earnings once closed.  Accordingly, we have
> revised our 2014 earnings guidance, increasing the pro forma 2014 AFFO
> to $1.19 to $1.25; annualized dividend increase from $0.91 to $0.94 per
> share, while the AFFO payout ratio decreases to less than 80%.

147.   Likewise, Defendant Block explained how he expected the ARCT IV Merger would help to maximize shareholder returns:

> AFFO per share is expected to grow significantly from 2013 to full year 2014. For 2014, we're projecting fully diluted AFFO per share in the range of between $1.19 per share to $1.25.  This represents a growth rate of about 30% over 2013 AFFO per share.  This earnings percentage of year-over-year growth is unprecedented in the net lease sector as we continue to aggregate world-class portfolios.

## M.   July 2013 Investor and Analyst Day

148.   On July 24, 2013, ARCP held an "Investor and Analyst Day" to discuss "the Company's recent activity, 2013 mid-year outlook and future initiatives."  During a presentation, Defendant Block commented on the "very conservative" nature of the Company's increased full-year 2014 AFFO per share estimates, and responded to an analyst's question on that topic, stating in pertinent part:

> So again to recap, June 30th, ARC Trust, CapLease, well in your guidance, you said you were going to buy about another $300 million.  I wish I can say these are the exact transactions we're going to buy.  We actually have a more robust pipeline today that 300, maybe 400 or 500, we will see where that works out, but as a placeholder again to understand how do we get to that $1.19 or $1.25 on your earnings guidance, we're assuming post transactions, the organic transactions we do.  The one-off two CVS's, three Walgreens, four Dollar General's, one Advance Auto, that composes the $300 million of what we define as organic growth.  . . . We have an abundance of that in our pipeline right now, very attractive credit, extremely attractive pricing with great locations.  . . .

> We're going to be roughly $450 million of AFFO which equates to about [$]1.19. . . .

> Now we give a range $1.19 or $1.25. What could happen there? Well, our stock could be better . . . .

> So we have a range there, [what] I wanted to do on a very conservative basis, is roll you forward to the different capital components and acquisition numbers that will arrive at this $1.19 that we put out there . . . .

149.   The statements referenced above in ¶¶ 121-148 each were materially false and misleading and omitted material facts when made.

(a)   Contrary to the statements referenced in ¶¶ 127-128, 136, ARCP's internal accounting controls and procedures were insufficient to provide reasonable assurances regarding the reliability of ARCP's financial reporting and the preparation of its financial statements;

(b)   Contrary to the statements referenced in ¶¶ 121-148, ARCP's financial statements were materially false and misleading as they did not accurately portray the Company's "faltering" financial performance and were not prepared in accordance with GAAP;

(c)   Contrary to the statements referenced in ¶¶ 121-148, ARCP was not, as it represented in its financial statements, calculating AFFO based on the industry-standard definition of FFO.  Rather, the Company was intentionally and improperly adding back costs that were not associated with its ownership interest in the Operating Partnership;

(d)   Contrary to the statements referenced in ¶¶ 121-148, ARCP's 2014 AFFO estimates were not accurate, attainable, honestly believed, or founded on a reasonable basis;

(e)   Contrary to the statements referenced in ¶¶ 121-148, the rapid pace of mergers and acquisitions during the Relevant Period exacerbated the deficiencies in ARCP's internal controls and financial reporting processes;

(f)   Contrary to the statements referenced in ¶ 122, the Company was not "positioned for dynamic growth" or on "an extraordinary trajectory," as its reported AFFO for the fourth quarter of 2012 and full year 2012 was the product of falsified financial statements; and

(g)   Contrary to the statements referenced in ¶¶ 121-148, ARCP's "growth by acquisition" strategy was not beneficial for its shareholders, but instead was designed to generate transaction fees for Schorsch-controlled companies and to result in large compensation payments to executives in Schorsch-controlled companies without regard to the underlying fairness of the transaction.

N.     **Second Quarter 2013 Financial Results**

150.    On August 6, 2013, ARCP issued a press release announcing "Record Second Quarter 2013 Operating Results" ("Second Quarter 2013 Press Release").  That same day, the Company filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit.  The Second Quarter 2013 Press Release reported AFFO of $32.8 million, or $0.19 per fully diluted share.  In addition, the Company raised its previously issued full-year 2014 AFFO per share estimates from a range of $1.06 to $1.10 per diluted share, to a range of $1.14 to $1.18 per diluted share.

151.    The Second Quarter 2013 Press Release contained the following statement by Defendant Schorsch concerning the Company's financial results:

> The second quarter of 2013 was about deliberate and predictable execution in all aspects of our business . . . Our strategic vision is furthered with the completion of the two pending mergers, a substantial and highly accretive acquisition pipeline and a growing team of seasoned real estate professionals as we look towards a future internalization event.

152.    The Second Quarter 2013 Press Release also contained statements substantially identical to the language contained in the First Quarter 2013 Press Release with respect to the importance of AFFO.  See ¶ 131, above.

153.    Also on August 6, 2013, ARCP filed with the SEC its Form 10-Q for the quarter ended June 30, 2013 ("Second Quarter 2013 Form 10-Q").  The Second Quarter 2013 Form 10-Q was signed by Defendants Schorsch and Block, contained the same financial results and AFFO figures from the Second Quarter 2013 Press Release, and represented that those financial results were accurate and presented in accordance with GAAP.  The Second Quarter 2013 Form 10-Q also contained substantially similar

statements about AFFO as compared to the Company's other documents filed with the SEC during the Relevant Period.  See ¶¶ 131-132, above.

154.   In addition, the Company provided the following table that quantified "the items deducted or added to net loss in our calculation of FFO and AFFO for the three months ended June 30, 2013 and 2012 (amounts in thousands)" and assured investors that the listed amounts were "presented net of any non-controlling interest effect where applicable":

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
| --- | --- | --- | --- | --- |
| | 2013 | 2012 | 2013 | 2012 |
| Net loss attributable to stockholders (in accordance with U.S. GAAP) | $ (51,679) | $ (7,070) | $ (189,613) | $ (12,098) |
| Merger and other transaction costs | 4,680 | 20 | 142,449 | 20 |
| Loss on contingent valuation rights | 31,134 | — | 31,134 | — |
| (Gain) loss on held for sale properties | — | 82 | (14) | 405 |
| Gain on sale of investment securities | — | — | (451) | — |
| Loss on derivative instruments | 40 | — | 45 | — |
| Interest on convertible obligation to preferred investors | 1,630 | — | 1,630 | — |
| Depreciation and amortization | 27,806 | 6,994 | 52,829 | 10,529 |
| FFO | 13,611 | 26 | 38,009 | (1,144) |
| | | | | |
| Acquisition and transaction related costs | 15,144 | 7,814 | 20,726 | 12,599 |
| Amortization of above-market lease | 63 | — | 126 | — |
| Amortization of deferred financing costs | 2,166 | 385 | 3,274 | 596 |
| Straight-line rent | (1,605) | (352) | (2,975) | (565) |
| Non-cash equity compensation expense | 3,454 | 178 | 4,330 | 324 |
| AFFO | $ 32,833 | $ 8,051 | $ 63,490 | $ 11,810 |

155.   Note 3 to the Second Quarter 2013 Form 10-Q, which was entitled "Summary of Significant Accounting Policies," represented that ARCP's financial statements "were prepared in conformity with U.S. GAAP" and that they included "all adjustments and accruals of a normal recurring nature, which, in the opinion of management, are necessary for a fair presentation of results for the interim periods."

156.   The Second Quarter 2013 Form 10-Q also contained the same internal disclosure control Certifications and SOX Certifications that were included with ARCP's other Forms 10-Q filed during the relevant period.  See ¶¶ 95, 135-136, above.  Again, Defendants Schorsch and Block signed the Certifications.

157.   After the market closed, Defendants held a conference call to discuss the Company's second quarter of 2013 results.  During the call, Defendant Schorsch made the following statements about ARCP's results:

> Full quarter AFFO per share was $0.19. More importantly, the normalized AFFO per share, which also represents the period end run-rate, was $0.23 per share which was above our previously provided 2013 AFFO guidance.
>
> To sum up, we are extremely pleased with our accomplishments during this second quarter . . . .  Our current pipeline of acquisitions and balance sheet strength suggests that American Realty is well positioned for continued earnings growth.
>
> As Brian will discuss in a moment . . . we are updating our guidance to $1.14 to $1.18 per share on an AFFO basis. This change to our earnings guidance results primarily from two factors – and this is very important. We will incur approximately $20 million in our guidance of additional debt service cost relating to terming out the fixed debt and increasing our acquisitions to $1.1 billion.

158.   Defendant Block also highlighted that ARCP revised upward its 2014 AFFO guidance "based on increased acquisition activity as well as a more deliberate pursuit of fixed-rate, long-term, match-funded debt."   In addition, Defendant Block stated:

> [Our] revised 2014 AFFO guidance is $1.14 to $1.18 per share, reflecting additional interest costs related to increased duration of fixed rate borrowings to match fund assets and liabilities . . . and substantially higher acquisition volumes than previously projected. Specifically, we include about $1.4 billion of 5, 7 and 10 year notes with a weighted average interest rate of approximately 4.1%.

### O.    Cole Merger Announcement

159.   On October 22, 2013, ARCP and Cole entered into the Cole Merger Agreement.  Pursuant to the agreement, Cole shareholders would receive either 1.0929 shares of ARCP common stock or $13.82 in cash per Cole share.  On October 23, 2013, ARCP and Cole issued a press release entitled "American Realty Capital Properties and Cole Real Estate Investments Merge to Create World's Largest Net Lease REIT with Enterprise Value of $21.5 Billion" ("Cole Merger Press Release").  That same day, the Company filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit.  The release announced that the transaction would be beneficial to shareholders, highlighted that the merger would result in "AFFO Growth" and in "[u]pdated American Realty AFFO pro forma 2014 guidance of $1.13 to $1.19 per share."  The Company also filed various other merger-related documents with the SEC, including copies of the Merger Agreement, the Voting Agreement and related Letter Agreements.

160.   In the Cole Merger Press Release, Defendant Schorsch commented that, as a result of the merger:

> ARCP will become the largest net lease REIT and the new industry leader . . . .  Both companies share the same vision, namely to drive value for stockholders by placing their interests ahead of our own, aligning pay with performance, and reporting fully and transparently.  We share the same disciplined investment philosophy and investment processes, which are focused on investment grade tenancy, long lease durations, a strong diversified tenant base, and a mix of property type and geography.

> As we enter 2014, we stand to become the largest listed net lease REIT.  With this acquisition, we continue to further diversify our asset and tenant base while driving projected 2014 AFFO per share growth.  This

acquisition represents the continuation of our deliberate and focused growth strategy by improving profitability, mitigating risk through increased property type and tenant diversification, constructing a portfolio of properties that produce durable income and potential asset appreciation while preserving principal, providing some inflation and interest rate protection and enabling us to deliver AFFO per share earnings accretion through further cost of capital advantages.  In addition, the merger with Cole furnishes the size and scale to allow us to continue to reduce our operating costs as a percentage of assets and potentially improve our AFFO multiple.

161.    Later that day, ARCP held a conference call with analysts and investors to discuss the merger.   During the conference call, executives from both companies continued to tout the supposed benefits of the merger for shareholders.   Defendant Schorsch stated:

> This is an epic transaction, great companies combining in a win-win to the shareholders, the employees and the broker dealer systems that we work with.  The portfolios just fit.  They fit very, very well.  We are a much stronger company.
>
> We have both proven ourselves.  And if you look back at the last six months as we have gone through this transaction, we as a company have improved at ARCP.  We have become investment grade rated.  We have managed our balance sheet and a number of other mergers to build a larger company of over $10 billion on a pro forma basis . . . today, we have created with this merger the largest net lease company on the globe.
>
> Now let's talk about dividends.  The common dividend at closing will be increased $1.00 per share on the ARCP stock price.  ARCP shareholders are getting a 6.4% dividend increase.

162.    In addition, the following exchange regarding the transaction took place between analyst Mitch Germain of JMP Securities and Defendant Schorsch:

> **Analyst Germain:**  . . .  I guess from that regard the deal should be considered slightly dilutive. Is that the way to look at it here?
>
> **Defendant Schorsch:**  No, actually, no.  If you look at Cole's acquisition pipeline, it was $500 million if you look at our acquisition pipeline, it was

$1 billion, so it's increased by $500 million, but we've also de-levered incredibly. So you've gone down by a full turn plus on debt to EBITDA, we are not without issuing equity to the public markets, without a discount, without a banking fee.

So on a leverage neutral basis it would obviously be highly accretive but we don't want to be leverage neutral neither us nor the Cole team want to be a company at nine times debt to EBITDA or 55% levered. So our goal is to be 6.5 times. And quite honestly if you look at the fact that we're issuing cash, if that cash issuance goes down we could actually be in the 6's coming out of the box, and garner significant upgrade from the agencies.

So we believe that we are taking the excess value and driving a more higher quality of earnings, Mitch. So the answer to your question is, on a par basis yes it's leveraged – it's effectively neutral or slightly dilutive but we are also going from 9.1 times to 7.7 times and that's a powerful statement.

163.   Likewise, Defendant Block stated:

Specific to adjusted funds from operations where AFFO for 2014, our guidance remains unchanged for this transaction from a numbers' standpoint we expanded the range slightly due to the fact that we have variability here. In closing this merger within the first half of 2014, our guidance range on a fully diluted per share basis is $1.13 to $1.19 per share. . . .

Turning our attention specifically to 2014 guidance I wanted to point out a range from an FFO standpoint, fully diluted share count as we talked about $1.14 to $1.20 AFFO $1.13 to $1.19. The key assumptions . . . include[] $11.2 billion purchase price for Cole. It assumes an election of 80% stock and 20% cash. We are assuming a $70 million expense reduction in aggregate from the combined organization. The distributions go up to $1.00 per share and again representing an 86% payout ratio.

164.   In addition, the following exchange regarding ARCP's AFFO estimates

took place between analyst Dan Donlan of Ladenburg Thalmann and Defendant Block:

**Analyst Donlan:**  Okay. And as far as when I look at the guidance, the range is wider now. What is – what's the delta between the two? I mean, is it you don't close on as many acquisitions and timing? Is it that your leverage would be higher at the high-end and lower at the low-end? What are the brackets . . . around the guidance range? . . .

**Defendant Block:** . . . Dan, in that number it also has to do with the cost of debt, if our debt cost comes down 15 or 20 Bps, that we're going to be, we're going to push through the high end of the range very quickly.  And if it's where we think it is which is pretty conservative, will be the, low end of the range.  I think that's probably the single biggest driver when you look at the variability because 5 basis points on acquisition cap rate. We can buy a lot more.  The question is do we want to because we don't want to lever up. And you would also assume our stock price, our combined stock price being pretty conservative around 7% dividend yield.  And I am not sure we are going to stay at a 7% dividend yield.  So those are – that's the other big variable business. If we are buying assets and we are issuing equity and the equity cost changes to the upside, it's going to increase our earnings dramatically.

165.   The statements referenced in ¶¶ 150-164 each were materially false and misleading and omitted material facts when made.  The facts were that:

(a)   Contrary to the statements referenced in ¶ 156, and as the Company admitted in connection with its Restatement, ARCP's internal controls over financial reporting suffered from "material weaknesses," which resulted in the Company failing to (i) maintain adequate controls to assess, authorize and monitor related-party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates; (ii) maintain adequate controls over various grants of equity-based compensation; (iii) implement consistent policies and procedures relating to purchase accounting; (iv) establish clear reporting lines and job responsibilities or promote accountability over business process control activities; and (v) develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates;

(b)   Contrary to the statements referenced in ¶¶ 150-164, ARCP's financial statements were materially false and misleading, did not accurately reflect the Company's financial performance, and were not prepared in conformity with GAAP.  In an effort to avoid public disclosure of ARCP's faltering financial performance, ARCP changed, among other things, its historical AFFO-calculation methodology resulting in ARCP's reported AFFO, AFFO per share, net income and earnings per share being materially inflated and false;

(c)     Contrary to the statements referenced in ¶¶ 150-164, ARCP was not, as it represented in its financial statements, calculating AFFO based on the industry-standard definition of FFO. Rather, the Company was intentionally and improperly adding back costs that were not associated with its ownership interest in the Operating Partnership;

(d)     Contrary to the statements referenced in ¶¶ 150-164, ARCP's 2014 AFFO estimates and related statements about its projected earnings growth were not accurate, attainable, honestly believed, or founded on a reasonable basis.  As Defendants knew but omitted to disclose to investors, ARCP's claimed AFFO growth could only be achieved through Defendants' continued falsification of ARCP's financial statements;

(e)     Contrary to the statements referenced in ¶¶ 159-160, 163-164, the Cole Merger would not drive 2014 AFFO per share growth or earnings accretion, but rather would allow ARCP to conceal its inability to meet its 2013 and 2014 performance estimates;

(f)     Contrary to the statements referenced in ¶ 156, and as the Company admitted in connection with its restatement, ARCP's disclosure controls and procedures suffered from "material weaknesses" and were not properly designed or implemented to ensure that (i) AFFO per share was correctly calculated; (ii) AFFO guidance, and the Company's ability to meet that guidance. were accurate; (iii) the information in its SEC filings correctly reflected its internal accounting records; and (iv) its SEC filings were reviewed on a timely basis by senior management and that significant changes in previously reviewed documents were brought to the attention of the Audit Committee for approval before filing;

(g)     Contrary to the statements referenced in ¶ 156, the Company's rapid pace of mergers and acquisitions during the Relevant Period "had a severe impact on the Company's control environment" and exacerbated the deficiencies in ARCP's internal controls and financial reporting processes;

(h)     Contrary to the statements referenced in ¶¶ 150-164, ARCP's "growth by acquisition" strategy was not beneficial for ARCP shareholders, but instead was designed to generate transaction fees for Schorsch-controlled companies and to result in large compensation payments to executives in Schorsch-controlled companies without regard to the underlying fairness of the transaction.  In particular, the Cole Merger did not provide ARCP with "extraordinary earnings growth potential," but rather was

designed to generate hundreds of millions of dollars in related-party transactional fees and compensation payments to ARCP executives and other parties affiliated with Schorsch-controlled companies.

### P.    Third Quarter 2013 Financial Results

166.    On November 7, 2013, ARCP issued a press release entitled "American Realty Capital Properties Announces Third Quarter 2013 Operating Results and $0.21 AFFO per Share" ("Third Quarter 2013 Press Release").  That same day, the Company filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit.  The release announced AFFO of $46.7 million, or $0.21 per diluted share and confirmed "[u]pdated AFFO pro forma 2014 guidance of $1.13 to $1.19 per share."

167.    The Third Quarter 2013 Press Release contained the following comments from Defendants Schorsch and Block regarding the Company's financial results:

**Defendant Schorsch:**  We have continued to build enterprise value during this third quarter, and for now are intently focused on execution . . . .  In this regard, we have identified several near-term key objectives: completing the announced ARCT IV and Cole transactions; becoming self-managed and significantly broadening our intellectual capital by continuing to attract the best and brightest managers in the industry; deleveraging and terming out our balance sheet utilizing long-term, fixed rate debt; and effectively and seamlessly integrating Cole organization. . . .

We are fully committed to becoming self-managed, as promised . . .  In fact, it is a closing condition for our merger with Cole.  We will announce the President of ARCP before year-end.  We have already moved to bolster our team with several key hires.  Brian Block, our CFO, will now be focused exclusively on ARCP.  Lisa Beeson joins us as COO after 25 years as an investment banker with tremendous M&A and capital markets expertise.  Lisa Pavelka McAlister is our new CAO with 25 years' experience in senior financial roles versed in all aspects of financial and accounting operations. . . .

> **Defendant Block:**   Our 3rd quarter operating results are in-line with projections . . .   We are well positioned to close our pending acquisitions and execute our capital plan.

168.   The Third Quarter 2013 Press Release also contained statements similar to that included in other press releases during the Relevant Period with respect to the importance of AFFO.  See ¶¶ 131, 152, above.

169.   Also on November 7, 2013, ARCP filed with the SEC its Form 10-Q for the quarter ended September 30, 2013 ("Third Quarter 2013 Form 10-Q").   The Third Quarter 2013 Form 10-Q was signed by Defendants Schorsch and Block, contained the same financial results and AFFO figures from the Third Quarter 2013 Press Release, and represented that those financial results were accurate and presented in accordance with GAAP.   The Third Quarter 2013 Form 10-Q also contained substantially similar statements about AFFO as compared to the Company's other documents filed with the SEC during the Relevant Period.  See ¶¶ 131-132, 153, above.

170.   In addition, the Company provided the following table that quantified "the items deducted or added to net loss in our calculation of FFO and AFFO for the three months ended September 30, 2013 and 2012 (amounts in thousands)," and assured investors that the listed amounts were "presented net of any non-controlling interest effect where applicable":

|  | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|  | 2013 | 2012 | 2013 | 2012 |
|---|---|---|---|---|
| Net loss attributable to stockholders (in accordance with U.S. GAAP) | $ (59,063) | $ (12,690) | $ (248,676) | $ (24,788) |
| (Gain) loss on held for sale properties | — | 47 | (14) | 452 |
| Depreciation and amortization | 39,382 | 11,632 | 92,211 | 22,161 |
| FFO | (19,681) | (1,011) | (156,479) | (2,175) |
| | | | | |
| Acquisition related | 1,235 | 14,636 | 21,961 | 27,235 |
| Merger and other transaction costs | 3,791 | — | 146,240 | 20 |
| Loss on contingent valuation rights | 38,542 | — | 69,676 | — |
| Gain on sale of investment securities | — | — | (451) | — |
| Loss on derivative instruments | 99 | — | 144 | — |
| Interest on convertible obligation to preferred investors | 7,266 | — | 8,896 | — |
| Interest on convertible debt | 1,554 | — | 1,554 | — |
| Interest premium on settlement of convertible obligation to preferred investors and convertible debt | 5,174 | — | 5,174 | — |
| Amortization of above-market lease | 63 | — | 189 | 56 |
| Amortization of deferred financing costs | 3,505 | 385 | 6,914 | 1,226 |
| Straight-line rent | (2,063) | (581) | (5,038) | (1,147) |
| Non-cash equity compensation expense | 7,180 | 480 | 11,510 | 804 |
| AFFO | $ 46,665 | $ 13,909 | $ 110,290 | $ 26,019 |

171.   Note 3 to the Third Quarter 2013 Form 10-Q, which was entitled "Summary of Significant Accounting Policies," represented that ARCP's financial statements "were prepared in conformity with U.S. GAAP" and that they included "all adjustments and accruals of a normal recurring nature, which, in the opinion of management, are necessary for a fair presentation of results for the interim periods."

172.   The Third Quarter 2013 Form 10-Q also contained the same internal disclosure controls Certifications and SOX Certifications that were included with ARCP's other Forms 10-Q filed during the Relevant Period.  See ¶¶ 95, 135-136, 156, above.  Again, Defendants Schorsch and Block signed the Certifications.

173.   After the market closed, Defendants held a conference call to discuss the Company's third quarter of 2013 results.  During the November 7, 2013, conference call, Defendant Schorsch made the following statement about ARCP's results:

We continue to see attractive organic acquisition opportunities with no shortage of available product in the market high quality property strong tenants, long leases and accretive pricing. Our 2014 AFFO earnings guidance which reflects the acquisition of Cole assumes a closing date of April 1 and is $1.13 to $1.19 per share. This range includes only $2 million of acquisitions for 2014, which we think is very manageable particularly given the historic acquisition activity of our combined organizations.

174.    Defendant Block also made the following statement related to the Cole Merger:

In connection with the Cole merger, we widened our 2014 guidance by $0.01 on each si[d]e of the range based on the uncertainty with respect to the anticipated closing date . . . .

Our 2014 AFFO guidance is $1.13 to $1.19 per share.  This range, which assumes the Cole merger to close the end of the first quarter of 2014, reflects additional interest costs attributable to increased duration of fixed rate bonds to match fund, assets and liabilities as I previously noted and higher acquisition volumes than previously projected reflecting increased capacity of the combined teams.

## Q.    **Cole Merger Presentation**

175.    On November 12, 2013, ARCP issued a shareholder presentation regarding the Cole Merger, which reiterated that the merger would create the world's largest net lease REIT and would generate "significant operating efficiencies" and "AFFO growth" for ARCP.  The presentation also reiterated that "2014 AFFO growth estimates" were being "updated to $1.13 - $1.19 per share (fully diluted)" and indicated that, even without additional acquisitions, American Realty's AFFO for 2014 would be "$1.13 per share."

## R.    **ARCT IV Merger Proxy Materials**

176.    On December 3, 2013, ARCP filed a Registration Statement with the SEC related to the ARCT IV merger and disseminated a Joint Proxy Statement/Prospectus ("ARCT IV Registration Statement/Proxy") to shareholders. The ARCT IV Registration

Statement/Proxy was prepared, reviewed and/or signed by Defendants ARCP, Schorsch, and, Block.

177.    The ARCT IV Registration Statement/Proxy represented that the ARCT IV Board unanimously had determined that the merger was "advisable, fair to, and in the best interests of ARCT IV and its stockholders."   In addition, the ARCP Board recommended that ARCP shareholders approve the transaction.   The ARCT IV Registration Statement/Proxy extolled the virtues of the proposed transaction, including that the merger would "provide ARCP with significant future acquisitions capacity and higher future AFFO growth rate, and the combined company's stockholders will benefit from a stable and secure dividend, which is expected to increase to $0.94 per share following the merger."   The ARCT IV Registration Statement/Proxy contained a section entitled "Certain Prospective Financial Information Reviewed by ARCT IV," which contained the following AFFO projections:

| ($ in millions) | 2011 | 2012 | 2013 (6 months) | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|
| EBITDA as adjusted | ($2) | $ 15 | $ 23 | $ 525 | $ 604 | $ 681 | $ 757 | $ 831 |
| Funds from Operations as adjusted (FFO as adjusted) | ($2) | $ 4 | $ 38 | $ 379 | $ 443 | $ 505 | $ 565 | 623 |
| Adjusted Funds from Operations (AFFO) | $ 2 | $ 48 | 63 | $ 380 | $ 445 | $ 505 | $ 564 | $ 620 |

178.    In addition, the ARCT IV Registration Statement/Proxy incorporated by reference the following ARCP financials, many of which have now been restated:  2012 Form 10-K, First Quarter 2013 Form 10-Q, Second Quarter 2013 Form 10-Q and Third Quarter 2013 Form 10-Q.   Defendants Schorsch and Block signed each of the incorporated financial statements, which assured investors that:

[W]e, under the supervision and with the participation of our Chief Executive
Officer and Chief Financial Officer, carried out an evaluation of the effectiveness
of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

179.   The ARCT IV merger agreement ("ARCT IV Merger Agreement") was attached as Annex A to the ARCT IV Registration Statement/Proxy.  Section 5.7(a) of the ARCT IV Merger Agreement represented that ARCP's SEC filings "complied in all material respects with the requirements of the Securities Act or the Exchange Act, as the case may be, and the applicable rules and regulations of the SEC thereunder," and did not contain "any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements made therein, in the light of the circumstances under which they were made, not misleading."

180.   Section 5.7(c) of the ARCT IV Merger Agreement also represented that:

- ARCP and its subsidiaries "maintain a system of internal accounting controls sufficient to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP."

- the members of ARCP's audit committee had been informed of "all significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting that are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial data."

181.   Section 5.7(c) of the ARCT IV Merger Agreement further represented that:

[ARCP] ha[d] established and maintains disclosure controls and procedures (as such term is defined in Rule 13a-15 promulgated under the Exchange Act) designed to ensure that material information relating to [ARCP] required to be included in reports filed under the Exchange Act, including

its consolidated subsidiaries, is made known to [ARCP's] principal executive officer and its principal financial officer by others within those entities, particularly during the periods in which the periodic reports required under the Exchange Act are being prepared, and, to the knowledge of [ARCP], such disclosure controls and procedures are effective in timely alerting [ARCP's] principal executive officer and its principal financial officer to material information required to be included in [ARCP's] periodic reports required under the Exchange Act.

182.   Section 5.8(a) of the ARCT IV Merger Agreement further represented:

None of the information supplied or to be supplied in writing by or on behalf of [ARCP] for inclusion or incorporation by reference in (i) the Form S-4 [Registration Statement] will, at the time such document is filed with the SEC, at any time such document is amended or supplemented or at the time such document is declared effective by the SEC, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, or (ii) the Joint Proxy Statement will, at the date it is first mailed to the stockholders of [ARCT IV and ARCP], at the time of the [ARCT IV] Stockholder Meeting and the [ARCP] Stockholder Meeting, at the time the Form S-4 is declared effective by the SEC or at the Effective Time, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading.

183.   On December 3, 2013, the ARCT IV Registration Statement/Proxy was disseminated to shareholders.  The version sent to shareholders contained ARCP's fiscal year 2012 financial data and financial data for the period ended September 30, 2013, and represented that "[i]n ARCP's opinion, such unaudited financial statements include all adjustments (consisting of normal recurring adjustments) necessary for a fair presentation of the interim September 30, 2013 financial information."

**S.   Cole Merger Proxy Materials**

184.   On December 20, 2013, ARCP and Cole filed the Cole Registration Statement with the SEC.  On December 23, 2013, the Company filed the Cole Merger

Proxy with the SEC.  A copy of the Cole Merger Agreement was attached to both the Cole Registration Statement and the Cole Merger Proxy and was incorporated by reference in both documents.

185.   The Cole Registration Statement/Merger Proxy represented that the Cole Board unanimously had determined that the merger was "advisable, fair to and in the best interests of ARCP and its stockholders."  Likewise, the ARCP Board unanimously recommended that the transaction be approved.

186.   ARCP's First Quarter 2013 Form 10-Q, Second Quarter 2013 Form 10-Q and Third Quarter 2013 Form 10-Q, which were each signed by Defendants Schorsch and Block and incorporated into the Cole Registration Statement and Cole Merger Proxy, also assured investors:

> [W]e, under the supervision and with the participation of our chief executive officer and chief financial officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

187.   The Cole Registration Statement/Merger Proxy, which was disseminated on December 23, 2013, to ARCP and Cole shareholders, presented financial data for ARCP for the first nine months of 2013, ending September 30, 2013, and represented that "[i]n [ARCP's] opinion, such unaudited financial statements include all adjustments (consisting of normal recurring adjustments) necessary for a fair presentation of the interim September 30, 2013 financial information."

188.   In addition, the Company provided the following table that quantified "items deducted or added to net loss in our calculation of FFO and AFFO for the three

and nine months ended September 30, 2013 and 2012 (amounts in thousands)," and assured investors that the amounts listed were "presented net of any non-controlling interest effect where applicable."

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2013 | 2012 | 2013 | 2012 |
| Net loss attributable to stockholders (in accordance with U.S. GAAP) | $ (59,063) | $ (12,690) | $(248,676) | $   (24,788) |
| (Gain) loss on held for sale properties | — | 47 | (14) | 452 |
| Depreciation and amortization | 39,382 | 11,632 | 92,211 | 22,161 |
| FFO | (19,681) | (1,011) | (156,479) | (2,175) |
| Acquisition related | 1,235 | 14,636 | 21,961 | 27,235 |
| Merger and other transaction costs | 3,791 | — | 146,240 | 20 |
| Loss on contingent valuation rights | 38,542 | — | 69,676 | — |
| Gain on sale of investment securities | — | — | (451) | — |
| Loss on derivative instruments | 99 | — | 144 | — |

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2013 | 2012 | 2013 | 2012 |
| Interest on convertible obligation to preferred investors | 7,266 | — | 8,896 | — |
| Interest on convertible debt | 1,554 | — | 1,554 | — |
| Interest premium on settlement of convertible obligation to preferred investors and convertible debt | 5,174 | — | 5,174 | — |
| Amortization of above-market lease | 63 | — | 189 | 56 |
| Amortization of deferred financing costs | 3,505 | 385 | 6,914 | 1,226 |
| Straight-line rent | (2,063) | (581) | (5,038) | (1,147) |
| Non-cash equity compensation expense | 7,180 | 480 | 11,510 | 804 |
| AFFO | $  46,665 | $  13,909 | $ 110,290 | $  26,019 |

189.   In addition, the Cole Merger Proxy materials contained representations substantially similar to those in the ARCP SEC filings and press releases regarding the importance of AFFO, including that it was a "useful" indicator of performance and facilitated comparisons between ARCP and other REITs.  See, e.g., ¶¶ 131, 152, 168, above.

190.   The Cole Merger Agreement represented that ARCP's SEC filings and the financial data within those filings were free of material misstatements and omissions.

Section 5.7(a) of the Cole Merger Agreement, for example, represented: "Each [ARCP] SEC Filing . . . did not at the time it was filed. . . contain any untrue statement of a material fact or omit to state a material fad required to be stated therein or necessary in order to make the statements made therein, in the light of the circumstances under which they were made, not misleading."

191.    Section 5.7(c) of the Cole Merger Agreement represented that ARCP and its subsidiaries "have devised and maintain a system of internal accounting controls sufficient to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP."

192.    Section 5.7(c) of the Cole Merger Agreement further represented that ARCP's "principal executive officer and its principal financial officer" had disclosed to ARCP's auditor and the audit committee "(i) all significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting that are reasonably likely to adversely affect [ARCP's] ability to record, process, summarize and report financial data, and (ii) any fraud, whether or not material, that involves management or other employees who have a significant role in [ARCP's] internal controls . . . ."

193.    In addition, as with ARCP's periodic financial statement filings during the Relevant Period, Section 5.7(c) of the Cole Merger Agreement represented that:

> [ARCP] ha[d] established and maintains disclosure controls and procedures (as such term is defined in Rule 13a-15 promulgated under the Exchange Act) designed to ensure that material information relating to [ARCP] required to be included in reports filed under the Exchange Act, including

its consolidated subsidiaries, is made known to [ARCP's] principal executive officer and its principal financial officer by others within those entities, particularly during the periods in which the periodic reports required under the Exchange Act are being prepared, and, to the knowledge of [ARCP], such disclosure controls and procedures are effective in timely alerting [ARCP's] principal executive officer and its principal financial officer to material information required to be included in [ARCP's] periodic reports required under the Exchange Act.

194.   Section 5.8(a) of the Cole Merger Agreement represented that the information provided to investors in connection with the merger was free from untrue statements and omissions:

None of the information supplied or to be supplied in writing on behalf of [ARCP] for inclusion or incorporation by reference in (i) the [Cole Registration Statement] will, at the time such document is filed with the SEC, at any time such document is amended or supplemented or at the time such document is declared effective by the SEC, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, or (ii) the Joint Proxy Statement will, at the date it is first mailed to the stockholders of [Cole and of ARCP], at the time of the [Cole] Stockholder Meeting and the ARCP[] Stockholder Meeting, at the time the Form S-4 is declared effective by the SEC or at the Effective Time, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading.

195.   Section 6.2(c)(v) of the Cole Merger Agreement represented that ARCP would "maintain all financial books and records in all material respects in accordance with GAAP."

196.   Defendants Schorsch, Kay, and Block signed the Cole Merger Proxy and had direct participation in and oversight of the wrongdoing alleged herein, relating to that merger.

T.  **ARCT IV Merger Closing**

197.  On January 3, 2014, ARCP issued a press release that announced the completion of the ARCT IV Merger.  Specifically, under the terms of the merger, ARCP issued the following consideration to ARCT IV stockholders for each ARCT IV share: (1) $9.00 in cash; (2) 0.5190 of a share of ARCP common stock (valued at $6.68 using the ARCP closing price of $12.87 on January 2, 2014, the trading day prior to the closing of the merger and representing 21.9% of the total nominal consideration); and (3) 0.5937 shares of ARCP's 6.70% Series F Cumulative Redeemable Preferred Stock. ARCP issued 36.9 million shares of common stock and 42.2 million shares of Series F Preferred Stock to former ARCT IV stockholders at the closing of the merger.

198.  In the press release, Defendant Block remarked that the ARCT IV Merger was "instrumental to achieving 2014 AFFO growth per share, and will reduce our balance sheet leverage with ARCT IV's highly unencumbered portfolio of real estate assets." Defendant Block also stated that ARCP's 2014 AFFO guidance range was "from $1.13 per share to $1.19."

U.  **Cole Merger Closing**

199.  On February 7, 2014, following approval by Cole and ARCP shareholders, the Cole Merger closed.  The $11.2 billion merger allowed for shares of Cole common stock to be exchanged for shares of ARCP common stock and/or cash pursuant to the terms of the Cole Merger Agreement, as set forth in the Cole Registration Statement/Proxy.  Ninety-eight percent of Cole shareholders received 1.0929 shares of ARCP common stock for each Cole share.  The Cole shareholders who received ARCP

shares in exchange for Cole shares include Plaintiffs Vanguard Specialized Funds, on behalf of its Vanguard REIT Index Fund series; Vanguard Index Funds, on behalf of its Vanguard Mid-Cap Index Fund series, Vanguard Total Stock Market Index Fund series, and Vanguard Extended Market Index Fund series; Vanguard Institutional Index Funds, on behalf of its Vanguard Institutional Total Stock Market Index Fund series; Vanguard Variable Insurance Funds, on behalf of its Vanguard Variable Insurance Fund REIT Index Portfolio; Vanguard World Fund, on behalf of its Vanguard Financials Index Fund series; Vanguard Valley Forge Funds, on behalf of its  Vanguard Balanced Index Fund series; and  VFTC Total Stock Market Index Trust (the "Cole Exchange Plaintiffs").

200.    That same day, ARCP issued a press release commenting on the closing of the Cole Merger entitled "American Realty Capital Properties Completes Acquisition of Cole Real Estate Investments Creating Largest Net Lease REIT" ("February 7, 2014 Press Release").  ARCP also filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the February 7, 2014, Press Release as an exhibit.  In the February 7, 2014, Press Release, Defendants extolled the virtues of the Cole Merger.  For example, Defendant Schorsch stated:

> With the closing of the Cole acquisition, we have become one of the leading publicly traded REITs, and the dominant net lease REIT,  61% larger than the closest net lease competitor.  With the scale and advantages that come with being a $21.5 billion investment grade credit rated company, we expect to enjoy a significant cost of capital advantage.  We intend to use this low cost, readily available capital to build out our portfolio and to attract and retain exceptional professionals.

201.    Defendant Kay added that:

> Following closing, the combination of our previously separate management teams provides us a powerful leadership core to firmly establish a solid

foundation for the future.  With Cole in the fold, we will now focus further on de-levering our balance sheet, broadening our unencumbered asset pool and fine-tuning our duration matching, all this to further enhance the durability of our cash flows.

202.   Defendant Beeson remarked that ARCP had grown "rapidly yet deliberately" and that through the Cole Merger, ARCP expected "to benefit from significant synergies, totaling approximately $70 million."   Defendant Block further stated that the Company reaffirmed its "2014 AFFO guidance range of $1.13 to $1.19 per share."

203.   The February 7, 2014, Press Release also highlighted several additional supposed "benefits" of the Cole Merger including (1) Enhanced Scale and Competitiveness; (2) Increased Institutional Coverage and Ownership/Investment Grade Credit Rating; (3) Operational Efficiencies and Expense Reductions; and (4) Cost of Capital Advantage.  The release further highlighted that – in addition to Moody's – ARCP had now received an "investment grade credit rating from Standard & Poor's Rating Services."

204.   The statements referenced in ¶¶ 166-183, 185-195, 198, 200-203, each were materially false and misleading and omitted material facts when made.  The true facts were that:

(a)   Contrary to the statements referenced in ¶¶ 172, 178, 180-181, 186, 191-193, and as the Company admitted in connection with its restatement, ARCP's internal controls over financial reporting suffered from "material weaknesses," which resulted in the Company failing to (i) maintain adequate controls to assess, authorize and monitor related-party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates; (ii) maintain adequate controls over various grants of equity-based compensation;

(iii) implement consistent policies and procedures relating to purchase accounting; (iv) establish clear reporting lines and job responsibilities or promote accountability over business process control activities; and (v) develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates;

(b)     Contrary to the statements referenced in ¶¶ 166-183, 185-195, 198, 200-203, ARCP's financial statements were materially false and misleading, did not accurately reflect the Company's financial performance, and were not prepared in conformity with GAAP. In an effort to avoid public disclosure of ARCP's faltering financial performance, ARCP changed, among other things, its historical AFFO-calculation methodology, resulting in ARCP's reported AFFO, AFFO per share, net income and earnings per share being materially inflated and false;

(c)     Contrary to the statements referenced in ¶¶ 166, 170, 173-175, 177, 188, 198, 202, ARCP was not, as it represented in its financial statements, calculating AFFO based on the industry-standard definition of FFO. Rather, the Company was intentionally and improperly adding back costs that were not associated with its ownership interest in the Operating Partnership;

(d)     Contrary to the statements referenced in ¶¶ 166, 170, 173-175, 177, 188, 198, 202, ARCP's 2014 AFFO estimates and related statements about its projected earnings growth were not accurate, attainable, honestly believed, or founded on a reasonable basis. As Defendants knew but omitted to disclose to investors, ARCP's claimed AFFO growth could only be achieved through Defendants' continued falsification of ARCP's financial statements;

(e)     Contrary to the statements referenced in ¶¶ 175, 185-195, 200-203, the Cole Merger would not drive 2014 AFFO per share growth or earnings accretion, but rather would allow ARCP to conceal its inability to meet its 2013 and 2014 performance estimates;

(f)     Contrary to the statements referenced in ¶¶ 177-183, 198, the ARCT IV Merger was not instrumental to achieving 2014 AFFO growth per share and would not result in a higher future AFFO growth rate. Rather, the transaction would allow ARCP to conceal its inability to meet its 2013 and 2014 performance estimates;

(g)    Contrary to the statements referenced in ¶¶ 172, 178, 180-181, 186, 191-193, and as the Company admitted in connection with its restatement, ARCP's disclosure controls and procedures suffered from "material weaknesses" and were not properly designed or implemented to ensure that (i) AFFO per share was correctly calculated; (ii) AFFO guidance, and the Company's ability to meet that guidance, were accurate; (iii) the information in its SEC filings correctly reflected its internal accounting records; and (iv) its SEC filings were reviewed on a timely basis by senior management and that significant changes in previously reviewed documents were brought to the attention of the Audit Committee for approval before filing;

(h)    Contrary to the statements referenced in ¶¶ 172, 178, 180-181, 186, 191-193, the Company's rapid pace of mergers and acquisitions during the Relevant Period "had a severe impact on the Company's control environment" and exacerbated the deficiencies in ARCP's internal controls and financial reporting processes;

(i)    Contrary to the statements referenced in ¶¶ 167, 173-175, 177, 185, 198, 200-203, ARCP's "growth by acquisition" strategy was not beneficial for its shareholders, but instead was designed to generate transaction fees for Schorsch-controlled companies and to result in large compensation payments to executives in Schorsch-controlled companies without regard to the underlying fairness of the transaction.  In particular, the Cole Merger was not a "terrific result[]" for ARCP or Cole shareholders, but rather was designed to and did permit the payment of $37 million in related-party transactional fees and compensation payments to ARCP insiders and other parties affiliated with Schorsch; and

(j)    Contrary to the statements referenced in ¶¶ 177, 185, the ARCT IV Merger and the Cole Merger were not "advisable, fair to and in the best interests of ARCP and its stockholders."

## V.    Fourth Quarter and Year-End 2013 Financial Results

205.  On February 27, 2014, ARCP issued a press release announcing "Record Earnings of $163.9 Million and AFFO Per Share of $0.86 for 2013" ("Fourth Quarter 2013 Press Release").  That same day, the Company filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit.  The

release touted, among other things, record earnings and AFFO.   Specifically, ARCP announced AFFO of $55.8 million, a year-over-year increase of 153%, and AFFO per fully diluted share of $0.25, a year-over-year increase of 108%.  For the fiscal year ended 2013, the Company reported AFFO of $163.9 million, an increase of 240% from 2012, and AFFO per fully diluted share of $0.86, an increase of over 80% from 2012 and "Exceeding Consensus AFFO Estimates."   The Company also reiterated its full-year 2014 AFFO per share estimates of $1.13 to $1.19 per fully diluted share.

206.   In the Fourth Quarter 2013 Press Release, Defendant Schorsch commented:

As these results unequivocally demonstrate, we have accomplished an extraordinary amount in a very short time, underscoring our ability to execute key initiatives on every level across the organization.  We will complete over $1.0 billion of acquisitions during the first quarter, at a pace ahead of projections and accretive to our earnings.  Our robust pipeline of property acquisitions, as well as other corporate opportunities we are privy to, is consistent with our ability to grow impressively, while staying true to our strategy.

In addition to the strong growth we have seen with our earnings, ARCP's improved leverage posture and identified G&A synergies from the Cole acquisition are also generating a positive impact to the bottom line.  Not only did we beat consensus estimates for the fourth quarter, our first quarter is off to a tremendous start.  When you compare these financial results to our peer group valuation metrics, particularly dividend yield and earnings multiple, we believe our Company is undervalued and poised for a share price increase.

207.   The Fourth Quarter 2013 Press Release also contained a statement from Defendant Block, who touted ARCP's annual results:

2013 proved to be a record-setting year for ARCP both in terms of earnings and growth, allowing us to beat consensus estimates.  Based on the strength of our self-originated acquisitions . . . we firmly believe that 2014 will be an even more impressive year.  These factors should fortify our 2014 AFFO guidance of $1.13 to $1.19 per share . . . .   With strong AFFO per share growth, an attractive property portfolio, strong credit tenants bounded by

long-term net leases and an attractively positioned balance sheet, we believe ARCP has the catalysts to provide long-term shareholder returns.

208.   The Fourth Quarter 2013 Press Release also contained the following statement about AFFO and the Company's AFFO estimates:

**Funds from Operations and Adjusted Funds from Operations**

Funds from operations ("FFO") for the three months ended December 31, 2013, totaled $(93.2) million, or $(0.43) per share. FFO for this period includes one-time merger and other transaction related expenses of $111.7 million. FFO for the 12 months ended December 31, 2013 totaled $(249.5) million, or $(1.43) per fully diluted share. FFO for this period includes one-time merger and other transaction related expenses of $280.0 million. Excluding such one-time costs, FFO was $30.4 million, or $0.16 per share fully diluted. Adjusted funds from operations ("AFFO") for the three months ended December 31, 2013, totaled $55.8 million, or $0.25 per fully diluted share. AFFO for the 12 months ended December 31, 2013 totaled $163.9 million, or $0.86 per share fully diluted.

\*       \*       \*

**2014 Guidance**

In connection with the announcement of the Cole merger transaction, ARCP reiterated 2014 AFFO guidance from $1.13 to $1.19 per share.

209.   The Fourth Quarter 2013 Press Release also contained statements similar to that included in other press releases during the Relevant Period with respect to the importance of AFFO.  See ¶¶ 131, 152, 168, above.

210.   Also on February 27, 2014, ARCP filed with the SEC its annual report on Form 10-K for the year ended December 31. 2013 ("2013 Form 10-K").  The 2013 Form 10-K, which was signed by Defendants Schorsch, Block, Kay, and McAlister, contained the same financial results and AFFO figures from the Fourth Quarter 2013 Press Release,

and represented that those financial results were accurate and presented in accordance with GAAP.

211.   The 2013 Form 10-K also contained statements about AFFO substantially similar to those in the Company's other public representations during the Relevant Period.  Specifically:

> In this report, American Realty again discussed the importance of AFFO with regards to Company performance, stating:  We consider FFO and AFFO useful indicators of the performance of a REIT.  Because FFO calculations exclude such factors as depreciation and amortization of real estate assets and gains or losses from sales of operating real estate assets (which can vary among owners of identical assets in similar conditions based on historical cost accounting and useful-life estimates), they facilitate comparisons of operating performance between periods and between other REITs in our peer group.  Accounting for real estate assets in accordance with U.S. GAAP implicitly assumes that the value of real estate assets diminishes predictably over time.  Since real estate values have historically risen or fallen with market conditions, many industry investors and analysts have considered the presentation of operating results for real estate companies that use historical cost accounting to be insufficient by themselves.

212.   In addition, the Company provided the following table that quantified "items deducted or added to net loss in our calculation of FFO and AFFO for the years ended December 31, 2013, 2012 and 2011 and on a pro forma basis for the year ended December 31, 2013 (amounts in thousands)" and assured investors that the amounts listed were "presented net of any non-controlling interest effect, where applicable":