| | Year Ended December 31, | | | ARCP Pro |
|---|---|---|---|---|
| | 2013 | 2012 | 2011 | Forma |
| Net loss attributable to stockholders | $ (406,505) | $ (39,399) | $ (4,699) | $ 228,632 |
| (Gain) loss on held for sale properties | (14) | 600 | 815 | (55,041) |
| Depreciation and amortization | 156,971 | 40,700 | 2,111 | 604,479 |
| FFO | (249,548) | 1,901 | (1,773) | 778,070 |
| Acquisition related | 23,295 | 42,761 | 3,898 | — |
| Merger and other transaction related | 256,662 | 2,603 | — | — |
| (Gain) loss on investment securities | (40) | (534) | — | 3,537 |
| Loss on derivative instruments, net | 67,937 | — | 2 | 69,111 |
| Interest on convertible obligation to preferred investors | 10,802 | — | — | — |
| Interest premiums and discounts on debt, net and settlement of convertible obligation to preferred investors | 12,072 | — | — | 11,843 |
| Amortization of above- and below-market lease assets and liabilities | (246) | 108 | — | 2,744 |
| Amortization of deferred financing costs | 11,183 | 1,985 | 186 | 16,473 |
| Straight-line rent | (8,791) | (2,145) | (229) | (65,947) |
| Non-cash equity compensation expense | 34,935 | 1,191 | 191 | 34,935 |
| Operating fees to affiliate | 5,654 | 212 | — | $ 63,002 |
| AFFO | $ 163,915 | $ 48,082 | $ 2,275 | $ 913,768 |

213.    Specifically, the table represented that AFFO was $163,915,000 for the year ended December 31, 2013, compared to $48,082,000 for the year ended December 31, 2012.

214.    Note 3 to the 2013 Form 10-K, which was entitled "Summary of Significant Accounting Policies," represented that ARCP's financial statements were "prepared on the accrual basis of accounting in accordance with U.S. GAAP."

215.    Defendants also stated the following with respect to the Company's internal controls and procedures:

In accordance with Rules 13a-15(b) and 15d-15(b) of the Exchange Act, management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Annual Report on Form 10-K.  Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded, as of the end of such period, that our disclosure controls and procedures are effective in recording, processing, summarizing and reporting, on a timely basis, information required to be disclosed by us in our reports that we file or submit under the Exchange Act.

**Management's Annual Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended. Our internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles.

Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2013. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in the 1992 Internal Control-Integrated Framework.

Based on our assessment, our management believes that, as of December 31, 2013, our internal control over financial reporting is effective.

216.   The 2013 Form 10-K also contained the same internal disclosure control Certifications and SOX Certifications that were included with ARCP's Forms 10-Q filed during the Relevant Period.  <u>See</u> ¶¶ 95, 135-136, 156, 172, above.  Again, Defendants Schorsch and Block signed the Certifications, which represented, among other things, that Defendants Schorsch and Block had reviewed the 2013 Form 10-K and that it contained no materially untrue statements or omissions; fairly represented in all material respects the financial condition of ARCP; was accurate in all material respects; and disclosed any material changes to the Company's internal control over financial reporting.

217.   After the market closed on February 27, 2014, Defendants held a conference call to discuss the Company's fourth quarter of 2013 results.  During the

conference call, Defendant Schorsch confirmed that "[o]ur earnings guidance is solid,"

and even had "room for upside[.]"  Defendant Block stated:

> We are very pleased to be sharing such impressive results for 2013 and the beginning of 2014 . . . .  Our AFFO improved more than 240% to approximately $164 million, producing a 70% increase of AFFO per share on a fully diluted basis to $0.86.  The strength of our AFFO is directly related to our investing $3.4 billion in 676 new real estate properties and the closing and successful integration of the $2.3 billion acquisition of ARCT Trust III the $2.2 billion acquisition of CapLease and the $774 million acquisition of the GE [Trust REIT] portfolio. . . .  [W]e comfortably affirm our 2014 AFFO guidance of $1.13 to $1.19 per share . . . .

> Based on the strength of our acquisitions, success in our private capital management business, strategic execution of our balance sheet initiatives and the continued savings in G&A costs, we comfortably affirm our 2014 AFFO guidance of $1.13 to $1.19 per share.

> We currently have today 812.5 million shares and share equivalents outstanding on a fully diluted basis.  The end result of all these numbers, I just mentioned is a run rate of around $1.11 to $1.13 per share AFFO.  Again, this number is a run rate through what we know today.

> If we didn't do anything else as of April 1st, we would achieve this roughly $1.12 per share for the prospective 12 months.  We of course will continue to acquire more than the $1 billion we've discussed over the next nine months and therefore achieve higher results.

> These results demonstrate tremendous success and are a result of the equally tremendous hard work.

218.   In addition, the following exchange regarding the transaction took place

between analyst Chris Lucas of Capital One Securities and Defendant Block about the

Company's full-year 2014 AFFO estimates:

> **Analyst Lucas**: [A]nd then, again related to guidance. Brian, just in terms of getting to the low end of the numbers, we should just assume that, that $1.13 at the low end is reflective of just essentially what you've talked about before which is what's done and nothing more, is that effectively how we should be thinking about the low end?

**Defendant Block**: That's correct.  So to repeat Chris, if we didn't do anything past March 31st, we'd be at the low end of the range and that's fact that we have a lot more acquisition potential for the duration of the year.

219.   Also during the call, Defendant Beeson touted ARCP's "acquisition machine" in the following exchange with analyst Josh Patinkin of BMO Capital Markets:

**Analyst Patinkin**:  Okay and is that you think  what enabled you such an attractive initial yield going into smaller deal size?

**Defendant Beeson**:  Absolutely, that is how we distinguish our[selves],  no other company has the acquisition machine that we have built here that enables us to cost effectively do smaller one-off transactions and that's how we're able to get the pricing differential.  We can buy three assets at a 7.75[%] or an 8[%] cap that another competitor buys in a portfolio at a 6, 7[%] cap,  that's a significant spread differential and we do that because we're able to and will do granular level acquisitions.

220.   The statements referenced in ¶¶ 205-219 each were materially false and misleading and omitted material facts when made.  The facts were that:

(a)     ARCP's reported AFFO for the fourth quarter of 2013 was overstated by nearly 90%, and its reported AFFO for the full year of 2013 was overstated by 23%, as detailed in ¶¶ 13, 88;

(b)     Contrary to the statements referenced in ¶¶ 205-219, ARCP's financial statements were materially false and misleading as they did not accurately portray the Company's financial performance, and were not prepared in accordance with GAAP.  Specifically, ARCP reported that its AFFO for the year ending December 31, 2013, was $163,915,000.  Defendants have admitted, however, that the reported AFFO figure was materially inflated, including because ARCP improperly added back expenses associated with 100% of the equity interests in the Operating Partnership.  As a result, ARCP was forced to restate and amend its 2013 Form 10-K, including the following adjustments: (i) AFFO and AFFO per share were reduced by $43.9 million (23%) and $0.20 per share (23%), respectively; and (ii) net loss attributable to stockholders and net loss per share were increased by $16.8 million (3.5%) and $0.08 per share (3.5%), respectively;

(c)     Contrary to the statements referenced in ¶¶ 205-219, ARCP's 2014 AFFO estimates were not accurate, attainable, honestly believed, or founded on a reasonable basis.  As Defendants knew but omitted to disclose to investors.  ARCP's claimed AFFO growth could only be achieved through Defendants' continued falsification of ARCP's financial statements;

(d)     Contrary to the statements referenced in ¶ 216, and as the Company admitted in connection with its Restatement, ARCP's disclosure controls and procedures suffered from "material weaknesses" and were not properly designed or implemented to ensure that (i) AFFO per share was correctly calculated; (ii) AFFO guidance, and the Company's ability to meet that guidance, were accurate; (iii) the information in its SEC filings correctly reflected its internal accounting records; and (iv) its SEC filings were reviewed on a timely basis by senior management and that significant changes in previously reviewed documents were brought to the attention of the Audit Committee for approval before filing;

(e)     Contrary to the statements referenced in ¶ 216, and as the Company admitted in connection with its Restatement, ARCP's internal controls over financial reporting suffered from "material weaknesses," which resulted in the Company failing to (i) maintain adequate controls to assess, authorize and monitor related-party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates; (ii) maintain adequate controls over various grants of equity-based compensation; (iii) implement consistent policies and procedures relating to purchase accounting; (iv) establish clear reporting, lines and job responsibilities or promote accountability over business process control activities; and (v) develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates;

(f)     Contrary to the statements referenced in ¶ 216, the Company's rapid pace of mergers and acquisitions during the Relevant Period "had a severe impact on the Company's control environment" and exacerbated the deficiencies in ARCP's internal controls and financial reporting processes;

(g)     Contrary to the statements referenced in ¶¶ 205-219, ARCP's "growth by acquisition" strategy was not beneficial for its

shareholders, but instead was designed to generate transaction fees for Schorsch-controlled companies and to result in large compensation payments to executives in Schorsch-controlled companies without regard to the underlying fairness of the transaction; and

(h)     Contrary to the statements referenced in ¶ 206, Defendants' statement that the Company was "undervalued" was based on inflated AFFO numbers that were only possible through manipulation and falsification of ARCP's actual performance.

### W.     First Quarter 2014 Financial Results

221.   On May 8, 2014, ARCP issued a press release announcing "Record First Quarter 2014 Operating Results" ("First Quarter 2014 Press Release").  That same day, the Company filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit.  The press release announced AFFO available to common stockholders of $147.4 million, or $0.26 per diluted share, representing a year-over-year increase of 334.6%.  ARCP reaffirmed its full-year 2014 AFFO estimates of $1.13 to $1.19 per diluted share.

222.   The First Quarter 2014 Press Release contained the following statements from Defendant Schorsch regarding the Company's financial results:

We had a record quarter with earnings coming exactly in line with our expectations of $0.26 AFFO per share, consistent with our previously stated guidance for the year. Additionally, our year-to-date acquisitions, combined with properties currently under contract puts us well-ahead of schedule to achieve our total 2014 annual acquisition targets by midyear. With our strengthened balance sheet, and the Company ready to capitalize on a number of large-scale sale- leaseback transactions, we are in position to deliver strong shareholder return this year . . . .

223.   Likewise, Defendant Kay represented:

With our acquisitions team firing on all cylinders, every aspect of our business is exceeding our expectations . . .   With strong earnings, our

acquisition volume is outpacing our guidance, our cap rates surpass all industry peers, Cole Capital launched two new products, and we successfully integrated our management and systems, all of which is allowing us to execute with a disciplined intensity. The $1.7 billion of acquisitions we have closed or placed under contract were at a 7.92% cash cap rate or 8.26% GAAP cap rate. These 150 self-originated transactions are indicative of the scale and expertise of our platform, providing a significant competitive advantage.

224. Defendant Beeson further noted that the Company's "improved operational and financial efficiencies" had positioned ARCP "well to drive meaningful growth."

225. The First Quarter 2014 Press Release also contained statements similar to that included in other press releases during the Relevant Period with respect to the importance of AFFO. See, e.g., ¶¶ 131, 152, 168, 209, above.

226. Also on May 8, 2014, ARCP filed with the SEC its Form 10-Q for the quarter ended March 31, 2014 ("First Quarter 2014 Form 10-Q"). The First Quarter 2014 Form 10-Q was signed by Defendants Schorsch and Block, contained the same financial results and reported AFFO from the First Quarter 2014 Press Release, and represented that those financial results were accurate and presented in accordance with GAAP. The First Quarter 2014 Form 10-Q also contained substantially similar statements about AFFO as compared to the Company's other documents filed with the SEC during the Relevant Period. See, e.g., ¶¶ 131-132, 153, 169, 210, above. Notably, although she signed the 2013 Form 10-K and the Second Quarter 2014 Form 10-Q, Defendant McAlister did not sign the First Quarter 2014 Form 10-Q.

227. In addition, the Company provided the following table that quantified "the items deducted or added to net loss in our calculation of FFO and AFFO for the three months ended March 31, 2014 and 2013 (in thousands)" and assured investors that the

amounts listed were "presented net of any non-controlling interest effect where applicable":

| | Three Months Ended March 31, | | | |
|---|---|---|---|---|
| | 2014 | | 2013 | |
| Net loss attributable to stockholders (in accordance with U.S. GAAP) | $ | (332,313) | $ | (141,163) |
| Gain on disposition of property | | (2,979) | | — |
| Depreciation and amortization of real estate assets | | 150,899 | | 26,731 |
| Depreciation and amortization of real estate assets in unconsolidated joint ventures | | 602 | | — |
| FFO | | (183,791) | | (114,432) |
| | | | | |
| Acquisition related | | 11,884 | | 10,327 |
| Merger and other transaction related | | 222,192 | | 137,769 |
| Gain on investment securities | | — | | (451) |
| Loss on derivative instruments, net | | 20,197 | | 5 |
| Amortization of premiums and discounts on debt and investments | | (18,325) | | — |
| Dividends attributable to convertible preferred shares | | 5,053 | | — |
| Dividends attributable to participating securities | | 936 | | — |
| Amortization of above- and below-market lease assets and liabilities, net | | 358 | | 68 |
| Amortization of deferred financing costs | | 37,940 | | 1,243 |
| Other amortization and depreciation | | 14,374 | | 22 |
| Loss on early extinguishment of debt | | 20,819 | | — |
| Straight-line rent | | (7,520) | | (1,510) |
| Non-cash equity compensation expense | | 22,510 | | 881 |
| Proportionate share of adjustments for unconsolidated joint ventures | | 762 | | — |
| AFFO | $ | 147,389 | $ | 33,922 |

228.   Specifically, the table represented that AFFO was $147,389,000 for the three-month period ended March 31, 2014, compared to $33,922,000 for the three-month period ended March 31, 2013.

229.   Note 3 to the Third Quarter 2013 Form 10-Q, which was entitled "Summary of Significant Accounting Policies," represented that ARCP's financial statements "were prepared in conformity with U.S. GAAP" and that they included "all adjustments and accruals of a normal recurring nature, which, in the opinion of management, are necessary for a fair presentation of results for the interim periods."

230.   The First Quarter 2014 Form 10-Q also contained the same internal disclosure control Certifications and SOX Certifications that were included with ARCP's other Forms 10-Q filed during the Relevant Period.  See, e.g., ¶¶ 95, 135-136, 156, 172, above.  Again, Defendants Schorsch and Block signed the Certifications.

231.   Later on May 8, 2014, ARCP held a conference call to discuss the Company's first quarter 2014 financial results.  During the call, Defendant Schorsch stated:  "Our first quarter earnings came in exactly where we expected, at $0.26 per share of AFFO," and reiterated that "[w]e are confident with our guidance for the full year of 2014 of $0.13 to $0.19 per share and a forward quarterly run rate of $0.29 to $0.30 per share."  Likewise, Defendant Block noted that the first quarter 2014 AFFO was $0.26 per share, fully diluted, and that the Company's "current run rate based on AFFO per share fully diluted is between $0.29 and $0.30."  Following his prepared remarks, Defendant Schorsch stated that investors should buy ARCP stock as "we are way undervalued." Defendant Schorsch further emphasized that "our stock is cheap."

232.   During the call, Defendant Beeson discussed aspects of the Company's operations and net lease portfolio, stated that it had "successfully integrated over 300 individuals from the multiple entities into one cohesive enterprise," and confirmed that the respective accounting systems had likewise been "fully integrated as well."

233.   The statements referenced in ¶¶ 221-232 each were false and misleading and omitted material facts when made. The facts were that:

> (a)   ARCP's reported first quarter 2014 AFFO of $147 million, or $0.26 per share, was overstated by 35%, as detailed above in ¶¶ 13, 88;

(b)     ARCP had not achieved "record" results, was not experiencing "improved operational efficiencies," and was not positioned for meaningful growth, as the Company lacked reliable financial controls and, as a result, was issuing false financial reports, including materially inflated AFFO and unreliable AFFO guidance;

(c)     ARCP's financial statements referenced in ¶¶ 221-232 were materially false and misleading, as they did not accurately portray the Company's financial performance, and were not prepared in conformity with GAAP.  Specifically, ARCP reported that its AFFO available to common stockholders was $147.4 million.  As confirmed by Defendants' admissions, however, that figure was inflated, including because ARCP improperly added back expenses associated with 100% of the equity interests in the Operating Partnership.  As a result, ARCP was forced to restate and amend the First Quarter 2014 Form 10-Q, including the following adjustments: (i) AFFO and AFFO per share were reduced by $38.5 million (26.1 %) and $0.07 per share (26.9%), respectively; and (ii) net loss attributable to the Company and net loss per share were reduced by $17.2 million (5.58%) and $0.03 per share (5.5 8%), respectively;

(d)     Contrary to the statements referenced in ¶¶ 221-232, ARCP's 2014 AFFO estimates and related statements about its projected earnings growth were not accurate, attainable, honestly believed, or founded on a reasonable basis.  To the contrary, ARCP's claimed AFFO growth could be achieved only through Defendants' continued falsification of ARCP's financial statements;

(e)     Contrary to the statements referenced in ¶ 230, and as the Company admitted in connection with its Restatement, ARCP's disclosure controls and procedures suffered from "material weaknesses" and were not properly designed or implemented to ensure that (i) AFFO per share was correctly calculated; (ii) AFFO guidance, and the Company's ability to meet that guidance, were accurate; (iii) the information in its SEC filings correctly reflected its internal accounting records; and (iv) its SEC filings were reviewed on a timely basis by senior management and that significant changes in previously reviewed documents were brought to the attention of the Audit Committee for approval before filing;

(f)     Contrary to the statements referenced in ¶ 230, and as the Company admitted in connection with its Restatement, ARCP's internal controls over financial reporting suffered from "material weaknesses," which resulted in the Company failing to maintain adequate controls to assess, authorize and monitor related-party

transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates; (ii) maintain adequate controls over various grants of equity-based compensation; (iii) implement consistent policies and procedures relating to purchase accounting; (iv) establish clear reporting, lines and job responsibilities or promote accountability over business process control activities; and (v) develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates;

(g)     Contrary to the statements referenced in ¶ 230, the Company's rapid pace of mergers and acquisitions during the Relevant Period, including the Cole Merger, "had a severe impact on the Company's control environment" and exacerbated the deficiencies in ARCP's internal controls and financial reporting processes;

(h)     Contrary to the statements referenced in ¶¶ 221-232, ARCP's "growth by acquisition" strategy was not beneficial for its shareholders, but instead was designed to generate transaction fees for Schorsch-controlled companies and to result in large compensation payments to executives in Schorsch-controlled companies without regard to the underlying fairness of the transaction;

(i)     Defendants' statement in ¶ 232 that the Company had successfully integrated its financial systems and operations "into one cohesive enterprise" was false because the Company lacked even the most basic accounting functions, including a standardized internal accounting, close and cash reconciliation process; and

(j)     Defendants' statements in ¶ 231 that the Company was "way undervalued" were based on inflated AFFO numbers that were only possible through manipulation and falsification of ARCP's actual performance.

## X.     May 21, 2014, Stock Offering

234.   On March 14, 2013, ARCP committed to offer up to 138 million of newly issued shares of common stock at $12.00 per share ("May 2014 Stock Offering"), which ultimately raised $1.65 billion.

235.   In connection with the May 2014 Stock Offering, ARCP filed a Form S-3ASR ("Shelf Registration Statement") with the SEC. According to the Shelf Registration Statement, certain documents filed with the SEC were incorporated by reference:

> [A]ny reports filed by [ARCP] with the SEC after the date of this [statement] and before the date that the offering of securities by means of this prospectus is terminated will automatically update and, where applicable, supersede any information contained in this [statement] or incorporated by reference into this [statement].
>
> All documents that [ARCP] file[s] (but not those that we furnish) pursuant to Sections 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended, or the Exchange Act, after the date of the initial registration statement of which this prospectus is a part and prior to the effectiveness of the registration statement . . . .
>
> *       *       *
>
> All documents that [ARCP] file[s] (but not those that we furnish) pursuant to Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act on or after the date of this prospectus and prior to the termination of the offering of any of the securities covered under this prospectus . . . .

236.   The documents filed with the SEC that were incorporated by reference in the Shelf Registration Statement included ARCP's 2013 Form 10-K and First Quarter 2014 Form 10-Q, as well as a preliminary Prospectus Supplement filed May 21, 2014, a Prospectus Supplement filed May 23, 2014, and other offering materials identified therein. The Shelf Registration Statement was signed by Defendants Schorsch and Block.

237.   On May 21, 2014, ARCP issued the May 2014 Stock Offering Press Release, which announced the issuance of 100 million shares of newly issued ARCP stock.  That same day, the Company filed with the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as an exhibit.

238.    The statements referenced in ¶¶ 235-237 each were materially false and misleading and omitted material facts when made.  The facts were that:

(a)    ARCP's financial statements referenced in ¶¶ 235-237 were materially false and misleading as they did not accurately portray the Company's financial performance, and were not prepared in accordance with GAAP.   Specifically, the AFFO that ARCP reported in its 2013 Form 10-K and its First Quarter 2014 Form 10-Q were inflated because ARCP improperly added back expenses associated with 100% of the equity interests in the Operating Partnership.  As a result, ARCP was forced to restate and amend its 2013 Form 10-K, including the following adjustments: (i) AFFO and AFFO per share were reduced by $43.9 million (23%) and $0.20 per share (23%), respectively; and (ii) net loss attributable to stockholders and net loss per share were increased by $16.8 million (3.5%) and $0.08 per share (3.5%), respectively.  In addition, ARCP restated and amended its First Quarter 2014 Form 10-Q, including the following adjustments: (i) AFFO and AFFO per share were reduced by $38.5 million (26.1%) and $0.07 per share (26.9%), respectively; and (ii) net loss attributable to the Company and net loss per share were reduced by $17.2 million (5.58%) and $0.03 per share (5.58%), respectively;

(b)    Contrary to the statements referenced in ¶¶ 235-237, ARCP's 2014 AFFO estimates were not accurate, attainable, honestly believed, or founded on a reasonable basis.  As Defendants knew but omitted to disclose to investors, ARCP's claimed AFFO growth could only be achieved through Defendants' continued falsification of ARCP's financial statements;

(c)    Contrary to the statements referenced in ¶¶ 235-237, and as the Company admitted in connection with its Restatement, ARCP's disclosure controls and procedures suffered from "material weaknesses" and were not properly designed or implemented to ensure that (i) AFFO per share was correctly calculated; (ii) AFFO guidance, and the Company's ability to meet that guidance, were accurate; (iii) the information in its SEC filings correctly reflected its internal accounting records; and (iv) its SEC filings were reviewed on a timely basis by senior management and that significant changes in previously reviewed documents were brought to the attention of the Audit Committee for approval before filing;

(d)     Contrary to the statements referenced in ¶¶ 235-237, and as the Company admitted in connection with its Restatement, ARCP's internal controls over financial reporting suffered from "material weaknesses," which resulted in the Company failing to (i) maintain adequate controls to assess, authorize and monitor related-party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates; (ii) maintain adequate controls over various grants of equity-based compensation; (iii) implement consistent policies and procedures relating to purchase accounting; (iv) establish clear reporting lines and job responsibilities or promote accountability over business process control activities; and (v) develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates;

(e)     Contrary to the statements referenced in ¶¶ 235-237, the Company's rapid pace of mergers and acquisitions during the Relevant Period "had a severe impact on the Company's control environment" and exacerbated the deficiencies in ARCP's internal controls and financial reporting processes;

(f)     Contrary to the statements referenced in ¶¶ 235-237, ARCP's "growth by acquisition" strategy was not beneficial for its shareholders, but instead was designed to generate transaction fees for Schorsch-controlled companies and to result in large compensation payments to executives in Schorsch-controlled companies without regard to the underlying fairness of the transaction; and

(g)     Contrary to the statements referenced in ¶¶ 235-237, the Company lacked appropriate controls to ensure, among other things, that its Code of Conduct was adhered to and that employees would not be subject to pressure to make inappropriate decisions concerning the formulation of ARCP's financial statements or calculation of AFFO.

## Y.     REIT Week Investor Forum

239.    On June 3, 2014, Schorsch spoke on behalf of the Company at the National Association of Real Estate Investment Trusts REITWeek Investor Forum in New York City. Schorsch emphasized to the institutional investors, securities analysts, and

investment-banking and financial-service professionals in attendance the Company's

increased acquisition guidance for 2014, stating that:

> We've also raised our acquisition guidance – our core acquisition guidance.
> This is critically important for people to understand about what we do. This
> is a very, very large enterprise. It's about $30 billion between our non-
> traded REITs that are the Cole brand and our traded American Realty
> balance sheet.
>
> \*     \*     \*
>
> . . . But the reason we've raised our acquisition target is because we met the
> entire year's core acquisition target by June. It makes no sense to not have
> acquisitions in the last half of the year. Now granted, we do not expect
> anywhere near the acquisition speed in the last half of the year . . . but we
> did raise our target from $3 billion to $4.5 billion and we're currently
> already locked and loaded on $3.3 billion to close this year through the end
> of June.

### Z.     June 20, 2014, Stockholder Memorandum

240.    On June 20, 2014, ARCP issued a stockholder memorandum ("June 2014

Stockholder Memorandum"). That same day, the Company filed with the SEC a Form 8-

K, which Defendant Schorsch signed, and included the stockholder memorandum as an

exhibit. The stockholder memorandum also included a chart emphasizing that ARCP

was "a compelling value proposition" because, among other things, it traded at the

"lowest 2014 AFFO multiple" relative to its peers.

### AA.    Second Quarter 2014 Financial Results

241.    On July 29, 2014, ARCP issued a press release for the second quarter of

2014 ("Second Quarter 2014 Press Release"). That same day, the Company filed with

the SEC a Form 8-K, which Defendant Schorsch signed, and included the press release as

an exhibit. The release announced AFFO of $205.3 million, representing a year-over-

year increase of 429.0%, and AFFO per diluted share of $0.24, representing a year-over-

year increase of 26%.  The Company also reported a net loss of $63.4 million, or $0.08

per share.  The Company also reported a "[p]ro forma normalized estimated AFFO run

rate as of year-end 2014 of $1.18 to $1.20 per share including 2014 completed and

announced transactions."

242.   The Second Quarter 2014 Press Release contained the following statement

from Defendant Schorsch regarding the Company's financial results:

> I have continued to focus my attention on improving corporate governance .
> . . .  With the support of our Board of Directors, we are improving our
> practices by eliminating related party transactions, enhancing disclosures,
> evaluating executive compensation, opting out of the MUTA to assure our
> stockholders' right to elect the entire Board at each annual meeting, and
> implementing other policies designed to improve our reporting and
> transparency, further align interest with our stockholders, and eliminate
> potential conflicts of interest. Our goal is to constantly improve our
> corporate governance, which we expect will ultimately be reflected in our
> corporate governance scores.  All of these efforts are taken with a view
> toward creating long-term value for stockholders.

243.   Likewise, Defendant Kay stated that ARCP was purportedly well-

positioned to continue to provide value to its shareholders:

> Our second quarter results and accomplishments are indicative of our focus
> on driving long-term value by delivering on our commitments . . . .  In six
> months, we have fully integrated the organization, achieved $38.0 million
> of the $77.0 million of cost synergies to come in the first year, reduced
> leverage, de-risked the balance sheet, lengthened debt maturities, created
> $11.8 billion of unencumbered assets and significantly extended and
> upsized our credit facility. With these actions undertaken and the formative
> stage of the company behind us, we are focused on the day-to-day
> operations of the company. Through all of these undertakings, we are
> positioned for long-term success.
>
> Our balance sheet acquisitions in the quarter, owned and under contract, of
> 1,217 properties in over 210 separate transactions demonstrates the

continuing systematic execution of our core acquisition strategy and testifies to the repeatability of our investment process.

\*      \*      \*

The daily execution of these collective actions allows us to maintain our 2014 AFFO per share guidance of $1.13-$1.19, while significantly de-levering the balance sheet and maximizing value for our stockholders.

244.   The Second Quarter 2014 Press Release also contained statements similar to that included in other press releases during the Relevant Period with respect to the importance of AFFO.  See, e.g., ¶¶ 131, 152, 168, 209, 225, above.

245.   Also on July 29, 2014, ARCP filed with the SEC its Form 10-Q for the quarter ended June 30, 2014 ("Second Quarter 2014 Form 10-Q").  The Second Quarter 2014 Form 10-Q was signed by Defendants Schorsch, Block and McAlister, contained the same financial results and AFFO figures from the Second Quarter 2014 Press Release, and represented that those financial results were accurate and presented in accordance with GAAP.  The Second Quarter 2014 Form 10-Q also contained statements about AFFO substantially similar to those contained in the Company's other documents filed with the SEC during the Relevant Period.  See, e.g., ¶¶ 131-132, 153, 169, 210, 226, above.

246.   In addition, the Company provided the following table that quantified "the items deducted or added to net loss in our calculation of FFO and AFFO for the three months ended June 30, 2014 and 2013 (in thousands)":

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2014 | 2013 | 2014 | 2013 |
| Net loss (in accordance with U.S. GAAP) | $ (43,265) | $ (72,433) | $ (363,920) | $ (214,028) |
| Dividends on Series F Preferred Stock | (17,773) | — | (35,416) | — |
| Adjusted net loss | (61,038) | (72,433) | (399,336) | (214,028) |
| Gain on disposition of property | (1,510) | — | (4,489) | (14) |
| Depreciation and amortization of real estate assets | 234,089 | 33,811 | 384,988 | 60,564 |
| Depreciation and amortization of real estate assets in unconsolidated entities | 3,120 | — | 3,722 | — |
| FFO | 174,661 | (38,622) | (15,115) | (153,478) |
| | | | | |
| Acquisition related | 8,453 | 37,119 | 20,337 | 47,446 |
| Merger and other transaction related | 13,286 | 6,393 | 235,478 | 144,162 |
| Gain on investment securities | — | — | — | (451) |
| (Gain) loss on derivative instruments, net | (21,926) | 31,174 | (1,729) | 31,179 |
| Amortization of premiums and discounts on debt and investments | (3,487) | — | (21,812) | — |
| Amortization of above- and below-market lease assets and liabilities, net | 2,133 | 68 | 2,491 | 136 |
| Net direct financing lease adjustments | 136 | — | 527 | — |
| Amortization and write off of deferred financing costs | 11,342 | 2,271 | 61,256 | 3,514 |
| Other amortization and depreciation | 24,750 | — | 39,124 | — |
| Loss on early extinguishment of debt | 3,985 | — | 24,804 | — |
| Straight-line rent | (17,413) | (3,059) | (24,933) | (4,568) |
| Non-cash equity compensation expense | 9,338 | 3,458 | 31,848 | 4,339 |
| Proportionate share of adjustments for unconsolidated joint ventures | 20 | — | 782 | — |
| AFFO | $ 205,278 | $ 38,802 | $ 353,058 | $ 72,279 |

247. Specifically, the table represented that AFFO was $205,278,000 and $353,058,000 for the three- and six-month periods ended June 30, 2014, respectively, compared to $38,802,000 and $72,279,000 for the three- and six-month periods ended June 30, 2013, respectively. ARCP disclosed to investors for the first time that it was calculating AFFO on a gross rather than a net basis.

248. Note 3 to the Second Quarter 2014 Form 10-Q, which was entitled "Summary of Significant Accounting Policies," represented that ARCP's financial statements "were prepared in conformity with U.S. GAAP" and that they included "all adjustments and accruals of a normal recurring nature, which, in the opinion of management, are necessary for a fair presentation of results for the interim periods."

249.   The Second Quarter 2014 Form 10-Q also contained the same internal disclosure controls Certifications and SOX Certifications that were included with ARCP's other Forms 10-Q filed during the Relevant Period.  <u>See, e.g.</u>, ¶¶ 95, 135-136, 156, 172, 230, above.  Again, Defendants Schorsch and Block signed the Certifications.

250.   Later on July 29, 2014, ARCP held a conference call to discuss the Company's second quarter 2014 financial results.  During the call, Defendant Kay stated:

> I could not be more excited about my senior management team and the future prospects of this Company.  From afar, it may appear at times our rapid growth is hard to understand I can assure you, however, that everything we do is directed towards a singular objective: to create value for our shareholders.
>
> So why am I excited?  I can tell you that it has a lot to do with our people, our culture, the opportunities we see in the marketplace, and our competitive advantages. Today we have roughly $30 billion of assets managed by more than 425 talented people located strategically throughout the country.  We have built this Company with the future in mind and we are well positioned to take advantage of market opportunities as they arise.
>
> *        *        *
>
> For example, I am often asked, how can a company of our size consistently invest in properties at cap rates meaningfully better than our competitors. There is no alchemy here, I assure you.  In part, our ability to invest at prices better than our peer group's results from our origination team being the largest in the industry.
>
> *        *        *
>
> I would like to talk about the equity offering we completed this quarter.  I am pleased that we raised the money and deleveraged the balance sheet. With plenty of uncertainty in the global economy, heading into the summer reducing our leverage was the right choice, although not the most popular choice.
>
> *        *        *

American Realty is positioned for success.  It is now not about creating this foundation, but building upon it. I could not be more excited about the prospects for this Company and I look forward to our future together.

251.    Defendant Block commented on ARCP's second quarter 2014 financial

performance and AFFO guidance, stating, in relevant part:

Our second-quarter results are in line with our expectations. . . . AFFO was $198.6 million, or $0.24 per fully diluted share, which represents a 26% increase from this period last year.  We are confident with our [AFFO] guidance range for the full year of 2014 of $1.13 to $1.19 per share . . . .

Additionally, our internal operations continue[] to strengthen. The synergy created by the integration of the Cole team and the adoption of new technology has allowed us to be more timely and efficient in our financial reporting.  In fact, this enhanced scale allowed us to move up the timing of our 10-Q filing and earnings call as a result of these improvements by roughly a week.

Let me turn to our earnings guidance numbers . . . . The second-half estimated AFFO projected run rate of $533 million . . . includes second quarter as well as G&A for the second half of the year of approximately $80 million, which is inclusive of commissions and cost synergies.  This is consistent with our full-year estimate of total G&A, including noncash compensation of approximately $176 million.  The run rate AFFO also includes an estimate for Cole Capital based on our projected $3.1 billion of capital raise and $4.9 billion of acquisitions into the managed funds. The projection results in AFFO for Cole Capital for the full year of approximately $120 million.

252.    On the call, the following exchange related to AFFO and AFFO guidance

took place between analyst Dan Donlan of Ladenburg Thalmann and Defendant Kay:

**Analyst Dolan:**  David, just wanted to go to the guidance of a quick just so I understand it.  The pro forma AFFO run rate at year-end 2014, you have $1.18 to $1.20, that implies a quarterly run rate of $0.295 to $0.30.  That's not a run rate for the fourth quarter, is it?  Is that what it would be, call it, at the very end of the quarter for the first quarter assuming – for the first quarter of 2015 assuming nothing new to 2015.  Is that right?

**Defendant Kay:**  That is correct.  Other than for Cole Capital that would assume the same estimates for 2015 as we have estimated for 2014.  So yes, that would be a year-end run rate but would assume the same $4.9 billion of

assets acquired during 2015 as well as the same $3.1 billion of equity raised in the Cole Capital managed funds.

\*       \*       \*

**Analyst Dolan:**   If I am looking at the other guidance range that you reiterated, the one for the full-year 2014 of $1.13 to $1.19 I think, the midpoint of that is $1.16.  So you have done $0.49 year to date.  That would imply about $0.335 in the third quarter and fourth quarter to get to that midpoint – is that right as well?

**Defendant Kay:**   That is roughly, yes, the math.  And the reason there being is again, most of the Cole Capital EBITDA will occur with the acquisitions in the capital (inaudible) in Cole Capital versus where we were the first two quarters of the year.  It is a very steep ramp up, as you know.

**Analyst Dolan:**   Yes, yes.  And so you probably have some benefit from [ARCenters] not getting full potentially until the first part of the fourth quarter as well.

**Defendant Kay:**   That is exactly right.  Because as articulated in that and part of the reason why we really wanted to lay that out is because you will have Red Lobster and ARCenters being owned for the three-month period, roughly, both at the same time.  And that is why we tried to be transparent and give both numbers – give the AFFO run rate so that you will see the difference of actually Centers coming out as well as the year with both Centers and Lobster in at the same period of time.

Just to note, one other thing also in the estimates there is no promote or one-time disposition fees in any of the Cole numbers either in the AFFO run rate that we gave of $1.18 to $1.20 or in the $1.13 to $1.19 range where we reconciled to $1.14.

253.   The statements referenced in ¶¶ 239-252 each were materially false and

misleading and omitted material facts when made.  The facts were that:

(a)      As detailed in ¶¶ 13, 88, ARCP's reported AFFO of $0.24 per share was overstated by more than 10%;

(b)      ARCP's financial statements referenced in ¶¶ 239-252 were materially false and misleading because they did not accurately portray the Company's financial performance, and were not prepared in accordance with GAAP.  Specifically, as to the second quarter of

2014, ARCP reported that AFFO was $205,278,000 and $353,058,000 for the three- and six-month periods ended June 30, 2014, respectively.  Defendants have since admitted, however, that those figures are inflated because, among other things, ARCP improperly added back expenses associated with 100% of the equity interests in the Operating Partnership.  This, in turn, caused ARCP's net loss to be understated for the three- and six-month periods ended June 30, 2014.  Indeed, ARCP was forced to restate and amend the Second Quarter 2014 Form 10-Q, including the following adjustments: (i) AFFO and AFFO per share were reduced by $19.3 million (9.4%) and $0.03 per share (12.5%), respectively; and (ii) net loss attributable to the Company and net loss per share were increased by $14.4 million (35.7%) and $0.02 per share (35.7%), respectively;

(c)     Contrary to the statements referenced in ¶¶ 239-252, ARCP's 2014 AFFO estimates were not accurate, attainable, honestly believed, or founded on a reasonable basis.  As Defendants knew but omitted to disclose to investors, ARCP's claimed AFFO growth could only be achieved through Defendants' continued falsification of ARCP's financial statements;

(d)     Contrary to the statements referenced in ¶ 249, and as the Company admitted in connection with its restatement, ARCP's disclosure controls and procedures suffered from "material weaknesses" and were not properly designed or implemented to ensure that (i) AFFO per share was correctly calculated; (ii) AFFO guidance, and the Company's ability to meet that guidance, were accurate; (iii) the information in its SEC filings correctly reflected its internal accounting records; and (iv) its SEC filings were reviewed on a timely basis by senior management and that significant changes in previously reviewed documents were brought to the attention of the Audit Committee for approval before filing;

(e)     Contrary to the statements referenced in ¶ 249, and as the Company admitted in connection with its restatement, ARCP's internal controls over financial reporting suffered from "material weaknesses," which resulted in the Company failing to (i) maintain adequate controls to assess, authorize and monitor related-party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates; (ii) maintain adequate controls over various grants of equity-based compensation; (iii) implement consistent policies and procedures relating to purchase accounting; (iv) establish clear

reporting lines and job responsibilities or promote accountability over business process control activities; and (v) develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates;

(f)    The Company lacked appropriate controls to ensure, among other things, that its Code of Conduct was adhered to and that employees would not be subject to pressure to make inappropriate decisions concerning the formulation of ARCP's financial statements or calculation of AFFO;

(g)    The Company was not improving its governance practices, reporting practices, transparency or practices concerning related-party transactions.  During the same quarter that Defendants Schorsch, Kay and Block were making these representations, they deliberately had falsified ARCP's reported AFFO by tens of millions of dollars and its AFFO per share by more than 14%;

(h)    Contrary to the statements referenced in ¶ 251, ARCP's operations did not "continue[] to strengthen" during the Relevant Period. Rather, the Company's rapid pace of mergers and acquisitions during the Relevant Period, including, the Cole Merger, "had a severe impact on the Company's control environment" and exacerbated the deficiencies in ARCP's internal controls and financial reporting processes;

(i)    Contrary to the statements referenced in ¶¶ 239-252 ARCP's "growth by acquisition" strategy was not beneficial for ARCP shareholders, but instead was designed to generate transaction fees for Schorsch-controlled companies and to result in large compensation payments to executives in Schorsch-controlled companies without regard to the underlying fairness of the transaction;

(j)    Contrary to the statements referenced in ¶ 251, the Company's financial reporting was neither "timely" nor "efficient," but instead was grossly inadequate, replete with inadequacies, and the product of fraudulent accounting artifices; and

(k)    Contrary to the statements referenced in ¶ 243, ARCP's results for the second quarter of 2014 did not position the Company for "long-term success," and were not the product of Defendants' focus on driving long-term value for ARCP shareholders, but rather were the

result of deliberate, pervasive, and systematic manipulation by Defendants Schorsch, Block, Kay and McAlister of ARCP's financial results, including its AFFO.

## VI.   ADDITIONAL ALLEGATIONS OF SCIENTER

254.    Defendants acted with scienter with respect to the materially false and misleading statements and omissions discussed herein.

255.    ARCP has admitted that Defendants acted with scienter in connection with the false and misleading financials.  As discussed above at ¶¶ 7, 76-79, the Company's October 29, 2014, press release stated that its executives had "identified" misstatements in the Company's financials, but nevertheless "intentionally" did not correct them.  The Company further has admitted that the misstatements in its financials during the second quarter of 2014 were "intentionally made" and deliberately concealed from investors.  In addition, the Company has recognized that its internal controls over financial reporting were materially deficient – a fact which the Company and its top officers knew or were severely reckless in not knowing.  Indeed as discussed above at ¶¶ 60-68, 76-80, the Company already had identified multiple errors in its financials, and Schorsch and his entities improperly had been using his network of related entities to complete various self-dealing transactions.

256.    Defendant Schorsch was ARCP's founder, CEO, and Chairman and, as such, was intimately familiar with, and exercised substantial control over, every aspect of ARCP's business, including its calculation and reporting of AFFO and the effectiveness of the Company's internal controls over financial reporting.  As discussed herein, Defendant Schorsch directed ARCP's CFO, Defendant Block, improperly to report the

Company's AFFO.  Defendant Schorsch also directed Defendant Block and others to conceal the Company's improper accounting by fraudulently deferring the accrual of second quarter expenses.  Knowing those facts, Defendant Schorsch nevertheless certified the accuracy of ARCP's financial results and the adequacy of its internal controls in ARCP's financial filings throughout the Relevant Period.  Defendant Schorsch's scienter is further demonstrated by the decision of ARCP's independent directors on or about December 15, 2014, to sever all ties between ARCP and Defendant Schorsch and ask him to "step down."

257.  Defendant Block was ARCP's CFO, and, as such, had ultimate responsibility for ARCP's finances.  In addition, Defendant Block was intimately familiar with, and exercised substantial control over, ARCP's business, including its calculation and reporting of AFFO and the effectiveness of its internal controls over financial reporting.  As discussed herein, Defendant Block became aware by no later than February 2014 that ARCP's financial statements contained errors related to the calculation of AFFO, yet he did nothing to correct those errors.  In fact, Defendant Block continued to certify the accuracy of ARCP's financial statements, as well as the adequacy of ARCP's internal controls throughout the Relevant Period, despite knowing that the Company's financial statements did not accurately reflect the Company's true financial condition.  In addition, as discussed above at ¶ 11, Defendant Block attempted to conceal the Company's improper accounting by converting to the "gross" method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses.  As the Audit Committee explained in its October 29, 2014, disclosure, Defendant Block had a "key

role[] in the preparation" of the fraudulent reports, which led to his immediate termination and necessitated a review of prior financial statements that he had approved.

258.    Defendant McAlister, ARCP's CAO, was a member of ARCP's senior management and was in charge of ARCP's accounting.    As Defendant McAlister admitted in her verified complaint, by no later than February 2014, she knew that ARCP's financial statements contained errors related to the calculation of AFFO, yet she failed to correct those errors.    Defendant McAlister also was fully aware that Defendant Schorsch directed Defendant Block to conceal the improper accounting by converting to the "gross" method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses.    Defendant McAlister nevertheless signed the Second Quarter 2014 Form 10-Q despite knowing of the fraudulent accounting contained in the Company's financials.    As the Audit Committee explained in its October 29, 2014, disclosure, Defendant McAlister had a "key role[] in the preparation" of the fraudulent reports, which led to her immediate termination and necessitated a review of prior financial statements that she had approved.

259.    As ARCP's President and CEO, Defendant Kay was a member of ARCP's senior management, was responsible for the Company's day-to-day operations, and was familiar with ARCP's internal controls.    Defendants Block and McAlister brought the improper AFFO accounting to Defendant Kay's attention by no later than February 2014. In response, however, "Mr. Kay told Ms. McAlister and Mr. Block not to change or correct the fraudulent reports, in an apparent effort to avoid public disclosure of the Company's faltering financial performance."    As the result of his day-to-day control over

ARCP, Defendant Kay also knew, or was reckless in not knowing, that Defendant Schorsch directed Defendants Block and McAlister to conceal the improper accounting by converting to the "gross" method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses.  Defendant Kay's scienter is further demonstrated by the fact that he was asked to step down from his position at ARCP on or about December 15, 2014.

260.   As ARCP's President and COO, Defendant Beeson was a member of ARCP's senior management, was responsible for the Company's day-to-day operations, and was familiar with ARCP's internal controls.   Defendant McAlister brought the improper AFFO accounting to Defendant Beeson's attention by no later than February 2014, informing Beeson that in the 2013 Annual Report ARCP had misrepresented AFFO.  As the result of her day-to-day control over ARCP, Defendant Beeson also knew, or was reckless in not knowing, that Defendant Schorsch directed Defendants Block and McAlister to conceal the improper accounting by converting to the "gross" method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses. Defendant Beeson's scienter is further demonstrated by the fact that she was asked to step down from her position at ARCP on or about December 15, 2014.

261.   Other facts alleged above support a strong inference of scienter for each of the Defendants.  ARCP and its executives repeatedly told investors that the Company had achieved "record" AFFO, emphasizing that this financial metric was a particularly important measure to evaluate the Company's stock.  At each reporting period during the Relevant Period, those Defendants singled out the Company's purportedly strong AFFO.

Those Defendants were aware of the fact that the market was relying on these statements, as analysts published numerous reports that underscored the Company's "record" AFFO. Given that those Defendants repeatedly stressed to investors that AFFO was a critical measure of the Company's financial health, any failure to confirm that their repeated statements about the Company's AFFO were materially accurate supports an inference of recklessness, at a minimum.

262.   The nature, duration, and scope of Defendants' misconduct further supports a strong inference of scienter.  As admitted in the Restatement, the Company falsified its reported operating performance and financial statements for each and every reporting period since the Company went public in 2011.  The Company further has acknowledged that its financial statements were riddled with accounting errors and/or financial manipulations, resulting in understatements of net losses attributable to stockholders by as much as 18%.  Likewise, the Company has admitted that it overstated its AFFO per share each and every year during the Relevant Period, with the overstatements in individual quarters reaching as high 95%.

263.   Moreover, the Company has admitted that management was aware of certain errors that were "intentionally not corrected" and that other "errors were intentionally made."   Finally, the accounting scheme allowed management to pursue and execute a rapid-fire, growth-by-acquisition strategy that generated over one billion dollars in fees, commissions, and incentive compensation for related parties controlled by Defendant Schorsch.

264.   The Restatement is an admission that (i) the Company's financial statements and the Executive Defendants' public statements regarding those results were materially false and misleading; and (ii) the financial statements reported during the Relevant Period were incorrect based on information available to the Defendants at the time the results were originally reported.   ARCP's Restatement contains at least the following indicators of Defendants' scienter:

(a)   **The type of restatement** – The restated items at issue were not due to any mathematical error, or honest misapplication of a complex accounting standard.  Rather, the Restatement resulted from a host of deliberate accounting errors and misrepresentations in ARCP's financial statements that concern the most important financial metrics for investors – including the single most critical metric for investors in REITs – and encompass serious and repeated misapplications of GAAP accounting, which caused net loss to be materially understated for 2013 and contributed to the material overstatement of AFFO in 2013 and 2014.

(b)   **The duration over which the improper accounting was perpetrated** – The Restatement does not hinge on an honest mistake or oversight during a single quarter or even a single year that was later corrected on a good-faith basis.  Here, ARCP was forced to restate its financial statements covering the last seven consecutive reporting periods: (1) the year ended December 31, 2012; (2) the year ended December 31, 2013; as well as the quarters ended (3) March 31, 2013; (4) June 30, 2013; (5) September 30, 2013; (6) March 31. 2014; and (7) June 30, 2014 – to correct its accounting improprieties that could no longer be concealed.  In addition, ARCP was forced to admit that it had

falsified its reported operating performance and/or financial statements for every reporting period since it went public in 2011.

(c)     **The types of accounting gimmicks employed** – The improper accounting corrected by this Restatement did not occur as a result of good-faith differences in accounting judgments, or interpretations of complicated, vague or arcane accounting rules, and the Company does not claim otherwise. Rather, as ARCP has acknowledged, the Company's Relevant Period financial statements were replete with accounting errors and/or financial manipulations that violated clear and well-established expense recognition standards, including:

- The recording of numerous expenses in the incorrect accounting period, effectively delaying expense recognition and understating reported expenses.

- The misclassification of ordinary business expenses as "merger-related," which inflated AFFO and gave investors the false impression that such expenses were not recurring in nature.

- The misclassification of management fees to affiliates as being merger and other non-routine transaction-related, which masked related-party transactions, inflated AFFO, and gave investors the false impression that such expenses were not recurring in nature.

- The recording of deferred financing costs as merger and other transaction-related expenses.

- The recording of payments to Schorsch-controlled entities as being for the acquisition of furniture, fixtures and equipment, and including those purported assets on its books, notwithstanding that there was "no evidence of the receipt" to substantiate the existence of any such assets.

Among the myriad accounting gimmicks employed by the Company, the manner in which the Company understated net losses by understating expenses is a clear example of how the Company violated basic and fundamental rules of accounting. In violation of

the basic tenet of accrual accounting that expenses be recorded in the same period in which the corresponding benefit is realized,[2] ARCP systematically engaged in a scheme of improper timing of expense recognition, understating its expenses in a current period or improperly delaying expense recognition for as long as possible.

(d)     **The income statement effect of the misstatements** – Most or all of the Company's purported accounting "errors" had the effect of improving, not worsening, operating results, including but not limited to (i) ARCP's operating loss; (ii) loss from continuing operations; (iii) net loss; (iv) net loss per share; (v) AFFO; and (vi) AFFO per share.

(e)     **The false SOX certifications** – In addition to the Executive Defendants' knowledge of the Company's violations of basic accounting principles, Defendants Schorsch and Block's SOX Certifications attached to ARCP's Forms 10-Q, Forms 10-K, and Registration Statements also evidence scienter.  As set forth above, Defendants Schorsch and Block certified that they had personally reviewed ARCP's financial statements, designed and evaluated ARCP's disclosure controls, and evaluated ARCP's internal controls over financial reporting.  Such reviews and evaluations, if performed as represented, would have alerted the Executive Defendants to ARCP's glaring accounting misstatements and material weaknesses in internal and disclosure controls that were subsequently admitted.  The Executive Defendants either knew of the material misstatements in the financial statements, the ineffectiveness of the disclosure controls,

---

[2] See FASB Statement of Financial Accounting Concepts No. 5, Recognition and Measurement in Financial Statements of Business Enterprises, ¶¶ 85-86; ASC Topic 450-20, Loss Contingencies.

and the material weaknesses in internal controls, or knowingly failed to perform the required review of the financial statements, evaluation of internal controls and evaluation of disclosure controls and falsely represented that they had.  In either case, the Executive Defendants knew or recklessly disregarded that the SOX Certifications Defendants Schorsch and Block signed were false and misleading.

(f)    **The Audit Committee Investigation found that financial misstatements were intentional** – The Company admitted in the Restatement that senior management participated in the intentional, material misstatement of ARCP's operating performance measures, including the material misstatement of various GAAP income and cash flow-related measures.   The 2013 Amended Form 10-K included, in pertinent part, the following admissions with respect to the Company's previously disclosed AFFO:

> The investigation found that Adjusted Funds From Operations ("AFFO"), a nonGAAP measure presented in the Company's SEC filings and other financial communications, was overstated for fiscal year 2011, fiscal year 2012, fiscal year 2013 (including each fiscal quarter of 2013) and, as previously disclosed in the October 29 8-K, the first two fiscal quarters of 2014. Senior management considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance and, for the first two quarters of 2014, sought to maintain reported AFFO within the 2014 guidance range of $1.13 to $1.19 per share announced at the end of 2013. The overstatements of AFFO were due in part to errors in reflecting amounts attributable to the limited partnership interests in the Company's operating partnership, ARC Properties Operating Partnership, L.P., held by holders other than the Company (known as non-controlling interests or "NCI"). Prior to the filing of the Quarterly Report on Form 10-Q for the first quarter of 2014, some members of senior management were aware of NCI errors but allowed the report to be filed without completing an analysis of the errors. In the Company's Quarterly Report on Form 10-Q for the second quarter of 2014, as previously reported in the October 29 8-K, the NCI errors in the first quarter were intentionally not corrected, and other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014.

The Company's admissions that "some members of senior management" were "aware" of the errors is corroborated by McAlister's verified complaint, which identified those members of senior management to include Defendants Schorsch, Kay, Block, and McAlister.

(g)   **The Executive Defendants profited as a result of the misrepresentations** – Defendants Schorsch, Block and other senior executives profited from ARCP's fraud because it enabled them to tax the Company with hundreds of millions of dollars in improper fees and services through Defendant Schorsch's web of interrelated entities.   The Company's executives also profited because the OPP tied executive compensation to the Company's size and reported AFFO. When the Company's stock price rose as it acquired more companies and recorded higher AFFO, the Company's executives profited.

(h)   **ARCP terminated its top executives responsible for the misrepresentations** – Finally, at least five of the Company's top executives – Defendants Block, McAlister, Schorsch, Kay, and Beeson – including those directly responsible for its accounting, were all fired or "stepped down" within weeks of the revelation of the accounting fraud, and the Commonwealth of Massachusetts, SEC, and Department of Justice are conducting on-going investigations into matters associated with the Company's false financial reporting.

## VII.   PLAINTIFFS' RELIANCE

265.   During the Relevant Period, Plaintiffs relied on the materially false and misleading statements alleged herein when purchasing ARCP common stock.

266.    There is a presumption of reliance established by the fraud-on-the-market doctrine in this case because, among other things:

(a)    The Defendants made public misrepresentations or failed to disclose material facts during the Relevant Period;

(b)    The misrepresentations and omissions were material;

(c)    The Company's common stock traded in efficient markets;

(d)    The misrepresentations and omissions alleged would induce a reasonable investor to misjudge the value of the Company's common stock; and

(e)    Plaintiffs purchased ARCP common stock between the time Defendants misrepresented or failed to disclose material facts, and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

267.    At all relevant times, the markets for ARCP common stock were efficient for reasons including that (a) ARCP's common stock was listed, and actively traded, on the NASDAQ, a highly efficient and automated market; (b) ARCP filed periodic reports with the SEC; (c) ARCP regularly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services, and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services; and (d) ARCP was followed by numerous analysts who wrote reports that were published, distributed and entered the public market.   As a result of the foregoing, the market for ARCP's publicly traded common stock promptly digested current information with respect to the Company and reflected such information in the price of ARCP's common stock.   Plaintiffs relied on the price of ARCP's common stock, which reflected all the information in the market, including the misstatements by Defendants.

## VIII.  **LOSS CAUSATION**

268.    Defendants' wrongful conduct directly and proximately caused Plaintiffs' economic loss.  As Defendants' false and misleading statements and omissions became apparent to the market, beginning on October 29, 2014, the price of ARCP stock declined as the artificial inflation was removed, causing damage to the Plaintiffs.

269.    Before the market opened on October 29, 2014, ARCP made a series of startling admissions regarding the effectiveness of its internal controls and the accuracy of its financial information.  In direct response to these disclosures, ARCP common stock declined on October 29, 2014, closing at $10.00 per share – a decline of nearly 20% – on heavy trading volume of over 231 million shares traded, which was nearly 50 times greater than the average daily trading volume during the Relevant Period.  On the next three consecutive trading days, the price of ARCP's stock price continued to decline by, respectively, 5.8%, 5.8% and 11.5%.  By November 3, 2014, the Company's stock price closed at $7.85, a 36.6% drop from the pre-disclosure price.  These declines in ARCP stock were the direct and proximate result of the nature and extent of Defendants' prior materially false and misleading statements and omissions being revealed to the market. The timing and magnitude of the price declines negate any inference that Plaintiffs' losses were caused by changed market conditions, macroeconomic or industry factors or Company-specific factors unrelated to Defendants' wrongful conduct.

IX.     **CLAIMS FOR RELIEF**

**COUNT 1**
**FOR VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**

(By all Plaintiffs against all Defendants)

270.    Plaintiffs reallege the allegations above.

271.    This claim is brought by Plaintiffs against Defendants for violation of the Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. Ann. § 44-1522.

272.    Defendants violated ACFA in that they engaged in deception, deceptive or unfair acts or practices, fraud, false pretense, false promise, misrepresentation, and/or concealment, suppression or omission of material facts with intent that others rely on such concealment, suppression or omission, in connection with the sale and/or advertisement of ARCP common stock to Plaintiffs.

273.    Defendants' violations of ACFA were wanton, reckless and/or showed spite or ill will, and/or Defendants acted with a reckless indifference to the interests of others.

274.    Plaintiffs have suffered consequence and proximate injury in that, in reliance on the integrity of the market, Plaintiffs paid artificially inflated prices for ARCP common stock.  But for Defendants' repeated material misrepresentations, Plaintiffs would not have made purchases of ARCP shares at the quantities, or at the prices, at which they in fact did.

275.    As a direct and proximate effect of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases and acquisitions of ARCP common stock during the Relevant Period.

276.   An award of punitive damages is warranted because the Defendants' conduct was wanton, reckless, and/or showed spite or ill will, and/or because the Defendants acted with reckless indifference to the interests of others.

## COUNT 2
## FOR AIDING AND ABETTING VIOLATIONS OF
## THE ARIZONA CONSUMER FRAUD ACT

(By all Plaintiffs against the Operating Partnership,
the Schorsch-Controlled Defendants and the Executive Defendants)

277.   Plaintiffs reallege the allegations above.

278.   This claim is brought by Plaintiffs against the Operating Partnership, the Schorsch-Controlled Defendants and the Executive Defendants for aiding and abetting violations of the ACFA, Ariz. Rev. Stat. Ann. § 44-1522.

279.   Defendants violated the ACFA in that they engaged in deception, deceptive or unfair acts or practices, fraud, false pretense, false promise, misrepresentation, and/or concealment, suppression or omission of material facts with intent that others rely on such concealment, suppression or omission, in connection with the sale and/or advertisement of ARCP common stock to Plaintiffs.

280.   The Operating Partnership, the Schorsch-Controlled Defendants and the Executive Defendants knew that Defendants engaged in deception, deceptive or unfair acts or practices, fraud, false pretense, false promise, misrepresentation, and/or concealment, suppression or omission of material facts with intent that others rely on such concealment, suppression or omission, in connection with the sale and/or advertisement of ARCP common stock to Plaintiffs.

281.   The Operating Partnership, the Schorsch-Controlled Defendants and the Executive Defendants substantially assisted or encouraged Defendants in committing the violation of the ACFA described above.

282.   By assisting, supporting, and supplementing, instigating, advising and encouraging the efforts of Defendants to violate the ACFA, the Operating Partnership, the Schorsch-Controlled Defendants and the Executive Defendants are each responsible for the underlying damages available to the Plaintiffs for the ACFA violations of each Defendant as if each Defendant had performed the illegal acts itself.

## COUNT 3
## FOR VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND SEC RULE 10B-5 PROMULGATED THEREUNDER

(By all Plaintiffs against ARCP, the Operating Partnership, and the Executive Defendants)

283.   Plaintiffs reallege the allegations above.

284.   This claim is brought by Plaintiffs against Defendants for violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

285.   During the Relevant Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were misleading in that they misrepresented or omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

286.   Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they (a) employed devices, schemes and artifices to defraud; (b) made untrue

statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs related to the purchase and/or acquisition of ARCP common stock.

287.  Plaintiffs have suffered consequence and proximate injury in that, in reliance on the integrity of the market, Plaintiffs paid artificially inflated prices for ARCP common stock.  But for Defendants' repeated material misrepresentations, Plaintiffs would not have made purchases of ARCP shares at the quantities, or at the prices, at which they in fact did.

288.  As a direct and proximate effect of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases and acquisitions of ARCP common stock during the Relevant Period.

### COUNT 4
### VIOLATION OF SECTION 14(A) OF THE EXCHANGE ACT
### AND SEC RULE 14A-9 PROMULGATED THEREUNDER

(By the Cole Exchange Plaintiffs against ARCP,
the Operating Partnership, Schorsch, and Block)

289.  Plaintiffs reallege the allegations above.

290.  Plaintiffs, who held shares of Cole as of the dates of the proxy votes regarding ARCP's merger with Cole, allege that Defendants ARCP, the Operating Partnership, Schorsch, and Block prepared, reviewed and/or disseminated false and misleading proxy statements, which proxy statements misrepresented and/or omitted

material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

291.    Defendants prepared, reviewed and disseminated the false and misleading Cole Merger Proxy.  This document contained untrue statements of material fact and omitted to state facts necessary to make the statements made therein not misleading in violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9 promulgated thereunder. This document was an essential link to the consummation of the Cole Merger.

292.    As a direct result of the Defendants' preparation, review and dissemination of the false and misleading Cole Merger Proxy, Plaintiffs were deprived of their right to a fully informed shareholder vote in connection with the Cole Merger.

293.    Plaintiffs suffered further injury as a consequence of exchanging their shares in Cole for shares in ARCP, which subsequently plummeted in value.

294.    Thus, as a direct and proximate result of the dissemination of the materially false and misleading merger proxies, Plaintiffs suffered damage and actual economic losses.

295.    At all times relevant to the dissemination of these materially false and misleading merger proxies, Defendants were aware of and had access to the true facts, and were at a minimum negligent in making the misrepresentations contained in the proxies.

**COUNT 5**
**VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT**

(By all Plaintiffs against the Operating Partnership,
the Schorsch-Controlled Defendants, and the Executive Defendants)

296.    Plaintiffs reallege the allegations above.

297.    Plaintiffs bring this claim against the Operating Partnership, the Schorsch-Controlled Defendants, and the Executive Defendants for violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

298.    The Operating Partnership, the Schorsch-Controlled Defendants, and Executive Defendants acted as controlling persons of ARCP within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions as officers or directors of, or their ownership interests in, ARCP and the Operating Partnership, the Operating Partnership, the Schorsch-Controlled Defendants, and the Executive Defendants had the power and authority to cause these entities to engage in the wrongful conduct complained of herein.

**COUNT 6**
**VIOLATION OF SECTION 11 OF THE SECURITIES ACT**

(By the Cole Exchange Plaintiffs against ARCP, Schorsch, Kay, Block, and Beeson)

299.    Plaintiffs reallege the allegations above.  For purposes of this claim, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence.

300.    This claim is brought by Plaintiffs for violation of Section 11 of the Securities Act, 15 U.S.C. § 77k, against the following Defendants:

| Event | Date | Entity | Individuals |
|---|---|---|---|
| Cole Merger | 2/2014 | ARCP | Schorsch, Kay, Block, and Beeson |

301.   The Registration Statements and Prospectus issued in connection with the offering identified above were false and misleading and omitted to state material facts required to be stated therein, contained untrue statements of material facts, and omitted to state facts necessary to make the statements made therein not misleading.

302.   ARCP is the registrant for the Cole Registration Statement.   ARCP is strictly liable to Plaintiffs for the misstatements and omissions in the applicable Registration Statement and Prospectus.

303.   The individuals and entities identified above were responsible for the contents and dissemination of the Registration Statement and Prospectus.  Each of these Individual Defendants signed or authorized the signing of the Registration Statement and Prospectus, and participated in the preparation and dissemination of the Registration Statement and Prospectus.  As a signatory to one or more of the Registration Statement and Prospectus, each is liable to Plaintiffs for the misstatements and omissions contained within the Registration Statement and Prospectus pursuant to Section 11 of the Securities Act.

304.   The Defendants named herein did not conduct a reasonable investigation of the statements contained in and incorporated by reference in the Registration Statement and Prospectus used in connection with the Cole Merger did not possess reasonable grounds for believing that the statements made therein were not false and/or misleading.

305.   Plaintiffs purchased or acquired the stock described above pursuant or traceable to the Registration Statement used in the Cole Merger.   As a direct and proximate result of the misrepresentations and omissions contained in that Registration Statement, Plaintiffs suffered damages.

306.   At the time of their acquisition of ARCP's common stock, Plaintiffs were not aware of the untrue statements and/or omissions alleged herein and could not have reasonably discovered such untruths or omissions.

307.   As to this Count, Plaintiffs expressly disclaim any allegation of fraud or intentional misconduct except that any challenged statements of opinion or belief are alleged to have been materially misstated statements of opinion or belief when made. Such opinion statements also included embedded misstatements of material fact and omitted to state facts necessary to make the opinion statements not misleading.

## COUNT 7
## VIOLATION OF SECTION 12(A)(2) OF THE SECURITIES ACT

(By the Cole Exchange Plaintiffs against ARCP,
the Operating Partnership, Schorsch, Kay, Block and Beeson)

308.   Plaintiffs reallege the allegations above.   For purposes of this claim, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence.

309.   This claim is brought by Plaintiffs for violation of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), by the following Defendants:

| Event | Date | Entities | Individuals |
|-------|------|----------|-------------|
| Cole Merger | 2/2014 | ARCP, the Operating Partnership | Schorsch, Kay, Block, and Beeson |

310.   The Registration Statement and Prospectus issued in connection with the offering identified above were false and misleading and omitted to state material facts required to be stated therein, contained untrue statements of material facts, and omitted to state facts necessary to make the statements made therein not misleading.

311.   ARCP is the registrant for the Cole Merger.  ARCP is strictly liable to Plaintiffs for the misstatements and omissions in the applicable Registration Statements and Prospectuses.

312.   Defendants identified above were statutory sellers who sold and assisted in the sale of securities to Plaintiffs by means of the defective Prospectus and did so for personal gain.

313.   Plaintiffs did not know, nor in the exercise of reasonable diligence could have known, of the untruths contained and/or omissions from the Prospectus at the time Plaintiffs acquired ARCP common stock.

314.   As a direct and proximate result of Defendants' violation of Section 12(a)(2) of the Securities Act, Plaintiffs sustained damages in connection with their purchases of the common stock pursuant to the Registration Statement and Prospectus.

315.   Plaintiffs have the right to rescind and recover the consideration paid for their securities, upon tender of their securities to the Defendants named in this Count, or to damages.

316.   At the time of their purchases and acquisitions of ARCP's common stock, Plaintiffs were not aware of the untrue statements and/or omissions alleged herein and could not have reasonably discovered such untruths or omissions.

317.   As to this Count, Plaintiffs expressly disclaim any allegation of fraud or intentional misconduct except that any challenged statements of opinion or belief are alleged to have been materially misstated statements of opinion or belief when made. Such opinion statements also included embedded misstatements of material fact and omitted to state facts necessary to make the opinion statements not misleading.

## COUNT 8
## VIOLATION OF SECTION 15 OF THE SECURITIES ACT

(By the Cole Exchange Plaintiffs against the Operating Partnership,
the Schorsch-Controlled Defendants, and the Executive Defendants)

318.   Plaintiffs reallege the allegations above.   For purposes of this claim, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence.

319.   This claim is brought by Plaintiffs for violation of Section 15 of the Securities Act, 15 U.S.C. § 77o, against the Operating Partnership, the Schorsch-Controlled Defendants, and Executive Defendants.

320.   The Operating Partnership, the Schorsch-Controlled Defendants, and the Executive Defendants each had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of ARCP, including the contents of the Registration Statements and Prospectuses for the Cole Merger.

321.   As to this Count, Plaintiffs expressly disclaim any allegation of fraud or intentional misconduct except that any challenged statements of opinion or belief are alleged to have been materially misstated statements of opinion or belief when made. Such opinion statements also included embedded misstatements of material fact and omitted to state facts necessary to make the opinion statements not misleading.

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

(a) Awarding Plaintiffs compensatory damages in an amount to be proven at trial for all injuries sustained as a result of Defendants' wrongdoing, including all interest thereon;

(b) Awarding Plaintiffs punitive damages;

(c) Awarding Plaintiffs injunctive and other equitable relief, including rescission, as appropriate, in addition to any other relief that is just and proper under the circumstances;

(d) Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(e) Awarding such other relief as this Court may deem just and proper.

## XI.   JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury in this action for all issues so triable.

Respectfully submitted this 26th day of October, 2015.

COPPERSMITH BROCKELMAN PLC

By: _s/ Keith Beauchamp_____
       Keith Beauchamp
       Shelley Tolman

Jonathan Sherman
(application for admission *pro hac vice* being submitted)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
T:  202.237.2727
F:  202.237.6131
jsherman@bsfllp.com

Edward Normand
Nathan Holcomb
(applications for admission *pro hac vice* being submitted)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
T:  914.749.8200
F:  914.749.8300
enormand@bsfllp.com
nholcomb@bsfllp.com

Beko Reblitz-Richardson
(application for admission *pro hac vice* being submitted)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
T:  510.874.1000
F:  510.874.1460
brichardson@bsfllp.com

*Attorneys for Plaintiffs*