*Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*
Case No. CV-15-02157-PHX-JAS

## Index of Exhibits

**Plaintiffs' Request for ARCP to Produce Documents For Gavin Brandon**

| Ex. No. | Exhibit Description |
|---------|---------------------|
| 1. | Letter to Antonia Apps from Beko Richardson dated April 12, 2018 (FILED UNDER SEAL) |
| 2. | Letter to Beko Richardson from Thomas A. Quinn dated April 17, 2018 |
| 3. | Letter to Thomas A. Quinn from Beko Richardson dated April 20, 2018 (FILED UNDER SEAL) |
| 4. | Letter to Beko Richardson from Thomas A. Quinn dated April 24, 2018 |
| 5. | Letter to Thomas A. Quinn from Beko Richardson dated April 24, 2018 (FILED UNDER SEAL) |
| 6. | Letter to Counselors from Beko Richardson dated May 2, 2018 |
| 7. | Letter to Beko Richardson from Jonathan Ohring dated January 23, 2018 |
| 8. | Plaintiffs' First Set of Requests for Production of Documents to Defendants dated October 24, 2016 |
| 9. | Plaintiffs' Second Set of Requests for Production of Documents to Defendants dated March 22, 2016 |
| 10. | Plaintiffs' Third Set of Requests for Production of Documents to Defendants dated April 5, 2017 |
| 11. | Initial Disclosures of Defendants VEREIT, Inc. and VEREIT Operating Partnership, L.P. Pursuant to Federal Rule of Civil Procedure 26(A)(1) dated November 9, 2016 |
| 12. | Letter to Beko Richardson from Antonia Apps dated April 21, 2017 |
| 13. | Letter to Beko Richardson from Jonathan Ohring dated January 9, 2018 |
| 14. | Letter to Beko Richardson from Thomas A. Quinn dated May 21, 2018 (FILED UNDER SEAL) |

# EXHIBIT 1
# REDACTED



April 12, 2018

**VIA EMAIL**

Antonia Apps, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005-1413
aapps@milbank.com

Re:     *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
        No. CV-15-02157

Dear Ms. Apps:

I write on behalf of Plaintiffs regarding Plaintiffs' document requests to VEREIT, Inc. and VEREIT Operating Partnership, L.P (together "ARCP").

On March 4-6, 2018, parties from the various actions deposed Grant Thornton employee Jessica Estrada regarding her ARCP-related work.  One document marked as an exhibit during that deposition (Ex. 271, GT-ARCP DOC_00200922) included the following statement in one of the attached spreadsheets:



This document (along with Ms. Estrada's testimony and other documents we have identified) makes us extremely concerned regarding the fact that ARCP still has not produced Mr. Brandon's documents – something Plaintiffs requested more than a year ago and ARCP still has not done.

ARCP identified Mr. Brandon in its initial disclosure in this action.  In December 2016, Plaintiffs asked ARCP to include Mr. Brandon as a custodian.  In your January 31,



April 12, 2018
Page 2

2017 letter, ARCP objected.  In your April 21, 2017 letter, you suggested that Mr.
Brandon would have limited or no relevant documents, stating:

> With respect to Mr. Brandon, adding him as a custodian would result in
> 13,735 new 'hits' based on the search terms applied to existing custodians,
> even after de-duplication for documents previously reviewed.  Many, if
> not most, of these documents will be irrelevant and reviewing them would
> be disproportionate to the needs of the case because from the time that Mr.
> Brandon joined ARCP upon the closing of the Cole merger through
> approximately October 28, 2014, Mr. Brandon held positions within the
> Private Capital Markets segment for which Cole Capital was the sponsor.
> That segment was not the subject of any changes to financial statements or
> operations identified in the March 2, 2015 restatement, and is not the
> subject of the allegations in the Complaint.  Indeed, the ARCP Defendants
> conducted a review of a sample set of these documents, which confirmed
> that they are irrelevant and that further review would be disproportionate
> to the needs of the case.

It is clear that Mr. Brandon has highly relevant documents and information, and
his documents should be collected, reviewed, and produced without further delay.

No later than April 17, 2018, please send us ARCP's final position regarding
whether it will produce Mr. Brandon's documents and any proposal as to search terms.
The parties can then meet and confer before the next conference.

Sincerely,

Beko Reblitz-Richardson

cc:   Keith Beauchamp, Esq.
      Jonathan Sherman, Esq.
      Edward J. Normand, Esq.
      Joseph F. Kroetsch, Esq.
      Nathan Holcomb, Esq.

# EXHIBIT 2

# MILBANK, TWEED, HADLEY & MᶜCLOY LLP

**28 LIBERTY STREET**
**NEW YORK, NY 10005**

_____

212-530-5000

FAX: 212-530-5219

Thomas A. Quinn
DIRECT DIAL NUMBER
212-530-5265
E-MAIL: TQuinn@milbank.com

April 17, 2018

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

**VIA EMAIL**

Mr. Beko O. Reblitz-Richardson, Esq.
Boies, Schiller & Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

      Re:    *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
              <u>No. 2:15-cv-02157-ROS</u>

Dear Mr. Reblitz-Richardson:

        We write on behalf of Defendants VEREIT, Inc. and VEREIT Operating
Partnership, L.P. (collectively, the "<u>VEREIT Defendants</u>") in response to your April 12, 2018
letter.

        We are now, and have been, willing to include Mr. Brandon as a custodian subject
to a reasonable set of search criteria, provided that Plaintiffs include Mr. Walker as a custodian
as well.  Our proposal is set forth in our January 9, 2018 letter.  Your January 11, 2018 letter
responding to our January 9, 2018 letter did not appear to respond to our proposal with respect to
Mr. Brandon and Mr. Walker.

        Your April 12, 2018 letter includes an excerpt from our April 21, 2017 letter
discussing Mr. Brandon.  That letter clearly states our position on Mr. Brandon—that including
Mr. Brandon as a custodian subject to "the search terms applied to existing custodians" would
result in a disproportionately large number of irrelevant documents because through October 28,

Mr. Beko O. Reblitz-Richardson, Esq.
April 17, 2018
Page 2

2014, Mr. Brandon worked in a part of the company (the Private Capital Management segment) which is not the subject of the allegations in this action.

Relatedly, as recorded in your June 30, 2017 letter, the VEREIT Defendants have been requesting that Plaintiffs review and produce custodial documents for Mr. Matthew Walker, who was identified in your initial disclosures, since June 28, 2017. You have so far refused to do so.

Your April 12, 2018 letter omits that, since as early as June 28, 2017, Plaintiffs and the VEREIT Defendants have been discussing a potential compromise in which the Plaintiffs would review and produce documents for Mr. Walker and, in exchange, the VEREIT Defendants would review and produce documents for Mr. Brandon. We discussed this potential compromise again during our December 21, 2017 meet-and-confer, as noted in your December 28, 2017 letters.

The VEREIT Defendants provided you with a concrete proposal for the review and production of both Mr. Brandon's and Mr. Walker's documents in our January 9, 2018 letter. You have not responded to our proposal, and did not acknowledge the proposal in your April 12, 2018 letter. Please respond directly to the proposal in our January 9, 2018 letter so that we can efficiently resolve these issues.

Sincerely,

Thomas A. Quinn

# EXHIBIT 3
# REDACTED



April 20, 2018

<u>**VIA EMAIL**</u>

Thomas Quinn, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005-1413
aapps@milbank.com

      Re:    *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
                 No. CV-15-02157

Dear Mr. Quinn:

      I write on behalf of Plaintiffs in response to your letter dated April 17, 2018, regarding ARCP's production of Mr. Brandon's documents.

      Your letter does not dispute, or even address, that ARCP must have relevant emails and other documents from Mr. Brandon's files based at least in part on Mr. Brandon's involvement in the ARCP restatement process, as the recent testimony and exhibits at the deposition of Ms. Estrada earlier this month confirm.

      Instead, your letter suggests that Plaintiffs ignored an earlier letter and seeks to condition production of Mr. Brandon's documents.  You cite Mr. Ohring's letter dated January 9, 2018, where ARCP proposed a limited production of Mr. Brandon's documents (limited to a five-month period and seven sets of terms) conditioned on Plaintiffs' production of Mr. Walker's documents applying the full set of search terms used by Plaintiffs for all other custodians and for the full time period.

      Your letter is a transparent attempt by ARCP to further delay production of these key documents from Mr. Brandon's files, to distract attention from ARCP's misleading representations regarding Mr. Brandon, and to impose additional costs on Plaintiffs by again demanding production of Mr. Walker's documents.  There is no question that Mr. Brandon's documents are relevant, and ARCP should have produced those documents many months ago.  ARCP may not condition production of those key documents on Plaintiffs' agreement to produce Mr. Walker's documents, and certainly not based on the application of a far broader set of searches to Mr. Walker's documents.

      At the time of Mr. Ohring's January 9 letter, Plaintiffs were still under the impression – based on Ms. Apps' prior representations, as quoted in our April 12 letter, and having been excluded from all document-related negotiations in the SDNY Action –



April 20, 2018
Page 2

that Mr. Brandon may not have any significant number of relevant or key documents. Based on Ms. Apps' representations, and the fact that ARCP never disclosed to us the key role that Mr. Brandon played, we discussed in December 2017 the possibility of an agreement to the production of documents for both Mr. Brandon and Mr. Walker, with certain follow-up letters.

Based on the deposition of Ms. Estrada and additional document review, however, it is now clear that Mr. Brandon played a key role in connection with the ARCP restatement process and, it stands to reason, has many key documents regarding the massive fraud that occurred at ARCP. None of this was disclosed to us during the previous conversations regarding Mr. Brandon. ARCP instead repeatedly sought to convince us that there was no need to produce Mr. Brandon's documents, and that it imposed a disproportionate burden on ARCP to produce those documents. In fact, there never should have been any question about producing these documents, and they should have been produced to us long ago.

As you know, the document marked at Ms. Estrada's deposition – containing █████ ██████████████████████████████████████████████ – was produced by Grant Thornton. We previously asked ARCP to produce all documents produced in the SDNY Action, which would have included all documents that Grant Thornton produced to ARCP. ARCP refused. ARCP instead forced us to subpoena other parties, including Grant Thornton, to obtain those documents. These efforts created further delay and imposed additional costs on Plaintiffs. Although we have now identified additional versions of this key document produced by ARCP, we first became aware of this spreadsheet only at Ms. Estrada's deposition. ARCP's demand that Plaintiffs separately subpoena parties for documents such as these is just another way in which ARCP has taken steps to prejudice Plaintiffs and withhold evidence.

ARCP's failure to produce Mr. Brandon's documents also further confirms the inadequacy of the discovery record from the SDNY Action. ARCP has repeatedly opposed Plaintiffs' efforts to obtain relevant discovery beyond the scope of the SDNY Action, including most recently with respect to Mr. Brandon's documents and also the former Cole executives. The fact is that Plaintiffs had no input regarding the selection of custodians, search terms, or deponents in the SDNY Action. Despite evidence linking Mr. Brandon to an admission of intentional misstatements prior to 2014, which surely was known to ARCP, Mr. Brandon was not a custodian in the SDNY Action, and he has not even been identified as a deponent in that action.

ARCP's decision to withhold Mr. Brandon's documents is also prejudicial to Plaintiffs given ARCP's repeated assertion that ARCP executives engaged in fraud only in 2014. ARCP sought to limit its exposure to only the 2014 period with its motion to dismiss in this action, and ARCP then emphasized in the Rule 16 report submitted to



April 20, 2018
Page 3

Judge Soto that ARCP's October 2014 disclosure "did not identify errors, much less intentional ones, as to any financial period pre-dating 2014" and that the March 2015 restatements "did not announce any findings of intentional conduct as to any reporting period prior to the second quarter of 2014." (Dkt. 247 at 8-9.)  This document ███████, however, admits ████████████████████████, as Plaintiffs have alleged.

At all times since Plaintiffs first asked ARCP to produce Mr. Brandon's documents, in December 2016, ARCP knew or should have known that Mr. Brandon played a key role in the restatement process and would have relevant documents and testimony regarding ARCP's fraud.  Instead of sharing that information to us, ARCP first sought to mislead us as to the importance of Mr. Brandon's documents (ARCP's early 2017 letters) and then sought an agreement to a limited time period and set of search terms conditioned on production of Mr. Walker's documents (in the January 9 letter).  Instead of now agreeing to produce Mr. Brandon's documents, ARCP now seeks to divert attention from its failures and misconduct and further delay production.

There is no basis for ARCP to continue to withhold Mr. Brandon's documents.  Please immediately begin reviewing Mr. Brandon's documents for production based on the limits set out in Mr. Ohring's January 9 letter, and produce them on a rolling basis.  ARCP should produce those documents immediately, without prejudice to further discussion regarding the contours of the production of Mr. Brandon's documents (including both time period and search terms) and without conditioning that on the production of Mr. Walker's documents.  Please confirm that ARCP will do so.

Although there is no basis for ARCP to demand production of Mr. Walker's documents as a condition of producing Mr. Brandon's documents, we have nonetheless begun the process of collecting his documents for review.  We will run the search terms and assess whether there are any time-period or search-term restrictions that should apply.  ARCP has never articulated any compelling need for Mr. Walker's documents, let alone that Plaintiffs apply all search terms for the full time period, but we are nonetheless evaluating that request.  This process should in no way delay ARCP's collection, review, and production of Mr. Brandon's documents.

To be clear, we have never sought to delay any production of Mr. Walker's documents.  You never followed up regarding ARCP's request for his documents, and we have been focused on the depositions.  As you know, we sought to negotiate an additional production of documents by ARCP before these depositions began.  In response, ARCP took the position that Plaintiffs should instead seek information through the depositions.  We strongly disagree with ARCP's position, but we nonetheless have focused on these depositions, including Ms. Estrada's recent deposition.  In the meantime, Plaintiffs held off on seeking to compel production, while conducting these initial depositions.



April 20, 2018
Page 4

       It has become clear that ARCP's proposal does not and will not work.  After many days of preparation, these witnesses have limited recollection.  We have repeatedly needed to prompt their recollection by confronting them with documents.  Your position that Plaintiffs should first seek evidence through testimony and not documents has it backwards.  Without documents, we have limited ability to prove that ARCP's claims are false – including ARCP's claim that there were no intentional misstatements prior to 2014.  The Court directed the parties to coordinate depositions, and we have diligently done so.  It is now time to resolve these outstanding document issues, and ARCP should immediately produce Mr. Brandon's documents.

       Sincerely,

Beko Reblitz-Richardson

cc:    Keith Beauchamp, Esq.
       Jonathan Sherman, Esq.
       Edward J. Normand, Esq.
       Joseph F. Kroetsch, Esq.
       Nathan Holcomb, Esq.

# EXHIBIT 4

# MILBANK, TWEED, HADLEY & McCLOY LLP

**28 LIBERTY STREET**

**NEW YORK, NY 10005**

212-530-5000

FAX: 212-530-5219

Thomas A. Quinn
DIRECT DIAL NUMBER
212-530-5265
E-MAIL: TQuinn@milbank.com

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

April 24, 2018

**CONFIDENTIAL**

<u>VIA EMAIL</u>

Mr. Beko O. Reblitz-Richardson, Esq.
Boies, Schiller & Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

Re:    *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
<u>No. 2:15-cv-02157-ROS</u>

Dear Mr. Reblitz-Richardson:

We write on behalf of Defendants VEREIT, Inc. and VEREIT Operating Partnership, L.P. (collectively, the "<u>VEREIT Defendants</u>") in response to your April 20, 2018 letter, as well as Plaintiffs' Proposed Schedule and Brief re Preferred Methods for Resolving Discovery Disputes, filed on April 20, 2018 (Dkt. 266) (hereinafter "<u>Plaintiffs' April 20 Submission</u>") and our discussions with you related to that filing.

**Custodians**

In your April 20 letter, you suggest that the VEREIT Defendants made "misleading representations" regarding the relevance of Gavin Brandon's documents, and that only after Jessica Estrada's deposition from April 4-6, 2018 did it become "clear" to you that "Mr. Brandon played a key role in connection with the ARCP restatement process." But the VEREIT Defendants have never taken the position that Mr. Brandon's documents are entirely irrelevant. Indeed, in our very first letter to you regarding this issue, we explained to you that Mr. Brandon's ***pre-October 29, 2014*** documents would be irrelevant and review of those

Mr. Beko O. Reblitz-Richardson, Esq.
April 24, 2018
Page 2

documents would be disproportionate to the needs of the case because prior to October 29, 2014, Mr. Brandon held positions solely within the Private Capital Management segment, which is not the subject of the allegations in this case. That is why we have repeatedly indicated in our previous letters that any review of Mr. Brandon's documents should not include pre-October 29, 2014 documents. Incredibly, you have yet to indicate your agreement to that simple proposition, despite your failure to suggest why any such documents would be relevant.

Moreover, we have explained in our previous letters why running all of Plaintiffs' proposed search terms for Mr. Brandon's **post-October 28, 2014** documents would be disproportionate to the needs of the case, given that the VEREIT Defendants have already produced to Plaintiffs more than 3.9 million pages of documents, including 8,053 emails on which Mr. Brandon is included, totaling 15,401 documents including families.[1]

The VEREIT Defendants have therefore sought to offer reasonable compromises with respect to search parameters for Mr. Brandon's documents. Thus, in our January 9, 2018 letter, we offered a compromise under which the VEREIT Defendants would produce Mr. Brandon's post-October 28, 2014 documents subject to certain search terms. Plaintiffs did not respond to this proposal for more than three months, until your April 20 letter—and even that letter says nothing other than that the VEREIT Defendants "should immediately produce Mr. Brandon's documents" without offering any proposal for search parameters. Thus, any delay in the production of Mr. Brandon's documents is due to Plaintiffs' failure to timely respond to the VEREIT Defendants' proposed compromise.

Your April 20 letter ignores all of this information, instead relying on misinformation and baseless accusations in an attempt to manufacture allegations about purported "misconduct" before the April 25 status conference. Indeed, Plaintiffs notably omitted from their April 20 Submission the VEREIT Defendants' prior letters regarding these issues, instead seeking to selectively include only the flurry of correspondence prompted by Plaintiffs' letters during the two weeks leading up to the conference.

In addition, your suggestion that Plaintiffs had no knowledge about Mr. Brandon's role in the restatement until Ms. Estrada's deposition reveals Plaintiffs' own failure to conduct basic review of the documents produced in this case, rather than any failure by the VEREIT Defendants to provide this information to Plaintiffs. Mr. Brandon's role at ARCP should have been clear to Plaintiffs from a cursory review of the documents produced in this action long before Ms. Estrada's deposition.

For example, the VEREIT Defendants produced multiple copies of the document you discuss in your April 12 letter—the spreadsheet attached to Exhibit 271 from Ms. Estrada's

---

[1] Our January 9, 2018 letter informed you that, at that point, we had already produced to Plaintiffs 7,744 emails sent or received by Mr. Brandon, which totaled 14,380 documents when including families. That number has increased based on additional productions since that letter.

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
April 24, 2018
Page 3

deposition—almost a year ago, on April 28, 2017.[2]  Your April 20 letter even acknowledges that "[a]lthough we have now identified additional versions of this key document produced by ARCP, we first became aware of this spreadsheet only at Ms. Estrada's deposition."  Plaintiffs offer no explanation as to why they did not review these versions of the document for nearly a year.

Additionally, Mr. Brandon was discussed during the very first deposition conducted during fact discovery in the SDNY Actions—the deposition of Brandon Rudd in January 2018.  Your colleague, Mr. Normand, attended both days of that deposition and even questioned Mr. Rudd.  The following exchange regarding Mr. Brandon occurred on the first day of Mr. Rudd's deposition:

Q.      **And what about Ms. McAlister; do you know who replaced her?**

A.      Gavin Brandon as chief accounting officer.

Q.      **And did Mr. Brandon also take over that position on October 29th, 2014?**

A.      I believe so, yes.

Q.      **Did you work with either Mr. Brandon or Mr. Sodo on the restatement efforts that were going on at the company?**

A.      Yes, they were both involved.

Q.      **And did you -- describe your contact that you had with Mr. Brandon on the restatements.**

A.      Gavin was very involved throughout the restatement process.  He was leading the effort, for the most part, from the senior team, so I worked with him closely on a routine basis.

Q.      **And who's on the senior team you just mentioned?**

A.      I was referencing, I believe, to the senior team of accounting, which was really Gavin.

Q.      **Did Mr. Brandon -- was he new to the company, or did he have another role before taking over as chief accounting officer?**

---

[2] ARCP_VANGUARD_02519873 at cells H35 and I35 also list Mr. Brandon and Mike Sodo next to the language quoted in your April 12, 2018 letter: "Executive members . . . interest calculations."

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
April 24, 2018
Page 4

> A.     He was from Cole.  He had been around for a couple years, I believe, on the Cole
> side before we merged.  And similar to Michelle Bowen, he was working on the
> Cole REITs prior to coming over as chief accounting officer.  I believe he was
> CFO of two of the funds prior to taking the CAO role at ARCP.

(Rudd Tr. 282:3 – 283:8.)

Your colleague, Mr. Normand, even questioned Mr. Rudd about an email sent from Mr. Rudd **to Mr. Brandon**.  (*See id.* 526:17–527:15.)

Moreover, as your letter concedes, Plaintiffs have for nearly a year refused to produce Matthew Walker's documents despite the VEREIT Defendants' compromise offer that they would produce Mr. Brandon's documents under certain limited search parameters in exchange for Plaintiffs producing Mr. Walker's documents.  Although you state in your April 20 letter that we began discussing such an exchange in December 2017, we would direct you to your June 30, 2017 letter to my colleague, Jed M. Schwartz.  In that letter, you state:

> During the June 28 meet and confer, you focused on the fact that Plaintiffs
> identified Mr. Walker in their initial disclosures.  The ARCP Defendants
> likewise identified an individual in their initial disclosures (Gavin Brandon)
> whom they have so far refused to include as a document custodian. As a
> potential compromise, we discussed the possibility of an alternative set of
> search criteria to be used for Mr. Walker's documents, and possibly for Mr.
> Brandon's documents.  We are considering that approach and can discuss
> that issue further at a later date.

> We met and conferred in December 2017 and submitted a proposal to you in
January 2018.  You did not respond to that proposal until your April 20 letter.

Mr. Walker (like Mr. Brandon for the VEREIT Defendants) is included on Plaintiffs' initial disclosures.  Mr. Walker is highly relevant to issues relating to Plaintiffs' activities in Arizona and the viability of Plaintiffs' state law claim.  Indeed, Plaintiffs submitted a declaration from Mr. Walker in support of their opposition to Defendants' motion to transfer venue (Dkt. 98), in which Mr. Walker described Vanguard's operations in Arizona, including alleged "work by Vanguard employees in Arizona includ[ing], among other things, processing transactions, client calls, sales, and relationship management."  However, Mr. Walker's declaration said nothing about whether Plaintiffs' investment decisions were made in Arizona, whether any alleged misrepresentations were received or acted on in Arizona, or Vanguard's operations outside of Arizona, notwithstanding that the declaration acknowledges that Vanguard's headquarters are in Pennsylvania and the vast majority of its employees are located outside of Arizona.

The VEREIT Defendants want closure on our ongoing negotiations regarding Mr. Brandon and Mr. Walker.  As always, the VEREIT Defendants remain open to producing Mr.

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
April 24, 2018
Page 5

Brandon's documents, subject to an agreement regarding reasonable search parameters and
Plaintiffs' production of Mr. Walker's documents.  We are available to meet and confer.

**Plaintiffs' April 20 Submission**

    The Court's April 13, 2018 Order asked for two things: (1) a proposed schedule
and (2) briefing regarding preferred methods for resolving discovery disputes.  (*See* Dkt. 262.)
In their April 20 Submission, however, Plaintiffs improperly sought to lodge an unripe discovery
dispute before the Court without conferring with Defendants.  In their April 20 Submission,
Plaintiffs discussed, and attached as Exhibit 2, an April 10, 2018 letter that Plaintiffs sent to the
VEREIT Defendants and ARC Defendants requesting additional document production.
Plaintiffs stated in the submission that Exhibit 2 and "correspondence in response to a second
letter detail ARCP's ongoing efforts to delay discovery."

    Based on our telephone conversation with you on April 20—prior to Plaintiffs'
filing of the April 20 Submission, but after you sent us your April 20 letter—as well as
subsequent email correspondence, we now understand that you intended to improperly file with
the April 20 Submission our correspondence in three other letters sent from April 12 to April 20,
*__including__* **the letter you sent after 5 pm EST on April 20, the day that responses to the
Court's April 13 Order were due.**  We understand that the only thing that prevented you from
inappropriately including these letters with the April 20 Submission was that the letters discussed
material that had been designated as confidential pursuant to the Protective Order (Dkt. 142), and
that you had failed to consider the import of the Local Rules and the Protective Order governing
confidential material until the last minute before filing.

    Your abandoned attempt to file these letters with the Court, and your suggestion
in your April 20 email that you may file these letters with the Court prior to the April 25 status
conference or introduce them during the conference, are completely inappropriate.  The Court's
April 13 Order sought only the parties' proposals with respect to scheduling and preferred
methods for briefing discovery disputes.  Plaintiffs' attempt to place these letters before the
Court reflect an inappropriate attempt to prematurely brief a discovery dispute that is still the
subject of ongoing discussion and that was well beyond the scope of the Court's requests in its
April 13 Order.

    Should you continue with your plan to prematurely file our prior correspondence
regarding ongoing discovery discussions or to introduce the correspondence at the April 25
status conference, before we have completed the meet and confer process, the VEREIT
Defendants insist that you include this letter, as well.  If you fail to do so, the VEREIT
Defendants will raise the issue with the Court.  The VEREIT Defendants further note that this
letter refers to confidential information under the Protective Order.  Accordingly, you must meet
and confer with the VEREIT Defendants at least three business days prior to submitting this
correspondence with the Court, in accordance with the Local Rules and the Protective Order.

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
April 24, 2018
Page 6

We are willing to meet and confer to discuss all outstanding discovery issues.

Sincerely,

Thomas A. Quinn

**CONFIDENTIAL**

# EXHIBIT 5
# REDACTED



April 24, 2018

<u>**VIA EMAIL**</u>

Thomas Quinn, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005-1413
aapps@milbank.com

Re:    *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
       No. CV-15-02157

Dear Mr. Quinn:

I write on behalf of Plaintiffs in response to your letter from earlier today regarding ARCP's production of Mr. Brandon's documents and Plaintiffs' April 20 submission to the Court.

**ARCP's Abusive Discovery Posture**

Your letter reflects an abuse of the meet-and-confer process set forth in the protective order.  With Plaintiffs' April 20 submission, we properly sought to notify the Court of ARCP's misconduct, as detailed in our prior letters.  You objected, and you said we needed to first meet and confer with Grant Thornton.  We have since done so, and Grant Thornton's counsel proposed specific redactions to two of those three letters.  Enclosed with this letters are Grant Thornton's requested redactions.  Plaintiffs may now share those letters with the Court so the Court may consider them in connection with this conference.

In your letter today, you "insist" that Plaintiffs include your letter with any submission to the Court – but then state "this letter refers to confidential information under the Protective Order" and Plaintiffs therefore "must meet and confer with the VEREIT Defendants at least three days prior to submitting this correspondence with the Court …."  In doing so, you seek to prevent Plaintiffs from sharing any of these letters with the Court, even if we submit them under seal and even after we have at your request met and conferred with Grant Thornton.

You could have sent us a proposed redaction to your letter, articulating ARCP's position regarding the confidentiality of any portion of that letter, but you instead vaguely assert confidentiality to obstruct our efforts to inform the Court regarding ARCP's



April 24, 2018
Page 2

discovery tactics.  This is an abuse of the meet and confer process, and a transparent attempt to conceal ARCP's misconduct and delay discovery.

Grant Thornton sent us its proposed redactions, and Plaintiffs may now share the three previous letters with the Court.  You may then if you'd like present your letter to the Court, along with this response.  Plaintiffs have no objection to your letter or this response being made public.

**Custodians**

Nothing in your letter justifies ARCP's continued withholding of Mr. Brandon's documents.  In my April 20 letter, we asked you to confirm that ARCP would produce Mr. Brandon's documents based on ARCP's prior proposal, while we meet and confer regarding the full scope of that production.  You still have not done that.  Instead, your letter attacks us and again demands that Plaintiffs agree to limit production of Mr. Brandon's documents to only documents post-dating October 29, 2014 – claiming that any earlier documents "would be irrelevant."

What is the basis for your assertion that all of Mr. Brandon's documents prior to October 29, 2014 would be "irrelevant" to Plaintiffs' claims?  Based on our review, it is clear that Mr. Brandon was involved with the ARCP-Cole merger planning and integration, all of which pre-dated October 29, 2014.  For example:

- On December 3, 2013, Mr. Brandon █████████████████████████ ████████████ ARCP_VANGUARD_01408684.

- On December 9, 2013, Mr. Brandon █████████████████████████ ███████████████████████████████████████████████ ████████████. ARCP_VANGUARD_01088578.

- On December 9, 2013, Mr. Brandon █████████████████████████ ██████████████████████████████████ ARCP_VANGUARD_01088741.

- In January 2014, Mr. Brandon ████████████████████████ ███████████████████ *E.g.*, ARC_CIV_SDNY_0791766.

- In February 2014, Mr. Brandon █████████████████████████ ███████████████████████████████



April 24, 2018
Page 3



ARCP_VANGUARD_00185308.

- On February 7, 2014, Mr. Brandon

ARCP_VANGUARD_01011508.

ARCP_VANGUARD_01011516.

- On February 12, 2014, Mr. Brandon

ARC_CIV_SDNY_0791840.

- On February 18, 2014, Mr. Brandon

ARCP_VANGUARD_01253047.

- In April 2014, Mr. Brandon

- On June 12, 2014, Mr. Brandon

ARCP_VANGUARD_00096723.

- On June 20, 2014, Mr. Brandon

ARCP_VANGUARD_00107013.

- On July 2, 2014, Mr. Brandon
  *E.g.*, ARCP_VANGUARD_00123916.



April 24, 2018
Page 4

- Before October 29, 2014, Mr. Brandon ███████████████████
  ████████████████████████████████████
  ARCP_ONMD_AZ_0022649.

This is not meant to be a complete list of relevant documents that have already been produced. Also, we of course do not know what ARCP has withheld from Plaintiffs. In any case, these documents suggest that your "compromise" would result in ARCP withholding relevant documents from Mr. Brandon's files.

Given these other documents, we do not understand how ARCP can credibly represent to us (or the Court) that all of Mr. Brandon's documents from before October 29, 2014 are "irrelevant." This is especially true given the broad definition of relevance under the Federal Rules of Civil Procedure and the results of our own review of documents that already have been produced.

This appears to be a pattern: ARCP makes broad representations regarding what whole categories of documents do or do not reflect, apparently without actually first reviewing those documents. For example, we have had a lengthy meet and confer regarding whether ARCP should apply certain Arizona-focused search terms. ARCP previously represented to the Court that the evidence will "demonstrate unequivocally that the relevant conduct took place outside of Arizona" (Dkt. 244 at 1) and that there are "no Arizona contacts that would warrant a choice of law for Arizona law" (11/14/2017 Tr. at 23), but ARCP meanwhile refuses to run searches to identify and produce documents responsive to Plaintiffs' requests using various Arizona-focused searches.

We cannot at this time agree to ARCP's proposed "compromise" regarding Mr. Brandon because it appears that would result in ARCP withholding documents that are responsive to Plaintiffs' requests and relevant to Plaintiffs' claims. We ask, again, that ARCP immediately begin producing Mr. Brandon's documents based on the search criteria you proposed. You have no basis to withhold those documents, and the parties can meanwhile continue to negotiate the full scope of that production.

As stated in my April 20 letter, Plaintiffs are collecting Mr. Walker's documents. ARCP's demand for those documents in no way justifies ARCP's misleading representations regarding Mr. Brandon's documents and refusal to immediately begin production of those documents.

**Plaintiffs' April 20 Submission**

Plaintiffs' April 20 submission was responsive to the Court's order, and it provides relevant information for purposes of determining what methods the Court should adopt for resolving discovery disputes.



April 24, 2018
Page 5

        The letters were between counsel for Plaintiffs and ARCP, which is why we
contacted you regarding the submission of those letters to the Court, with the possibility
of a stipulated agreement to have those filed under seal.

        There is nothing "improper" about seeking to notify the Court of ARCP's
misconduct, and (as explained above) your position reflects an abuse of the meet and
confer provisions in the protective order, to prevent and delay discovery.

                            Sincerely,

                            Beko Reblitz-Richardson


Enclosures

cc:     Keith Beauchamp, Esq.
        Jonathan Sherman, Esq.
        Edward J. Normand, Esq.
        Joseph F. Kroetsch, Esq.
        Nathan Holcomb, Esq.



April 12, 2018

**<u>VIA EMAIL</u>**

Antonia Apps, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005-1413
aapps@milbank.com

Re:    *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
       No. CV-15-02157

Dear Ms. Apps:

I write on behalf of Plaintiffs regarding Plaintiffs' document requests to VEREIT, Inc. and VEREIT Operating Partnership, L.P (together "ARCP").

On March 4-6, 2018, parties from the various actions deposed Grant Thornton employee Jessica Estrada regarding her ARCP-related work.  One document marked as an exhibit during that deposition (Ex. 271, GT-ARCP DOC_00200922) included the following statement in one of the attached spreadsheets:



This document (along with Ms. Estrada's testimony and other documents we have identified) makes us extremely concerned regarding the fact that ARCP still has not produced Mr. Brandon's documents – something Plaintiffs requested more than a year ago and ARCP still has not done.

ARCP identified Mr. Brandon in its initial disclosure in this action.  In December 2016, Plaintiffs asked ARCP to include Mr. Brandon as a custodian.  In your January 31,



April 12, 2018
Page 2

2017 letter, ARCP objected.  In your April 21, 2017 letter, you suggested that Mr. Brandon would have limited or no relevant documents, stating:

> With respect to Mr. Brandon, adding him as a custodian would result in 13,735 new 'hits' based on the search terms applied to existing custodians, even after de-duplication for documents previously reviewed.  Many, if not most, of these documents will be irrelevant and reviewing them would be disproportionate to the needs of the case because from the time that Mr. Brandon joined ARCP upon the closing of the Cole merger through approximately October 28, 2014, Mr. Brandon held positions within the Private Capital Markets segment for which Cole Capital was the sponsor. That segment was not the subject of any changes to financial statements or operations identified in the March 2, 2015 restatement, and is not the subject of the allegations in the Complaint.  Indeed, the ARCP Defendants conducted a review of a sample set of these documents, which confirmed that they are irrelevant and that further review would be disproportionate to the needs of the case.

It is clear that Mr. Brandon has highly relevant documents and information, and his documents should be collected, reviewed, and produced without further delay.

No later than April 17, 2018, please send us ARCP's final position regarding whether it will produce Mr. Brandon's documents and any proposal as to search terms. The parties can then meet and confer before the next conference.

Sincerely,

Beko Reblitz-Richardson

cc:    Keith Beauchamp, Esq.
       Jonathan Sherman, Esq.
       Edward J. Normand, Esq.
       Joseph F. Kroetsch, Esq.
       Nathan Holcomb, Esq.



April 20, 2018

<u>**VIA EMAIL**</u>

Thomas Quinn, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005-1413
aapps@milbank.com

Re:    *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
        No. CV-15-02157

Dear Mr. Quinn:

I write on behalf of Plaintiffs in response to your letter dated April 17, 2018, regarding ARCP's production of Mr. Brandon's documents.

Your letter does not dispute, or even address, that ARCP must have relevant emails and other documents from Mr. Brandon's files based at least in part on Mr. Brandon's involvement in the ARCP restatement process, as the recent testimony and exhibits at the deposition of Ms. Estrada earlier this month confirm.

Instead, your letter suggests that Plaintiffs ignored an earlier letter and seeks to condition production of Mr. Brandon's documents.  You cite Mr. Ohring's letter dated January 9, 2018, where ARCP proposed a limited production of Mr. Brandon's documents (limited to a five-month period and seven sets of terms) conditioned on Plaintiffs' production of Mr. Walker's documents applying the full set of search terms used by Plaintiffs for all other custodians and for the full time period.

Your letter is a transparent attempt by ARCP to further delay production of these key documents from Mr. Brandon's files, to distract attention from ARCP's misleading representations regarding Mr. Brandon, and to impose additional costs on Plaintiffs by again demanding production of Mr. Walker's documents.  There is no question that Mr. Brandon's documents are relevant, and ARCP should have produced those documents many months ago.  ARCP may not condition production of those key documents on Plaintiffs' agreement to produce Mr. Walker's documents, and certainly not based on the application of a far broader set of searches to Mr. Walker's documents.

At the time of Mr. Ohring's January 9 letter, Plaintiffs were still under the impression – based on Ms. Apps' prior representations, as quoted in our April 12 letter, and having been excluded from all document-related negotiations in the SDNY Action –



April 20, 2018
Page 2

that Mr. Brandon may not have any significant number of relevant or key documents. Based on Ms. Apps' representations, and the fact that ARCP never disclosed to us the key role that Mr. Brandon played, we discussed in December 2017 the possibility of an agreement to the production of documents for both Mr. Brandon and Mr. Walker, with certain follow-up letters.

Based on the deposition of Ms. Estrada and additional document review, however, it is now clear that Mr. Brandon played a key role in connection with the ARCP restatement process and, it stands to reason, has many key documents regarding the massive fraud that occurred at ARCP. None of this was disclosed to us during the previous conversations regarding Mr. Brandon. ARCP instead repeatedly sought to convince us that there was no need to produce Mr. Brandon's documents, and that it imposed a disproportionate burden on ARCP to produce those documents. In fact, there never should have been any question about producing these documents, and they should have been produced to us long ago.

As you know, the document marked at Ms. Estrada's deposition – containing ███ ██████████████████████████████████ – was produced by Grant Thornton. We previously asked ARCP to produce all documents produced in the SDNY Action, which would have included all documents that Grant Thornton produced to ARCP. ARCP refused. ARCP instead forced us to subpoena other parties, including Grant Thornton, to obtain those documents. These efforts created further delay and imposed additional costs on Plaintiffs. Although we have now identified additional versions of this key document produced by ARCP, we first became aware of this spreadsheet only at Ms. Estrada's deposition. ARCP's demand that Plaintiffs separately subpoena parties for documents such as these is just another way in which ARCP has taken steps to prejudice Plaintiffs and withhold evidence.

ARCP's failure to produce Mr. Brandon's documents also further confirms the inadequacy of the discovery record from the SDNY Action. ARCP has repeatedly opposed Plaintiffs' efforts to obtain relevant discovery beyond the scope of the SDNY Action, including most recently with respect to Mr. Brandon's documents and also the former Cole executives. The fact is that Plaintiffs had no input regarding the selection of custodians, search terms, or deponents in the SDNY Action. Despite evidence linking Mr. Brandon to an admission of intentional misstatements prior to 2014, which surely was known to ARCP, Mr. Brandon was not a custodian in the SDNY Action, and he has not even been identified as a deponent in that action.

ARCP's decision to withhold Mr. Brandon's documents is also prejudicial to Plaintiffs given ARCP's repeated assertion that ARCP executives engaged in fraud only in 2014. ARCP sought to limit its exposure to only the 2014 period with its motion to dismiss in this action, and ARCP then emphasized in the Rule 16 report submitted to



April 20, 2018
Page 3

Judge Soto that ARCP's October 2014 disclosure "did not identify errors, much less intentional ones, as to any financial period pre-dating 2014" and that the March 2015 restatements "did not announce any findings of intentional conduct as to any reporting period prior to the second quarter of 2014." (Dkt. 247 at 8-9.) This document ███████, however, admits ████████████████████, as Plaintiffs have alleged.

At all times since Plaintiffs first asked ARCP to produce Mr. Brandon's documents, in December 2016, ARCP knew or should have known that Mr. Brandon played a key role in the restatement process and would have relevant documents and testimony regarding ARCP's fraud. Instead of sharing that information to us, ARCP first sought to mislead us as to the importance of Mr. Brandon's documents (ARCP's early 2017 letters) and then sought an agreement to a limited time period and set of search terms conditioned on production of Mr. Walker's documents (in the January 9 letter). Instead of now agreeing to produce Mr. Brandon's documents, ARCP now seeks to divert attention from its failures and misconduct and further delay production.

There is no basis for ARCP to continue to withhold Mr. Brandon's documents. Please immediately begin reviewing Mr. Brandon's documents for production based on the limits set out in Mr. Ohring's January 9 letter, and produce them on a rolling basis. ARCP should produce those documents immediately, without prejudice to further discussion regarding the contours of the production of Mr. Brandon's documents (including both time period and search terms) and without conditioning that on the production of Mr. Walker's documents. Please confirm that ARCP will do so.

Although there is no basis for ARCP to demand production of Mr. Walker's documents as a condition of producing Mr. Brandon's documents, we have nonetheless begun the process of collecting his documents for review. We will run the search terms and assess whether there are any time-period or search-term restrictions that should apply. ARCP has never articulated any compelling need for Mr. Walker's documents, let alone that Plaintiffs apply all search terms for the full time period, but we are nonetheless evaluating that request. This process should in no way delay ARCP's collection, review, and production of Mr. Brandon's documents.

To be clear, we have never sought to delay any production of Mr. Walker's documents. You never followed up regarding ARCP's request for his documents, and we have been focused on the depositions. As you know, we sought to negotiate an additional production of documents by ARCP before these depositions began. In response, ARCP took the position that Plaintiffs should instead seek information through the depositions. We strongly disagree with ARCP's position, but we nonetheless have focused on these depositions, including Ms. Estrada's recent deposition. In the meantime, Plaintiffs held off on seeking to compel production, while conducting these initial depositions.



April 20, 2018
Page 4

       It has become clear that ARCP's proposal does not and will not work.  After many days of preparation, these witnesses have limited recollection.  We have repeatedly needed to prompt their recollection by confronting them with documents.  Your position that Plaintiffs should first seek evidence through testimony and not documents has it backwards.  Without documents, we have limited ability to prove that ARCP's claims are false – including ARCP's claim that there were no intentional misstatements prior to 2014.  The Court directed the parties to coordinate depositions, and we have diligently done so.  It is now time to resolve these outstanding document issues, and ARCP should immediately produce Mr. Brandon's documents.

       Sincerely,

       Beko Reblitz-Richardson

cc:    Keith Beauchamp, Esq.
       Jonathan Sherman, Esq.
       Edward J. Normand, Esq.
       Joseph F. Kroetsch, Esq.
       Nathan Holcomb, Esq.

# EXHIBIT 6



May 2, 2018

**VIA EMAIL**

Jerry Marks, Esq.
Antonia Apps, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005-1413
jmarks@milbank.com
aapps@milbank.com

       Re:    *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
            No. CV-15-02157

Dear Counselors:

      I write on behalf of Plaintiffs regarding three document discovery issues.

      Mr. Marks stated during the April 25th conference that he believes the parties may be able to resolve certain outstanding disputes. We therefore want to meet and confer with you once more before seeking relief from the Court, pursuant to whatever process the Court directs the parties to follow.

      Plaintiffs currently have three document-related disputes with ARCP: (1) searches of documents held by six additional custodians; (2) the addition of four categories of search terms; and (3) the amendment of ARCP's responses to Plaintiffs' document requests to acknowledge that it will produce documents beyond those produced in the SDNY. Action that are responsive to Plaintiffs' requests. We summarize Plaintiffs' position on these three disputes below, but do not repeat the long history of our meeting and conferring, which is reflected in our prior letters.

      Please send us any compromise you wish us to consider this week. We would like to complete any meet and confer early next week, so that we can then proceed with any necessary motion practice after the Court enters its order.

**Custodians**

      Plaintiffs request that ARCP agree to search the documents of six (6) additional custodians: ARCP's current Chief Accounting Officer (Gavin Brandon) and the "Cole Executives" (Christopher H. Cole, Kirk McAllister Jr., Marc T. Nemer, Jeffrey C. Holland, and Stephen Keller). As you know, Plaintiffs had no involvement in the



May 2, 2018
Page 2

selection of any custodians in the SDNY Action, and ARCP has not included any additional custodians based on Plaintiffs' requests.

Brandon

In November 2016, ARCP identified Mr. Brandon in its initial disclosures as one of the "individuals likely to have discoverable information."  As a result, in December 2016, Plaintiffs asked ARCP to include Mr. Brandon as a custodian.  Nonetheless, ARCP opposed that request or alternatively sought to narrow the scope of any collection and review of Mr. Brandon's documents.  Most recently, on January 9, 2018, ARCP proposed production of Mr. Brandon's documents for the limited time period of October 28, 2014 through March 31, 2015, and limited to a small set of seven searches.  As explained in my letters dated April 12, 20, and 24, 2018, Mr. Brandon is likely to have relevant documents responsive to Plaintiffs' requests outside of that time frame and beyond the scope of the proposed search terms.  ARCP's proposed limitations therefore will result in ARCP withholding relevant documents from Plaintiffs.  Plaintiffs do not agree to this proposed compromise.  ARCP should collect, review, and produce Mr. Brandon's documents for the full time period using the full set of search terms.

Cole Executives

By letter dated April 10, 2018, we asked ARCP to agree to add the Cole Executives as custodians.[1]  As we explained, Plaintiffs sought production of documents from the Cole Executives directly through document subpoenas.  The Cole Executives' objections and responses advise that they do not currently possess the requested documents, and that as a result of the Cole merger, the documents are in the possession of ARCP.  The ARC Defendants also confirmed in a letter that they do not possess documents for any of the Cole Executives.

Although the Cole Executives were named as defendants in the SDNY Action, they were dropped from that action, and we understand that as a result none of their documents have yet been collected or produced (apart from Mr. Cole's CV).  The Cole Executives' files, including emails and other documents, likely contain documents relevant to Plaintiffs' claims relating to the Cole merger and responsive to Plaintiffs' requests.  Class counsel in the SDNY Action listed Mr. Cole and Mr. McAllister in their list of 45 proposed deponents, and we may seek to depose the other three Cole Executives. These documents are necessary to prepare for those depositions as well.

---

[1] We proposed specific search terms in our April 10 letter, but that was without limitation.  It may be that there are additional search terms needed in connection with their documents, such as code names used by the Cole Executives for the merger.



May 2, 2018
Page 3

Searching the files of the Cole Executives is warranted and proportional. Plaintiffs' claims focus on the Cole merger, and we have served requests seeking documents concerning that merger. On March 22, 2013, ARCP issued a press release stating: "ARCP's management expressed interest in acquiring CCPT III on numerous occasions over the past two months. First, ARCP expressed interest through Goldman Sachs, CCPT III's financial advisor; and then, ARCP expressed interest directly to CCPT III's board of directors and management." Given the involvement of certain intermediaries, such as Goldman Sachs, the Cole Executives likely have documents regarding ARCP that cannot be obtain from the files of the ARCP custodians. We also believe that the Cole Executives' files would include documents concerning Cole's public assertion that ARCP's offer reflected "highly speculative engineering" and other criticisms of ARCP in the lead up to the merger.

We never received a response and do not know ARCP's position on this request.

**<u>Search Terms</u>**

Since December 2016, Plaintiffs have sought to negotiate a reasonable and proportional set of additional searches. Plaintiffs had no input regarding the searches run in the SDNY Action, and we seek to negotiate the first set of searches for this action. On January 11, 2018, Plaintiffs sent their fifth proposal for this search, which refined the search from our original proposal in an effort to address issues raised by ARCP.

As described in my January 11, 2018 letter, Plaintiffs seek to have ARCP apply four categories of additional searches: (1) three searches to identify documents concerning Defendants' Arizona activities; (2) three searches to identify documents concerning the Cole transaction; (3) four searches to identify documents concerning Plaintiffs and their investments; and (4) and nine searches to identify documents that are otherwise relevant to Plaintiffs' claims based on searches that the ARC Defendants already agreed to run and we believe ran on their documents.

We appear to be at an impasse. According to Mr. Ohring's January 23, 2018 letter, Plaintiffs' proposed searches yields about 136,500 additional documents. ARCP proposed a more limited set of searches yielding 8,951 additional documents. Plaintiffs narrowed their requests in various ways, including by imposing certain time period and custodian limitations, and we believe that ARCP's proposal will result in ARCP withholding many relevant and responsive documents. Based on our various revisions, Plaintiffs do not seek to have ARCP review every document containing the word "Arizona" as suggested at the conference, and we have instead sought to limit our searches in various ways to reduce the burden on ARCP.



May 2, 2018
Page 4

As summarized below, Plaintiffs believe that all four categories of additional searches are fair and proportional under the circumstances. Defendants' fraud caused Plaintiffs losses of almost $500 million. It is not disproportional or unduly burdensome for Plaintiffs to now seek documents responsive to their requests based on these additional searches, and 136,500 is not a huge number of documents. As a practical matter, the protective order includes a claw back provision. ARCP can apply and produce these documents with no further review if it wishes to do that, and there is no basis for ARCP to claim any undue or disproportional burden.

The depositions to date also underscore the importance of a more fulsome document production. These deponents do not possess remotely comprehensive memories regarding issues such as the extent of Defendants' Arizona contacts; the nature, purpose, and details regarding the Cole merger; or the extent to which index funds in general and Vanguard in particular were targeted as part of Defendants' fraud. In the first deposition, the witness testified approximately 350 times that he did not remember or did not recall the information responsive to the question – obviously underlining the importance of documents to fill out such an astonishing lack of memory. Far from substituting for fuller document production, the depositions will in significant part depend on such production.

Arizona Activities

Defendants contend that the evidence will "unequivocally" show that Arizona law should not apply to Plaintiffs' state law claim, and that they will seek summary judgment on the basis of the purported lack of Defendants' Arizona contacts. ARCP at the same time refuses to apply Plaintiffs' Arizona-related search terms. This is improper, and prejudicial to Plaintiffs. These search terms are narrowly tailored – limited to specific time periods, to specific custodians, and to specific sources of documents. Any burden on the Company Defendants exists only because there are thousands of documents containing these relevant terms that ARCP has not yet reviewed or produced. Indeed, Plaintiffs would have expected Defendants to have already collected and reviewed these documents before making representation to the Court regarding what the evidence "unequivocally" will demonstrate regarding Defendants' Arizona contacts and activities.

Cole Merger

The details of and communications regarding the negotiation, execution, and the results of the ARCP-Cole merger are key to Plaintiffs' specific theory of the case. Yet ARCP has resisted searching for and producing documents specific to the Cole merger. ARCP has not searched, for example, for documents containing the code names that Defendants used for the transaction and the entities involved in the transaction, such as "Camel" and "Chicago" (both referring to Cole entities) and "Project Camel," "Project



May 2, 2018
Page 5

Geronimo," "Project Chicago," and "Project Windy City" (the terms used by ARCP to refer to those merger-related efforts).  These are basic, even startling, omissions.  The evidence obtained to date reflects both the motive and opportunity to defraud investors in connection with that massive acquisition, and Plaintiffs fairly seek additional documents concerning that key transaction.  Plaintiffs reasonably proposed search terms to identify such documents, along with searches targeting communications with Cole and key documents concerning the Cole transaction.  ARCP's refusal to run such terms is unreasonable.

> Vanguard

Plaintiffs proposed four searches to identify documents concerning Plaintiffs and their investments in ARCP.  These include, for example, the eminently reasonable proposed search term "Vanguard" in the From, To, or CC fields of any email, and a search for "Vanguard" combined with "index."  These documents are directly relevant to Plaintiffs' theme – not present in the SDNY Action – that Defendants' fraudulent misconduct targeted index funds in general and Vanguard in particular.  ARCP is not entitled to limit searches to reduce Plaintiffs' ability to try the case as they see fit.  In declining to run a search like "Vanguard," moreover, the Company Defendants take a position inconsistent with their insistence that Plaintiffs use "ARCP" and the names of other Defendants in Plaintiffs' own searches for relevant documents.

> Other

Plaintiffs asked ARCP to apply the same search terms that the ARC Defendants applied.  Without any input from Plaintiffs, ARCP and the ARC Defendants decided to apply different search terms to different document custodians.  Considering the prospect for abuse in this approach – the refusal to apply particular terms to particular custodians might, for example, exclude from production many relevant documents those custodians possess – Plaintiffs reasonably proposed that the Company Defendants apply each other's search terms.  The ARC Defendants agreed to apply some of those terms, but ARCP refused across the board.  This refusal is unreasonable

**ARCP's Deficient Responses**

In response Plaintiffs' document requests, ARCP repeatedly objected on the basis that it already produced documents in the SDNY Action and should not be required to produce any additional documents in this action.  ARCP should amend those response to confirm that it will produce the requested the documents.  This is necessary because ordering ARCP to include additional custodians and additional search terms will serve no purpose if ARCP then fails to produce non-privileged documents responsive to Plaintiffs'



May 2, 2018
Page 6

requests.  Plaintiffs' requests are straightforward, and there is no basis for ARCP to
withhold non-privileged documents from Plaintiffs that are responsive to the requests.

Sincerely,

Beko Reblitz-Richardson

cc:    Keith Beauchamp, Esq.
       Jonathan Sherman, Esq.
       Edward J. Normand, Esq.
       Joseph F. Kroetsch, Esq.
       Nathan Holcomb, Esq.

# EXHIBIT 7

# MILBANK, TWEED, HADLEY & McCLOY LLP

**28 LIBERTY STREET**
**NEW YORK, NY 10005**
_____

212-530-5000

FAX: 212-530-5219

Jonathan Ohring
DIRECT DIAL NUMBER
212-530-5147
E-MAIL: JOhring@milbank.com

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

January 23, 2018

**VIA EMAIL**

Mr. Beko O. Reblitz-Richardson, Esq.
Boies, Schiller & Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

  Re: *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
    No. 2:15-cv-02157-ROS

Dear Mr. Reblitz-Richardson:

    We write on behalf of Defendants VEREIT, Inc. and VEREIT Operating
Partnership, L.P. (collectively, the "VEREIT Defendants") in response to your January 11, 2018
letter.

    In your letter, you complain that the VEREIT Defendants' proposed compromise
is "insufficient" because the VEREIT Defendants "have not agreed to apply any of the searches
Plaintiffs proposed regarding Defendants' Arizona activities"—presumably, Search Nos. 9-12 in
Appendix A to your December 20, 2017 letter.  But the VEREIT Defendants had good reason to
decline to run those searches.  Those proposed searches resulted in approximately 136,500
additional unique hits.  Review of those documents would be unduly burdensome and grossly
disproportionate to the needs of the case, particularly in light of the 252,997 documents
(comprising 3,713,281 pages of documents) already produced by the VEREIT Defendants.
Plaintiffs have made no attempt to explain why they cannot obtain information regarding
Defendants' Arizona activities through alternative, far less burdensome means, including simply
asking witnesses appropriate questions during their depositions.  Indeed, Plaintiffs engaged in

Mr. Beko O. Reblitz-Richardson, Esq.
January 23, 2018
Page 2

extensive questioning of Mr. Rudd during his deposition today regarding the location of VEREIT's accounting activities.

Moreover, Plaintiffs' proposed "compromise" in your January 11 letter, which purportedly "reflects certain narrowing" of Plaintiffs' proposal in your December 20 letter, represents almost no narrowing at all.  It appears that the only changes to the 21 searches proposed in your December 20 letter were the dropping of Search Nos. 19 and 20, acceptance of the VEREIT Defendants' proposed modifications to Search Nos. 18 and 21, and a narrowing of Search No. 9.  Plaintiffs did not propose any narrowing with respect to Search Nos. 1-8 or 10-17.  Plaintiffs' proposed "compromise" would result in 159,303 additional unique hits, which remains unduly burdensome and grossly disproportionate to the needs of the case.  Accordingly, the VEREIT Defendants will not apply the searches set forth in your January 11 letter.

In response to your request for information regarding the number of documents reviewed by the VEREIT Defendants for production in the SDNY Actions, we do not believe that information is relevant to an assessment of the additional burden of Plaintiffs' proposed searches, which is disproportionate to the information that Plaintiffs seek to obtain beyond the nearly 4 million pages of documents that the VEREIT Defendants have already produced. Nonetheless, the number of documents reviewed by the VEREIT Defendants in response to the search terms utilized in the SDNY Class Action is approximately 318,098.[1]

In response to your request for hit counts for the VEREIT Defendants' proposed compromise from my January 9 letter, please see the table below:

---

[1] This count does not include the number of documents reviewed in connection with productions to regulators, which were also produced in the SDNY Class Action and this action.

Mr. Beko O. Reblitz-Richardson, Esq.
January 23, 2018
Page 3

| Search # | Search String | "Hits" on All Custodial Documents[2] |
|---|---|---|
| 9 | (Cole* or CCPT) w/10 (fraud* or conceal* or fals* or lie or unlawful or illegal or unethical or erroneous or manipulate* or decept* or mistake* or improper* or disaster or terrible or "red flag" or incorrect or violat* or missclassif* or overstat* or understat* or non-compliant or inappropriate) | 3,138 |
| 13 | VFTC* | 15 |
| 14 | Vanguard | 126 |
| 15 | "Vanguard REIT" | 522 |
| 16 | Vanguard / 10 (index* or indices) and [@arcpreit.com or @arlcap.com within "from" field in email] | 3,085 |
| 17 | @cole! | 547 |
| 18 | "Project Camel" or Geronimo or "Windy City" or "Project Chicago" | 5,396 |
| 21 | "financial engineering" and not (dwight /2 grant) | 347 |
| | **TOTAL** | 8,951 |

In your letter, you request assurance that the VEREIT Defendants' proposed compromise "does not reflect an attempt to withhold documents from Plaintiffs that the [VEREIT] Defendants identified as significant but that have not yet been produced to Plaintiffs." We hereby provide that assurance. The VEREIT Defendants' proposed compromise is an effort to reduce undue burden and disproportionate review, not an attempt in any way to withhold documents that the VEREIT Defendants have identified as significant.

In your letter, you also ask whether the VEREIT Defendants intend to make representations to the Court regarding whether they reviewed a sample set of documents or regarding the cost of reviewing such documents. We decline to provide Plaintiffs with a preview of the information that the VEREIT Defendants intend to provide to the Court in the event that Plaintiffs choose to seek relief from the Court, but we can assure you that we have taken all reasonable steps that are customary in document reviews of this nature to formulate our position on your requests.

---

[2] The hit counts for each search term are as of January 9, 2018, are subject to the limitations set forth in your December 20, 2017 proposal, inclusive of document families, and exclude documents previously produced or withheld as privileged in connection with productions to regulators or productions in the SDNY actions (and accordingly, this action). Each search was run across all previously-agreed custodians, for the time period February 13, 2012 through March 31, 2015, except where otherwise indicated in your December 20, 2017 proposal.

Mr. Beko O. Reblitz-Richardson, Esq.
January 23, 2018
Page 4


       Finally, the VEREIT Defendants decline your request that they apply Plaintiffs'
proposed searches to the custodial documents of Brandon Rudd and Michael Reiter. Those
proposed searches would result in 12,052 additional unique hits. For the reasons discussed
previously, Plaintiffs' proposed searches would be unduly burdensome and grossly
disproportionate to the needs of the case, particularly in light of the 26,209 custodial documents
already produced by the VEREIT Defendants for those custodians, and Plaintiffs have provided
no justification for their inclusion.

       Sincerely,

Jonathan Ohring

# EXHIBIT 8

1  Keith Beauchamp (012434)
   Shelley Tolman (030945)
2  COPPERSMITH BROCKELMAN PLC
3  2800 North Central Avenue, Suite 1200
   Phoenix, AZ 85004
4  T: 602.381.5490
   F: 602.224.6020
5  kbeauchamp@cblawyers.com
6  stolman@cblawyers.com

7  Jonathan Sherman (admitted *pro hac vice*)
8  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Avenue, N.W.
9  Washington, DC 20015
   T: 202.237.2727
10 F: 202.237.6131
11 jsherman@bsfllp.com

12 [Additional Counsel Listed on Signature Page]

13
   *Attorneys for Plaintiffs*
14

15             **UNITED STATES DISTRICT COURT**

16               **DISTRICT OF ARIZONA**

17

18 Vanguard Specialized Funds, et al.,        No. 15-CV-02157-PHX-ROS

19              Plaintiffs,                    **PLAINTIFFS' FIRST SET OF**
                                               **REQUESTS FOR PRODUCTION OF**
20 v.                                          **DOCUMENTS TO DEFENDANTS**

21 VEREIT, Inc., et al.,

22              Defendants.

23

24        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs, by

25 and through their undersigned counsel, request that Defendants American Realty Capital

26 Properties, Inc. (n/k/a VEREIT, Inc.), ARC Properties Operating Partnership L.P. (n/k/a

27 VEREIT Operating Partnership, L.P.), Nicholas S. Schorsch, David S. Kay, Brian S.

28 Block, Lisa P. McAlister, Lisa Beeson, ARC Properties Advisors LLC, and AR Capital

LLC ("Defendants") produce for inspection and copying the documents described herein that are in their possession, custody, or control, at the offices of Coppersmith Brockelman PLC LLP, 2800 North Central Avenue, Suite 1200, Phoenix, AZ 85004 and Boies, Schiller & Flexner LLP 1999 Harrison Suite 900, Oakland, CA 94612, within thirty (30) days of the date hereof, or at such other time and place mutually agreed upon by the parties.

## DEFINITIONS

To the extent used herein, the words and phrases set forth below shall have the following meanings:

1.     "Affiliate" of an entity means a person or entity that currently or previously, directly or indirectly, owns at least a portion of the first entity or vice versa, is under common partial ownership with the first entity, or can exercise significant authority over the decisions of the first entity or vice versa.

2.     "Agent" of an entity means a person or other entity with apparent or actual authority to act on the first entity's behalf for any purpose whatsoever, or any Affiliate or representative of the first entity, including but not limited to advisors, attorneys, consultants, employees, experts, fiduciaries, and insurers.

3.     "ARCP" means American Realty Capital Properties, Inc. (n/k/a VEREIT, Inc.), including any of its present or former parents, subsidiaries, divisions, subdivisions, practice groups, departments, Affiliates, predecessors, successors, joint ventures, officers, directors, partners, principals, employees, representatives, professional staff members, attorneys, Agents, and all other Persons acting or purporting to act on its behalf.

4.     "ARCP Securities" means the securities that form the basis of Plaintiffs' claims in the above-captioned action.

5.     "Communication" means any transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally or by document, telephone, telecopier,

2

mail, fax, email, voicemail, cellular phone text message, instant message, personal delivery, or by any other means, be they analog, electronic, or otherwise.

6.     "Concerning" means reflecting, relating to, referring to, describing, discussing, evidencing, addressing, or constituting in any way.

7.     "Plaintiffs" means, for these purposes, the plaintiffs in the above captioned action, including their employees, officers, directors, investment advisors, asset managers, or any employee or agent acting on any of their behalf, including without limitation Vanguard Group, Inc.

8.     "Document" has the same meaning and is equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(l)(A), and includes any writings, drawings, graphs, charts, photographs, sound recordings, images, and any other data or data compilations stored in any medium from which information can be obtained. A draft or non-identical copy is a separate document within the meaning of this term. Without limiting the aforementioned definitions, the term "Documents" includes both hard copy documents and electronically stored information ("ESI"), including email, instant messaging, shared network files, databases, any data on magnetic or optical storage media (e.g., servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage devices) stored as either an "active" or backup file, in its Native Format.

9.     "Native Format" means the default format of a data file created by its associated software program (including all metadata). The native format is the original file format that the software application works with during creation, editing, or publication of a file.

10.     "Person" means a natural person, group of natural persons acting as individuals, group of persons acting in a collective capacity (e.g., as a committee, board of directors, etc.), corporation, partnership, limited partnership, joint venture, limited

liability corporation, government or governmental agency, and/or any other incorporated or unincorporated business, government, or entity.

11.    "You" or "Your" refers to each of the Defendants.

12.    "Other ARCP Actions" refers to other actions pending against one or more of the Defendants that involve factual allegations that overlap with this action, including without limitation the actions pending in the Southern District of New York before Judge Hellerstein as 15-mc-00040, 15-cv-08464, 15-cv-08467, 15-cv-04107, 15-cv-08510, 15-cv-08466, 15-cv-01291, 15-cv-6043, and 15-cv-8563.

## INSTRUCTIONS

1.    "Including" shall be construed to include the phrase "but not limited to."

2.    The use of verb in any tense shall be construed to be in the tense necessary to bring within the scope of a request all responses that might otherwise be construed as outside its scope.

3.    In responding to these Requests, you shall produce all responsive documents (including those stored electronically), which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

4.    Plaintiffs reserve their right to request inspection of the original documents, including those stored electronically, as they are kept in the usual course of business. If the original is not in your custody, then a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4

5.      You are to produce each document requested herein in its entirety, without deletion or excision (except on privilege grounds), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

6.      If production of documents is withheld on privilege grounds, as to each such withheld document, state the following information:

(a) which privilege is claimed;

(b) who is asserting the privilege;

(c) a precise statement of the facts upon which said claim of privilege is based;

(d) the following information describing each purportedly privileged document:

i)      a brief description sufficient to identify its nature, i.e., agreement, letter, memorandum, type, etc.;

ii)     a brief description sufficient to identify its subject matter and purpose of the document;

(e) the date it was prepared;

(f) the date it bears;

(g) the date it was sent;

(h) the date it was received;

(i) the identity of the person preparing it;

(j) the identity of the person sending it;

(k) the identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies;

(l) a statement as to whom each identified person represented or purported to represent at all relevant times; and

(m)     all persons to whom its contents have been disclosed; and

(n) a precise description of the place where each copy of that document is
kept, including the title or description of the file in which said document
may be found and the location of such file.

7.    If a portion of any document responsive to these Requests is withheld under
claim of privilege, any non-privileged portion of such document must be produced with
the portion claimed to be privileged redacted. Whenever a document is not produced in
full or is produced in redacted form, so indicate on the document, identifying those
portions of the document which are not being produced. For each document that is
redacted, in addition to providing the redacted version of the document, the parties agree
to furnish logs which comply with the legal requirements under federal law, but at a
minimum will include the following information:

(a) The Begin Production ID of the document;

(b) The End Production ID of the document;

(c) A description of why privilege is being asserted over the
document; and

(d) Which privilege is asserted.

8.    Privilege and redaction logs may be produced on a rolling basis. The
producing party shall provide the logs and supplements for each production within thirty
(30) days of each given production date.

9.    If a document responsive to these Requests was at any time in your
possession, custody or control but is no longer available for production, as to each such
document state the following information:

(a) whether the document is missing or lost;

(b) whether it has been destroyed;

(c) whether the document has been transferred or delivered to another
person and, if so, at whose request;

(d) whether the document has been otherwise disposed of; and

6

(e) a precise statement of the circumstances surrounding the

disposition of the document and the date of its disposition.

10.     This is a continuing request for the production of documents. If, after making your initial production, You obtain or become aware of any further documents responsive to these Requests, You are required by Rule 26(e) of the Federal Rules of Civil Procedure to produce such additional documents to Plaintiffs.

11.     Unless otherwise specified, the relevant time period for these Requests is July 1, 2011 to the date of service of these requests (the "Relevant Time Period"). The Relevant Time Period covers documents concerning events and circumstances during such period, even though dated, prepared, generated, used, or received prior or subsequent to that period.

12.     Plaintiffs do not seek the duplicative production of any documents.  To the extent Defendants produce to Plaintiffs documents produced in the Other ARCP Actions, as requested by Plaintiffs, then Defendants need not re-produce to Plaintiffs any duplicates of those documents in response to these Requests.

## **FORM OF PRODUCTION**

**A.     Production of Hard Copy Documents – Format**

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e. .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Multi-page OCR text for each document should also be

7

provided. The OCR software shall maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**B.     Production of ESI**

1.      Format: Electronically stored information ("ESI") should be produced in singlepage, black and white, TIFF Group IV, 300 DPI TIFF images, with the exception of spreadsheet type files, source code, audio and video files, which should be produced in native format. TIFFs should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs of e-mail messages should include the BCC line. PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

2.      Format – Native Files: If a document is produced in native format, a single-page, Bates-stamped image slip sheet stating the document has been produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even

if all remaining content in the email is identical. Removal of near-duplicate documents and e-mail thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semi-colon, who was a source of that document and the FILEPATH field will list each file path, separated by a semi-colon, that was a source of that document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.    Technology Assisted Review: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.    Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

6.    Embedded Objects: The parties should meet and confer over the inclusion or exclusion of embedded files from the production.

7.    Compressed Files Types: Compressed file types (i.e. .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

8.    Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, including the production of text messages or similar communications, the parties will meet and confer regarding methods of production. The parties will consider whether all relevant information may be provided

by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

9.     Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

10.     Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

11.     Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## **DOCUMENT REQUESTS**

REQUEST NO. 1:

Documents sufficient to identify by name, title, and last known contact information Your current or former employees who had any Communication with the Plaintiffs regarding the acts and events underlying the subject matter of this Action, including without limitation the offer or sale of any security issued by You.

REQUEST NO. 2:

Documents reflecting or Concerning Communications with the Plaintiffs.

REQUEST NO. 3:

Documents reflecting or Concerning meetings with, or presentations to, the Plaintiffs.

REQUEST NO. 4:

Documents reflecting or Concerning the Plaintiffs' investments in ARCP Securities.

REQUEST NO. 5:

Documents or information provided to the Plaintiffs Concerning ARCP.

REQUEST NO. 6:

All Documents You produced and produce and that were and are produced to You in the Other ARCP Actions.

REQUEST NO. 7:

All disclosures and written discovery You produced and produce and that were and are produced to You in the Other ARCP Actions, including without limitation initial disclosures, document requests and responses, interrogatories and responses, deposition notices and responses, requests for admission and responses, and subpoena and responses.

REQUEST NO. 8:

All Documents Concerning Your activities in Arizona, including without limitation the activities described in paragraph 21 of the Complaint.

REQUEST NO. 9:

All Documents Concerning any activities in Arizona in connection with any representations described in the Complaint, including without limitation representations regarding AFFO, financial results, and internal controls.

REQUEST NO. 10:

All Documents reflecting or Concerning the involvement of accounting personnel located in Arizona in the preparation of the ARCP financial statements identified in the Complaint.

REQUEST NO. 11:

All Documents reflecting or Concerning the decision and efforts to acquire Arizona-based Cole Real Estate Investments, Inc.

REQUEST NO. 12:

All Documents reflecting or Concerning the decision to relocate ARCP's headquarters to Arizona.

REQUEST NO. 13:

Documents sufficient to identify all employees of Defendants who have been or currently are based in Arizona.

REQUEST NO. 14:

Documents sufficient to identify by name, title, and location (and any changes to title and location) all individuals involved with any representations described in the Complaint, including without limitation representations regarding AFFO, financial results, and internal controls.

REQUEST NO. 15:

All written agreements between You and any other Defendant.

REQUEST NO. 16:

All written agreements between You and RCAP Holdings, LLC.

REQUEST NO. 17:

All settlement agreements involving You and Concerning or arising out of any of the factual allegations in the Complaint.

REQUEST NO. 18:

Documents and communications supporting or Concerning any affirmative defense(s) asserted by You in Your Answer and any other defenses or factual arguments You have pleaded in this case or intend to plead.

DATED:  October 24, 2016

COPPERSMITH BROCKELMAN PLC

By: _s/ Keith Beauchamp_____
Keith Beauchamp
Shelley Tolman

Jonathan Sherman (admitted *pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.

1

2     Washington, DC 20015
      T:  202.237.2727
3     F:  202.237.6131
      jsherman@bsfllp.com
4
      Edward Normand (admitted *pro hac vice*)
5     Joseph Kroetsch (admitted *pro hac vice*)
      Nathan Holcomb (admitted *pro hac vice*)
6     BOIES, SCHILLER & FLEXNER LLP
      333 Main Street
7     Armonk, NY 10504
      T:  914.749.8200
8     F:  914.749.8300
      enormand@bsfllp.com
9     jkroetsch@bsfllp.com
      nholcomb@bsfllp.com
10
11
      Beko Reblitz-Richardson (admitted *pro hac vice*)
12    BOIES, SCHILLER & FLEXNER LLP
      1999 Harrison Street, Suite 900
13    Oakland, CA 94612
      T:  510.874.1000
14    F:  510.874.1460
      brichardson@bsfllp.com
15
16    *Attorneys for Plaintiffs*
17
18
19
20
21
22
23
24
25
26
27
28

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on October 24, 2016, I caused the foregoing to be served via

email on counsel for Defendants

4

5

/s/ Tonia Roby

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

# EXHIBIT 9

1  Keith Beauchamp (012434)
2  Shelley Tolman (030945)
   COPPERSMITH BROCKELMAN PLC
3  2800 North Central Avenue, Suite 1200
   Phoenix, AZ 85004
4  T: 602.381.5490
5  F: 602.224.6020
   kbeauchamp@cblawyers.com
6  stolman@cblawyers.com

7  Jonathan Sherman (admitted *pro hac vice*)
8  BOIES SCHILLER FLEXNER LLP
   5301 Wisconsin Avenue, N.W.
9  Washington, DC 20015
   T: 202.237.2727
10 F: 202.237.6131
11 jsherman@bsfllp.com

12 [Additional Counsel Listed on Signature Page]

13 *Attorneys for Plaintiffs*

14
              **UNITED STATES DISTRICT COURT**
15
                 **DISTRICT OF ARIZONA**
16

17 | Vanguard Specialized Funds, et al., | No. 15-CV-02157-PHX-ROS |
18 | | |
   | Plaintiffs, | **PLAINTIFFS' SECOND SET OF** |
19 | | **REQUESTS FOR PRODUCTION OF** |
   | v. | **DOCUMENTS TO DEFENDANTS** |
20 | | |
21 | VEREIT, Inc., et al., | |
22 | | |
   | Defendants. | |
23

24

25

26

27

28

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned counsel, request that Defendants American Realty Capital Properties, Inc. (n/k/a VEREIT, Inc.), ARC Properties Operating Partnership L.P. (n/k/a VEREIT Operating Partnership, L.P.), ARC Properties Advisors LLC, and AR Capital LLC ("Defendants") produce for inspection and copying the documents described herein that are in their possession, custody, or control, at the offices of Coppersmith Brockelman PLC LLP, 2800 North Central Avenue, Suite 1200, Phoenix, AZ 85004 and Boies Schiller & Flexner LLP 1999 Harrison Suite 900, Oakland, CA 94612, within thirty (30) days of the date hereof, or at such other time and place mutually agreed upon by the parties.

## DEFINITIONS

To the extent used herein, the words and phrases set forth below shall have the following meanings:

1.   "Andruskevich" means Thomas A. Andruskevich, a former ARCP Director.

2.   "AFFO" means funds for operations adjusted to exclude acquisition-related fees and expenses, amortization of above-marketplace assets and liabilities, amortization of deferred financing costs, straight-line rent, non-cash mark-to-market adjustments, amortization of restricted stock, non-cash compensation, and gains and losses.

3.   "ARC Advisors" means ARC Properties Advisors LLC.

4.   "ARC Properties" means ARC Properties Operating Partnership L.P.

5.   "ARCP" refers to American Realty Capital Properties, Inc., n/k/a Vereit, Inc., any of its officers, directors, employees, direct or indirect subsidiaries, and divisions or affiliates (foreign and domestic).

6.   "AR Capital" means AR Capital LLC.

7.   "Beeson" means Lisa E. Beeson, ARCP's former Chief Operating Officer ("COO") and President.

8.   "Block" means Brian S. Block, ARCP's former Chief Financial Officer ("CFO") and Executive Vice President.

2

9. "Board of Directors" or "Board" means ARCP's Board of Directors, the director committees thereof, and any special committees.

10. "Budko" means Peter M. Budko, ARCP's former Executive Vice President and Chief Investment Officer.

11. "Bowman" means Scott J. Bowman, a former ARCP Director.

12. "Communication" means any transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally or by document, telephone, telecopier, mail, fax, e-mail, voicemail, cellular phone text message, instant message, personal delivery, or by any other means, be they analog, electronic or otherwise.

13. "Complaint" means the complaint filed by Plaintiffs in the Arizona District Court on October 27, 2015.

14. "Concerning" means reflecting, relating to, referring to, describing, discussing, evidencing, addressing or constituting in any way.

15. "Directors" means Kahane, Michelson, Stanley, Rendell, Bowman, Andruskevich, Sealy and Frank.

16. "Document" has the same meaning and is equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes any writings, drawings, graphs, charts, photographs, sound recordings, images, and any other data or data compilations stored in any medium from which information can be obtained. A draft or non- identical copy is a separate document within the meaning of this term. Without limiting the aforementioned definitions, the term "documents" includes both hard copy documents and electronically stored information ("ESI"), including e-mail, instant messaging, shared network files, databases, any data on magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage devices) stored as either an "active" or backup file in its native format.

17. "DOJ" refers to the U.S. Department of Justice.

3

18.     "Financial results" means, but is not limited to, the following (whether audited or unaudited and whether final, interim, pro forma, complete or partial): Forms 10-K, 10-Q and 8-K, Registration Statements and Prospectuses, and internal consolidated and non-consolidated balance sheets, statements of earnings, additional paid in capital, retained earnings, source and application of funds, cash flow, projections, and notes that pertain to the applicable Defendant's past or present financial condition.

19.     "Frank" means Bruce D. Frank, a former ARCP Director.

20.     "Jones" means Brian D. Jones, ARCP's former COO.

21.     "Kahane" means William M. Kahane, a former ARCP Director.

22.     "Kay" means David S. Kay, ARCP's former President and former CEO.

23.     "Managers" means Schorsch, Kay, Block, Weil, Budko, Jones, McAlister and Beeson.

24.     "McAlister" means Lisa P. McAlister, ARCP's former Senior Vice President and CAO.

25.     "Meeting" or "meetings" means the contemporaneous presence, telephonic or electronic connection among natural persons, whether or not such presence was by chance or pre-arranged and whether or not the meeting was formal or informal or occurred in connection with some other activity.

26.     "Michelson" means Leslie D. Michelson, a former ARCP Director.

27.     "OPP" means ARCP's Multi-Year Outperformance Plan.

28.     "Policy" or "policies" means any rule, procedure, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly.

29.     "Rendell" means Edward G. Rendell, a former ARCP Director.

30.     "Restatement" means the restated financial results for fiscal year ("FY") 2012, FY 2013, 1Q14 and 2Q14 that ARCP filed with the SEC on March 2, 2015.

31.     "Sealy" means Scott P. Sealy, Sr., a former ARCP Director.

4

32.     "Schorsch" means Nicholas S. Schorsch, former CEO and Chairman of the Board for ARCP.

33.     "SEC" means the U.S. Securities and Exchange Commission.

34.     "Stanley" means William G. Stanley, a former ARCP Director.

35.     "Weil" means Edward M. Weil, ARCP's former President, Treasurer and Secretary.

36.     "You" or "your" means the persons or entities responding to these requests.

## INSTRUCTIONS

1.      Including. "Including" shall be construed to include the phrase "but not limited to."

2.      Tense. The use of a verb in any tense shall be construed to be in the tense necessary to bring within the scope of a request all responses that might otherwise be construed as outside its scope.

3.      In responding to these requests, you shall produce all responsive documents (including those stored electronically), which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

4.      Plaintiffs reserve their right to request inspection of the original documents, including those stored electronically, as they are kept in the usual course of business. If the original is not in your custody, then a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

5.      You are to produce each document requested herein in its entirety, without deletion or excision (except on privilege grounds), regardless of whether you consider the entire document to be relevant or responsive to the requests.

5

6.     If production of documents is withheld on privilege grounds, as to each such withheld document, state the following information:

    (a)    which privilege is claimed;

    (b)    who is asserting the privilege;

    (c)    a precise statement of the facts upon which said claim of privilege is based;

    (d)    the following information describing each purportedly privileged document:

        (i)    a brief description sufficient to identify its nature, *e.g*., agreement, letter, memorandum, type, etc.;

        (ii)    a brief description sufficient to identify its subject matter and purpose of the document;

        (iii)    the date it was prepared,

        (iv)    the date it bears;

        (v)    the date it was sent;

        (vi)    the date it was received;

        (vii)    the identity of the person preparing it;

        (viii)    the identity of the person sending it;

        (ix)    the identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies;

        (x)    a statement as to whom each identified person represented or purported to represent at all relevant times; and

        (xi)    all persons to whom its contents have been disclosed; and

    (e)    a precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

7.     If a portion of any document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.  Whenever a document is not produced in full or is produced

6

in redacted form, so indicate on the document, identifying those portions of the document which are not being produced.  For each document that is redacted, in addition to providing the redacted version of the document, the parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

        (a)     the Begin Production ID of the document;

        (b)     the End Production ID of the document;

        (c)     a description of why privilege is being asserted over the document; and

        (d)     which privilege is asserted.

8.     Privilege and redaction logs may be produced on a rolling basis.  The producing party shall provide the logs and supplements for each production within 30 days of each given production date.

9.     If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

        (a)     whether the document is missing or lost;

        (b)     whether it has been destroyed;

        (c)     whether the document has been transferred or delivered to another person and, if so, at whose request;

        (d)     whether the document has been otherwise disposed of; and

        (e)     a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10.     This is a continuing request for the production of documents.  If, after making your initial production, you obtain or become aware of any further documents responsive to these requests, you are required by Fed. R. Civ. P. 26(e) to produce such additional documents to Plaintiffs.

## **FORM OF PRODUCTION**

**A.**    **Production of Hard Copy Documents – Format**

7

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**B.    Production of ESI**

1.    Format:  ESI should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, source code, audio and video files, which should be produced in native format.  TIFFs should show any and all text and images which would be visible to the reader using the native software that created the document.  For example, TIFFs of e-mail messages should include the BCC line.  PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image.  If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

2.    Format – Native Files: If a document is produced in native, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already

identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e- mail that does not include content in those fields, even if all remaining content in the e-mail is identical.   Removal of near-duplicate documents and e-mail thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.      Technology Assisted Review: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.      Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.   The metadata produced should have the correct encoding to enable preservation of the documents' original language.

6.      Embedded Objects: The parties should meet and confer over the inclusion or exclusion of embedded files from the production.

7.      Compressed File Types: Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

8.      Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, including the production of text messages or similar

communications, the parties will meet and confer regarding methods of production.  Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

9.      Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

10.      Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

11.      Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

## RELEVANT TIME PERIOD

Unless otherwise specified, the relevant time period for these requests is from July 1, 2011, to the date of your response and every supplemental response (the "Relevant Time Period").  The Relevant Time Period covers documents concerning events and circumstances during such period, even though dated, prepared, generated, used, or received prior or subsequent to that period.

## DOCUMENTS REQUESTED

REQUEST NO. 19:

Documents and communications sufficient to describe and identify the formational history of:

    (a)      AR Capital;

    (b)      ARCP;

    (c)      ARC Properties;

    (d)      ARC Advisors; and

    (e)      RCS Capital, LLC aka RCAP Holdings LLC.

REQUEST NO. 20:

Documents and communications sufficient to describe and identify all companies or organizations affiliated with or related to AR Capital or ARC Advisors for which the following Defendants were an owner, officer, director, executive or member:

(a)     Schorsch; and

(b)     Block;

REQUEST NO. 21:

Documents and communications sufficient to describe and identify (for the company Defendants) your organizational structure, including any subsidiaries, related parties or affiliates, and the organizational structure of your senior management.

REQUEST NO. 22:

Documents and communications concerning the duties, responsibilities and services provided to ARCP by AR Capital and ARC Advisors.

REQUEST NO. 23:

Documents and communications concerning the duties, responsibilities and services AR Capital provided to ARC Advisors.

REQUEST NO. 24:

Documents and communications concerning:

(a)     ARCP's AFFO, including the materiality of AFFO;

(b)     ARCP's AFFO calculation and methodology, including the basis for and factors considered in ARCP's AFFO calculation and methodology;

(c)     ARCP's AFFO guidance, including the basis for and factors considered in ARCP's AFFO guidance;

(d)     ARCP's Restatement or correction of AFFO, including the events, acts and accounting improprieties giving rise to the Restatement and correction of AFFO;

(e)     ARCP's Restatement of financial results, including the events, acts and accounting improprieties giving rise to the Restatement of financial results;

1             (f)     internal controls over financial reporting, including ARCP's original

2                    assessments and subsequent re-assessment(s) of Management's Report on

3                    Internal Controls Over Financial Reporting, including the events, acts and

4                    lack of controls giving rise to the material weakness finding;

5             (g)    any transactions with any entity or person affiliated with or related to you or

6                    any of the Managers or Directors, including Defendants' acts and alleged

7                    acts of self- dealing;

8             (h)    any review, report, or analysis given to or received from any rating agency or

9                    investor concerning ARCP, ARC Properties, AR Capital, ARC Advisors, or

10                   the Managers or Directors; or

11             (i)     the OPP.

12   REQUEST NO. 25:

13        Documents and communications between you and the Managers or Directors

14  concerning the subject matters identified in Request No. 24(a)-(i).

15   REQUEST NO. 26:

16        Documents and communications between the Managers or Directors and persons in your (for

17  the company Defendants) public policy department, accounting department, finance department,

18  investment relations department, public relations department or analyst relations department or

19  members of the Audit Committee concerning the subject matters identified in Request No. 24(a)-

20  (i).

21   REQUEST NO. 27:

22        Scripts, audio or view recordings, e-mails and transcripts of communications between

23  any Manager or Director and any financial analyst or media representative concerning the subject

24  matters identified in Request No. 24(a)-(i).

25   REQUEST NO. 28:

26        Documents and communications concerning the formal or informal investigation, audit or

27  review concerning financial or accounting irregularities or errors at ARCP as described in the

28  October 29, 2014 Form 8-K filed by ARCP with the SEC.

REQUEST NO. 29:

Documents and communications concerning any formal or informal investigation, audit, review, or analysis concerning ARCP's financial results, accounting procedures, internal controls or the Restatement.

REQUEST NO. 30:

Documents and communications concerning the spreadsheet entitled "Q2 2014 AFFO recast" that Block e-mailed to McAlister on or about July 28, 2014.

REQUEST NO. 31:

Documents and communications concerning the price and market for ARCP securities, including the reasons for the declines in the prices of ARCP securities after October 29, 2014 and documents concerning the efficiency in the market for ARCP securities.

REQUEST NO. 32:

Documents which you have produced to the SEC, DOJ, or any other federal, state or regulatory agency or entity, in response to any investigation, formal or informal inquiry, or request for information related to ARCP's Restatement, AFFO, accounting manipulations, or OPP, including any third-party documents related to such investigations, and communications relating thereto, including, but not limited to, any subpoenas or *Wells* Notices received.

REQUEST NO. 33:

Documents and communications concerning any testimony or interview given to the SEC, DOJ, or any other federal, state or regulatory agency or entity, including, but not limited to, depositions transcripts or interview statements, in response to any investigation, formal or informal inquiry, or request for information related to ARCP's Restatement, AFFO, accounting manipulations, or OPP.

REQUEST NO. 34:

Documents and communications exchanged with or concerning:

      (a)      Grant Thornton;

      (b)      Ernst & Young LLP, relating to any Audit Committee investigations or the Restatement of ARCP's financial results; and

13

1              (c)     Deloitte LLP, relating to ARCP's restated financial

2                       results.

3  REQUEST NO. 35:

4          Documents or communications concerning ARCP's monthly and quarterly financial results,

5  including all draft and final versions thereof.

6  REQUEST NO. 36:

7          Documents and communications concerning ARCP's accounting policies, procedures,

8  controls and practices, as well as any actual or contemplated change thereto, including policies

9  related to AFFO.

10  REQUEST NO. 37:

11          Documents and communications, including any due diligence undertaken, concerning the

12  September 7, 2011 initial public offering for ARCP.

13  REQUEST NO. 38:

14          Documents and communications, including any due diligence undertaken, concerning the

15  following offerings:

16              (a)     the $300 million offering of 3.0% Convertible Senior Notes due August

17                       1, 2018, announced on July 23, 2013;

18              (b)     the reopening of the 2018 Notes announced on December 4, 2013;

19              (c)     the 3.75% Convertible Senior Notes due December 15, 2020, announced on

20                       December 4, 2013;

21              (d)     the January 2014 offering of 79.1 million shares of ARCP stock issued

22                       in connection with the ARCT IV merger;

23              (e)     the February 2014 offering of 520.8 million shares of ARCP stock issued in

24                       connection with the Cole merger;

25              (f)     the May 2014 offering of 138 million shares of ARCP stock, announced

26                       on May 21, 2014; and

27              (g)     the September 2014 registration of the $2.55 senior notes issued in February

28                       2014.

14

REQUEST NO. 39:

Documents and communications, including any due diligence undertaken, concerning the $2.55 billion offering of 2.0% Senior Notes due February 6, 2017, 3.0% Senior Notes due February 6, 2019 and 4.6% Senior Notes due February 6, 2024, including:

(a)     the number of offerees;

(b)     the relationship between the offerees;

(c)     the relationship between the offerees and ARCP; and

(d)     the identity of the offerees.

REQUEST NO. 40:

Documents and communications concerning all compensation that each Manager or Director received or was eligible to receive, including all components of that individual's compensation, including non-monetary compensation and stock option grants, improper award of compensation, and any changes in compensation and attempts to reduce or claw back compensation.

REQUEST NO. 41:

Documents and communications concerning the resignation, termination, demotion, removal from office or change in job title of any of your directors, officers or executives, and the assumption of their duties by any other person, including the reasons therefor.

REQUEST NO. 42:

Diaries, daybooks, calendars, appointment books, telephone logs, telephone bills (local, long distance and cellular), time sheets, expense reports, and visitor logs maintained by or for each of the Managers and Directors.

REQUEST NO. 43:

Documents prepared for, distributed at, utilized during, created in connection with, or concerning any meeting of ARCP's Board of Directors or of any committee of the Board of Directors, including, but not limited to, any minutes, agendas or notes of such meetings, as well as any written information received or utilized by any members of the ARCP Board of Directors in connection with their membership on the ARCP Board of Directors or any committee thereof,

1    including, but not limited to, board packages, presentation materials, minutes, agendas or notes of

2    such meetings and communications concerning same.

3    REQUEST NO. 44:

4          Documents and communications concerning the accounting improprieties and statements to

5    investors alleged to be false and misleading in the Complaint, including documents and

6    communications that support, contradict or undermine the statements made to investors alleged to

7    be false and misleading in the Complaint.

8    REQUEST NO. 46:

9          Documents concerning the location and preservation of documents relevant to this litigation.

10   REQUEST NO. 47:

11         Documents and communications concerning your document destruction policy and

12   document retention policies, including documents concerning any deviations or violations

13   thereto.

14   REQUEST NO. 48:

15         Documents concerning any insurance policies, indemnification agreements, hold harmless

16   agreements, or by-laws under which you may claim coverage to satisfy part or all of any possible

17   liabilities as a result of any of the claims asserted in this litigation.

18   DATED:  March 22, 2016

19

20                              COPPERSMITH BROCKELMAN PLC

21                              By:  s/ Keith Beauchamp
                                     Keith Beauchamp
22                                   Shelley Tolman

23                              Jonathan Sherman (admitted *pro hac vice*)
24                              BOIES SCHILLER FLEXNER LLP
                                5301 Wisconsin Avenue, N.W.
25                              Washington, DC 20015
                                T:  202.237.2727
26                              F:  202.237.6131
                                jsherman@bsfllp.com
27

28

                                          16

Edward Normand (admitted *pro hac vice*)
Joseph Kroetsch (admitted *pro hac vice*)
Nathan Holcomb (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
T:  914.749.8200
F:  914.749.8300
enormand@bsfllp.com
jkroetsch@bsfllp.com
nholcomb@bsfllp.com

Beko Reblitz-Richardson (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
T:  510.874.1000
F:  510.874.1460
brichardson@bsfllp.com

*Attorneys for Plaintiffs*

# TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001   (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| SENTTIME | HH:MM | The time the e-mail or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both e-mail and e-files and separated by semicolons. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox<br>/Network Share/Accounting/…<br>/TJohnsonPC/Users/TJohnson/My Documents/… | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both e-mail and e- files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item. An e-mail address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail address of the recipient(s) of an e-mail/calendar item.  An e-mail address should always be provided for every e-mail if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail/calendar item. An e- mail address should always be provided for every e-mail if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| SUBJECT | | The subject line of the e-mail/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc | An indication of the e-mail system message type. |
| IMPORTANCE | Normal, Low, High | E-mail Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| LANGUAGE | Korean; Japanese; English | Specifies all languages found in the document to the best of the processing software's ability. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| REDACTED | YES or Blank | If a document contains a redaction, this field will display "YES". |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC0001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC0001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

# EXHIBIT 10

Keith Beauchamp (012434)
Shelley Tolman (030945)
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
T: 602.381.5490
F: 602.224.6020
kbeauchamp@cblawyers.com
stolman@cblawyers.com

Jonathan Sherman (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
T: 202.237.2727
F: 202.237.6131
jsherman@bsfllp.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Vanguard Specialized Funds, et al., | No. CV 15-02157-PHX-JAS |
| Plaintiffs, | |
| v. | **PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** |
| VEREIT, Inc., et al., | |
| Defendants. | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their undersigned counsel, request that Defendants American Realty Capital Properties, Inc. (n/k/a VEREIT, Inc.), ARC Properties Operating Partnership L.P. (n/k/a VEREIT Operating Partnership, L.P.), ARC Properties Advisors LLC, and AR Capital LLC ("Defendants") produce for inspection and copying the documents described herein that are in their possession, custody, or control, at the offices of Coppersmith Brockelman PLC LLP, 2800 North Central Avenue, Suite 1200, Phoenix, AZ 85004 and Boies Schiller Flexner LLP, 1999 Harrison Suite 900, Oakland, CA 94612, within thirty (30) days of the date hereof, or at such other time and place mutually agreed upon by the parties.

## DEFINITIONS

To the extent used herein, the words and phrases set forth below shall have the following meanings:

1.      "ARCP" refers to American Realty Capital Properties, Inc., n/k/a Vereit, Inc., any of its officers, directors, employees, direct or indirect subsidiaries, and divisions or affiliates (foreign and domestic).

2.      "Communication" means any transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally or by document, telephone, telecopier, mail, fax, e-mail, voicemail, cellular phone text message, instant message, personal delivery, or by any other means, be they analog, electronic or otherwise.

3.      "Concerning" means reflecting, relating to, referring to, describing, discussing, evidencing, addressing or constituting in any way.

4.      "Cole" means any Cole-related entity, including without limitation Cole Credit Property Trust III, Inc., Cole Holdings Corporation, and Cole Real Estate Investments, Inc.

5.      "Cole Acquisition" means not only the final acquisition but also all ARCP offers and efforts by ARCP to acquire Cole, including without limitation as reflected in ARCP's March 19, 2013 offer letter to the Board of Directors of Cole Credit Property

2

1    Trust III, Inc., ARCP's March 27, 2013 offer letter to the Board of Directors of Cole

2    Credit Property Trust III, Inc., ARCP's April 2, 2013 offer letter to the Board of Directors

3    of Cole Credit Property Trust III, Inc., and ARCP's October 23, 2013 announcement of

4    the agreement to acquire Cole Real Estate Investments, Inc.

5         6.      "Defendants" means, for these purposes, the defendants in the above

6    captioned action.

7         7.      "Document" has the same meaning and is equal in scope to the usage of

8    the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A),

9    and includes any writings, drawings, graphs, charts, photographs, sound recordings, images,

10   and any other data or data compilations stored in any medium from which information

11   can be obtained.  A draft or non- identical copy is a separate document within the

12   meaning of this term.  Without limiting the aforementioned definitions, the term

13   "documents" includes both hard copy documents and electronically stored information

14   ("ESI"), including e-mail, instant messaging, shared network files, databases, any data on

15   magnetic or optical storage media (*e.g.*, servers, storage area networks, hard drives, backup

16   tapes, CDs, DVDs, thumb/flash drives, floppy disks, or any other type of portable storage

17   devices) stored as either an "active" or backup file in its native format.

18        8.      "McAlister" means Lisa P. McAlister, ARCP's former Senior Vice

19   President and CAO.

20        9.      "Plaintiffs" means, for these purposes, the plaintiffs in the above captioned

21   action.

22        10.     "You" or "your" means the person or entity responding to these requests,

23   including any of your employees, officers, directors, investment advisors, asset managers,

24   or any employee or agent acting on any of your behalf.

25                          **INSTRUCTIONS**

26        1.      Including.  "Including" shall be construed to include the phrase "but not

27   limited to."

28

3

2.      Tense.  The use of a verb in any tense shall be construed to be in the tense necessary to bring within the scope of a request all responses that might otherwise be construed as outside its scope.

3.      In responding to these requests, you shall produce all responsive documents (including those stored electronically), which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives.  A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

4.      Plaintiffs reserve their right to request inspection of the original documents, including those stored electronically, as they are kept in the usual course of business.  If the original is not in your custody, then a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

5.      You are to produce each document requested herein in its entirety, without deletion or excision (except on privilege grounds), regardless of whether you consider the entire document to be relevant or responsive to the requests.

6.      If production of documents is withheld on privilege grounds, as to each such withheld document, state the following information:

        (a)      which privilege is claimed;

        (b)      who is asserting the privilege;

        (c)      a precise statement of the facts upon which said claim of privilege is based;

        (d)      the following information describing each purportedly privileged document:

1           (i)     a brief description sufficient to identify its nature, *e.g.*,

2                     agreement, letter, memorandum, type, etc.;

3           (ii)    a brief description sufficient to identify its subject matter and

4                     purpose of the document;

5           (iii)   the date it was prepared;

6           (iv)   the date it bears;

7           (v)    the date it was sent;

8           (vi)   the date it was received;

9           (vii)  the identity of the person preparing it;

10          (viii) the identity of the person sending it;

11          (ix)   the identity of each person to whom it was sent or was to

12                    have been sent, including all addresses and all recipients of

13                    copies;

14          (x)    a statement as to whom each identified person

15                    represented  or purported to represent at all relevant times;

16                    and

17          (xi)   all persons to whom its contents have been disclosed; and

18      (e)   a precise description of the place where each copy of that document

19              is kept, including the title or description of the file in which said

20              document may be found and the location of such file.

21      7.    If a portion of any document responsive to these requests is withheld under

22  claim of privilege, any non-privileged portion of such document must be produced with

23  the portion claimed to be privileged redacted.  Whenever a document is not produced in

24  full or is produced in redacted form, so indicate on the document, identifying those

25  portions of the document which are not being produced.  For each document that is

26  redacted, in addition to providing the redacted version of the document, the parties agree

27  to furnish logs which comply with the legal requirements under federal law, but at a

28  minimum will include the following information:

(a)     the Begin Production ID of the document;

(b)     the End Production ID of the document;

(c)     a description of why privilege is being asserted over the document; and

(d)     which privilege is asserted.

8.     Privilege and redaction logs may be produced on a rolling basis. The producing party shall provide the logs and supplements for each production within 30 days of each given production date.

9.     If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

(a)     whether the document is missing or lost;

(b)     whether it has been destroyed;

(c)     whether the document has been transferred or delivered to another person and, if so, at whose request;

(d)     whether the document has been otherwise disposed of; and

(e)     a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10.     This is a continuing request for the production of documents. If, after making your initial production, you obtain or become aware of any further documents responsive to these requests, you are required by Fed. R. Civ. P. 26(e) to produce such additional documents to Plaintiffs.

## FORM OF PRODUCTION

### A.     Production of Hard Copy Documents – Format

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be

logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality over process speed.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**B.     Production of ESI**

1.      Format:  ESI should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, source code, audio and video files, which should be produced in native format.  TIFFs should show any and all text and images which would be visible to the reader using the native software that created the document.  For example, TIFFs of e-mail messages should include the BCC line.  PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image.  If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

2.      Format – Native Files: If a document is produced in native, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.     De-Duplication: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e- mail that does not include content in those fields, even if all remaining content in the e-mail is identical.  Removal of near-duplicate documents and e-mail thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.     Technology Assisted Review: Predictive coding/technology-assisted-review shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.     Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.   The metadata produced should have the correct encoding to enable preservation of the documents' original language.

6.     Embedded Objects: The parties should meet and confer over the inclusion or exclusion of embedded files from the production.

7.     Compressed File Types: Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

8.      Structured Data: To the extent a response to discovery requires production of electronic information stored in a database, including the production of text messages or similar communications, the parties will meet and confer regarding methods of production.   Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

9.      Exception Report: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

10.      Encryption: To maximize the security of information in transit, any media on which documents are produced may be encrypted.   In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

11.      Redactions: If documents that the parties have agreed to produce in native format need to be redacted, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

**RELEVANT TIME PERIOD**

Unless otherwise specified, the relevant time period for these requests is from July 1, 2011 to the date of your response and every supplemental response (the "Relevant Time Period").   The Relevant Time Period covers documents concerning events and circumstances during such period, even though dated, prepared, generated, used, or received prior or subsequent to that period.

**DOCUMENTS REQUESTED**

REQUEST NO. 49:

Documents concerning Your role and activities in connection with the Cole Acquisition.

REQUEST NO. 50:

1    Documents concerning the financial terms and conditions of the Cole Acquisition,

2  including Your understanding and views of the financial terms and conditions.

3  REQUEST NO. 51:

4    Documents concerning ARCP's reasons for the Cole Acquisition, including Your

5  understanding and views of any reasons.

6  REQUEST NO. 52:

7    Documents concerning ARCP's financial status during the period of the Cole

8  Acquisition, including Your understanding and views of ARCP's financial status.

9  REQUEST NO. 53:

10    Documents concerning representations regarding ARCP's business and public

11  filings in connection with the Cole Acquisition, including Your understanding and views

12  of such representations.

13  REQUEST NO. 54:

14    Documents concerning the assets ARCP acquired in the Cole Acquisition,

15  including Your understanding and views of such assets.

16  REQUEST NO. 55:

17    Documents concerning ARCP's compliance with documents through which ARCP

18  acquired Cole, such as the Cole merger agreement, including Your understanding and

19  views of such compliance.

20  REQUEST NO. 56:

21    Documents concerning the potential results of the Cole Acquisition, including its

22  potential benefits to or potential impact on You, ARCP, or ARCP's shareholders and

23  Your understanding and views of such results.

24  REQUEST NO. 57:

25    Documents concerning the actual results of the Cole Acquisition, including its

26  benefits to or impact on You, ARCP, or ARCP's shareholders and Your understanding

27  and views of such results.

28  REQUEST NO. 58:

10

Documents concerning Your representations or statements regarding the Cole Acquisition.

REQUEST NO. 59:

Documents concerning any Cole analysis in connection with the Cole Acquisition, including views on the potential or actual impact of the Cole Acquisition.

REQUEST NO. 60:

Documents concerning Cole's rejection of offers by ARCP, including the announced April 5, 2013 rejection and evaluation by the Cole Special Committee.

REQUEST NO. 61:

Communications concerning the Cole Acquisition prior to March 19, 2013, including without limitation communications concerning the "interest" expressed by "ARCP's management" on "numerous occasions over the past two months" as referenced in ARCP's March 22, 2013 press release.

REQUEST NO. 62:

Your communications concerning the Cole Acquisition, including any communications with Cole.

REQUEST NO. 63:

Documents sufficient to identify Cole executives employed by any company named as a Defendant in this action.

REQUEST NO. 64:

Documents concerning whether, at any time after ARCP's acquisition of Cole, ARCP was undervalued or facing the likelihood of an increase in its share price.

REQUEST NO. 65:

Documents concerning ARCP's decision to use and its use of Cole's former offices in Arizona.

REQUEST NO. 66:

Documents concerning each Defendant's ability to pay punitive damages, including Documents sufficient to identify each Defendant's assets and liabilities.

11

REQUEST NO. 67:

Documents concerning any indemnification by ARCP of any other Defendant, including communications concerning any such indemnification.

REQUEST NO. 68:

Documents concerning potential and actual claims by McAlister in connection with any events alleged in the Complaint, including documents concerning the action captioned *Lisa Pavelka McAlister v. American Realty Capital Properties, Inc., et al.*, Index No. 162499/2014 (Sup. Ct. N.Y. Cnty.).

REQUEST NO. 69:

Documents concerning ARCP's potential or actual inclusion in any index, including for example ARCP's inclusion in the MSCI US REIT and Russell 2000 indexes and communications concerning those indexes.

REQUEST NO. 70:

Documents concerning any loss or damages calculation in connection with Plaintiffs' claims.

REQUEST NO. 71:

Documents You intend to rely upon at any trial or hearing in this matter.


DATED:  April 5, 2017

                              COPPERSMITH BROCKELMAN PLC

                              By: _s/ Keith Beauchamp_____
                                   Keith Beauchamp
                                   Shelley Tolman

                              Jonathan Sherman (admitted *pro hac vice*)
                              BOIES SCHILLER FLEXNER LLP
                              5301 Wisconsin Avenue, N.W.
                              Washington, DC 20015
                              T:  202.237.2727
                              F:  202.237.6131
                              jsherman@bsfllp.com

12

Edward Normand (admitted *pro hac vice*)
Joseph Kroetsch (admitted *pro hac vice*)
Nathan Holcomb (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
T:  914.749.8200
F:  914.749.8300
enormand@bsfllp.com
jkroetsch@bsfllp.com
nholcomb@bsfllp.com

Beko Reblitz-Richardson (admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
T:  510.874.1000
F:  510.874.1460
brichardson@bsfllp.com

*Attorneys for Plaintiffs*

**TABLE 1: METADATA FIELDS**

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001   (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003   (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001   (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008   (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the e-mail or calendar entry was sent. |
| SENTTIME | HH:MM | The time the e-mail or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH | i.e. /JsmithPC/Users/J.smith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both e-mail and e-files and separated by semicolons. |
| FILEPATH-DUP | i.e. /J.Smith.pst/Inbox<br>/Network Share/Accounting/...<br>/TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both e-mail and e- files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail address of the author of an e-mail/calendar item. An e-mail address should always be provided. |
| TO | Joe Smith <jsmith@email.com; tjones@email.com | The display name and e-mail address of the recipient(s) of an e-mail/calendar item. An e-mail address should always be provided for every e-mail if a recipient existed. |
| CC | Joe Smith <jsmith@email.com; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail/calendar item. An e- mail address should always be provided for every e-mail if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail or calendar item. An e-mail address should always be provided for every e-mail if a blind copyee existed. |
| SUBJECT | | The subject line of the e-mail/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | E-mail Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| LANGUAGE | Korean; Japanese; English | Specifies all languages found in the document to the best of the processing software's ability. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| REDACTED | YES or Blank | If a document contains a redaction, this field will display 'YES'. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

# EXHIBIT 11

1   David B. Rosenbaum, 009819
    Maureen Beyers, 017134
2   Joseph N. Roth, 025725
    OSBORN MALEDON, P.A.
3   2929 North Central Avenue, Suite 2100
    Phoenix, AZ  85012-2794
4   (602) 640-9000
    drosenbaum@omlaw.com
5   mbeyers@omlaw.com
    jroth@omlaw.com
6
    Scott A. Edelman, *Pro Hac Vice*
7   Antonia M. Apps, *Pro Hac Vice*
    Jed M. Schwartz, *Pro Hac Vice*
8   Jonathan Ohring, *Pro Hac Vice*
    MILBANK, TWEED, HADLEY & McCLOY LLP
9   28 Liberty Street
    New York, NY  10005-1413
10  (212) 530-5000
    SEdelman@milbank.com
11  AApps@milbank.com
    JSchwartz@milbank.com
12  JOhring@milbank.com

13  Attorneys for Defendants VEREIT, Inc. and VEREIT Operating Partnership, L.P.

14              IN THE UNITED STATES DISTRICT COURT

15              FOR THE DISTRICT OF ARIZONA

16  Vanguard Specialized Funds, on behalf of        No.  CV15-02157-PHX-ROS
    its Vanguard REIT Index Fund series, et al.,
17
                    Plaintiffs,                      **INITIAL DISCLOSURES OF**
18                                                   **DEFENDANTS VEREIT, INC.**
                    vs.                              **AND VEREIT OPERATING**
19                                                   **PARTNERSHIP, L.P. PURSUANT**
    VEREIT, Inc., et al.,                            **TO FEDERAL RULE OF CIVIL**
20                                                   **PROCEDURE 26(A)(1)**
                    Defendants.
21

22          Defendants VEREIT, Inc. ("VEREIT") and VEREIT Operating Partnership, L.P.

23  (collectively, "Defendants"), by and through their undersigned attorneys, make the

24  following Initial Disclosures in the above-captioned action (the "Action") pursuant to

25  Rule 26(a)(1) of the Federal Rules of Civil Procedure.

26

27

28

## GENERAL LIMITATIONS AND EXCEPTIONS

These Initial Disclosures are made subject to the following limitations and qualifications:

1.      These Initial Disclosures are based upon a reasonable construction of the allegations in the complaint in the Action.  In making these Initial Disclosures, Defendants do not concede that the complaint states a claim.

2.      These Initial Disclosures are made upon a good faith review of information reasonably available to Defendants and are based solely upon the information that has been discovered by Defendants as of this time.  Defendants have exercised reasonable diligence in making these Initial Disclosures, but Defendants cannot and do not represent that they have identified every witness, document, or tangible thing within the scope of Rule 26(a)(1) or otherwise relevant to the Action.

3.      Defendants reserve the right to amend, clarify, correct, or supplement these Initial Disclosures, if necessary, based on continuing investigation and analysis of this matter.

4.      Defendants will withhold documents and information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity from disclosure.

5.      In making these Initial Disclosures, Defendants do not in any way waive, and expressly reserve, the right to object to any disclosure on the grounds of relevance, burden, privilege, immunity from disclosure, or other proper grounds.

6.      By referring to or producing documents as part of the initial disclosure process, Defendants make no representations or concessions regarding the relevancy or appropriateness of any particular information or document.

## I.      INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

At this time, Defendants believe that the following individuals are likely to have discoverable information that Defendants may use to support their defenses in the Action.  Defendants reserve the right to identify other such witnesses in the course of the

litigation and to call at trial additional witnesses, including whomever Plaintiffs may designate as a witness, representative witnesses appearing pursuant to Federal Rule of Civil Procedure 30(b)(6), rebuttal and impeachment witnesses, expert witnesses, and any additional witnesses that may become known as additional facts and issues are identified during the course of Defendants' ongoing factual investigation and discovery.  Further, by indicating the general subject matter of information that the identified individuals may possess, Defendants are in no way limiting the right to call any individual listed to testify concerning other subjects, or to make a determination that the testimony of one or more of these individuals will not be used.

| INDIVIDUALS & ADDRESSES | SUBJECT MATTER OF DISCOVERABLE INFORMATION |
| --- | --- |
| **Nicholas S. Schorsch**<br>c/o Audra J. Soloway<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 | Information relating to VEREIT's financial reporting, internal controls, and board procedures. |
| **David S. Kay**<br>c/o Jason Parish<br>Kirkland & Ellis LLP<br>655 Fifteenth Street NW, Suite 1200<br>Washington, DC 20005 | Information relating to VEREIT's financial reporting, internal controls, and board procedures. |
| **Brian Block**<br>c/o Michael C. Miller<br>Steptoe & Johnson, LLP<br>750 Seventh Avenue<br>Suite 1900<br>New York, NY 10019 | Information relating to VEREIT's financial reporting and internal controls. |
| **Lisa P. McAlister**<br>c/o Dwight P. Bostwick<br>Zuckerman Spaeder, LLP<br>1800 M Street, N.W., Ste. 1000<br>Washington, DC 20036-5802 | Information relating to VEREIT's financial reporting and internal controls. |

3

| | |
|---|---|
| **Lisa E. Beeson**<br>c/o Guy Petrillo<br>Petrillo Klein & Boxer LLP<br>655 Third Ave, 22nd Floor<br>New York, NY 10017 | Information relating to VEREIT's financial reporting and internal controls. |
| **Michael Reiter**<br>c/o Anthony S. Barkow<br>Jenner & Block LLP<br>919 Third Avenue<br>New York, NY 10022-3908 | Information relating to VEREIT's financial reporting and communications with investors and analysts. |
| **Gavin Brandon**<br>c/o Antonia M. Apps<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, NY 10005 | Information relating to VEREIT's financial reporting. |
| **Bonni Rosen**<br>c/o Antonia M. Apps<br>Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, NY 10005 | Information relating to VEREIT's investor relations. |
| **Adam Armiger**<br>[Contact information unknown] | Information relating to VEREIT's financial reporting. |
| **Ryan Steel**<br>c/o Daniel Gitner<br>Lankler Siffert Wohl, LLP<br>500 Fifth Avenue<br>New York, NY 10110 | Information relating to VEREIT's financial reporting. |
| **Matthew Peel**<br>c/o Dale A. Danneman<br>Lewis Roca Rothgerber Christie LLP<br>201 East Washington Street, Suite 1200<br>Phoenix, Arizona 85004 | Information relating to VEREIT's financial reporting. |
| **Casey Wilson**<br>c/o Glen McGorty<br>Crowell & Moring, LLP<br>590 Madison Avenue, 20th Floor<br>New York, NY 10022 | Information relating to VEREIT's financial reporting. |

4

| | |
|---|---|
| **Taylor Leonard**<br>c/o Joshua Goldberg<br>Patterson Belknap Webb & Tyler LLP<br>1133 Avenue of the Americas<br>New York, NY 10036 | Information relating to VEREIT's financial reporting. |
| **Susan Manning**<br>c/o Reid M. Figel<br>Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC<br>1615 M Street, N.W., Suite 400<br>Washington, DC 20036 | Information relating to VEREIT's financial reporting. |
| **Sathana Semonsky**<br>c/o Reid M. Figel<br>Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC<br>1615 M Street, N.W., Suite 400<br>Washington, DC 20036 | Information relating to VEREIT's financial reporting. |
| **Rich LaFleur**<br>c/o Bruce Braun<br>Sidley Austin, LLP<br>One South Dearborn<br>Chicago, IL 60603 | Information relating to VEREIT's financial reporting. |
| **Michael Pramberger**<br>c/o Bruce Braun<br>Sidley Austin, LLP<br>One South Dearborn<br>Chicago, IL 60603 | Information relating to VEREIT's financial reporting. |
| **Nishit Mehta**<br>c/o Bruce Braun<br>Sidley Austin, LLP<br>One South Dearborn<br>Chicago, IL 60603 | Information relating to VEREIT's financial reporting. |
| **Jessica Estrada**<br>c/o Bruce Braun<br>Sidley Austin, LLP<br>One South Dearborn<br>Chicago, IL 60603 | Information relating to VEREIT's financial reporting. |

5

| **Zach Smith**<br>c/o Bruce Braun<br>Sidley Austin, LLP<br>One South Dearborn<br>Chicago, IL 60603 | Information relating to VEREIT's financial reporting. |
|---|---|
| **Additional Grant Thornton individuals involved in VEREIT's financial reporting.**<br>c/o Bruce Braun<br>Sidley Austin, LLP<br>One South Dearborn<br>Chicago, IL 60603 | Information relating to VEREIT's financial reporting. |

## II.    DESCRIPTION AND LOCATION OF RELEVANT DOCUMENTS

Until in or around January 2014, VEREIT, formerly known as American Realty Capital Properties, Inc., was externally managed by ARC Properties Advisors, LLC, a subsidiary of AR Capital, LLC.  As such, Defendants have limited access to documents and other books and records prior to that time.  Subject to that limitation, Defendants provide the following general descriptions of categories of documents in their possession, custody, or control that they may use to support their defenses in the Action. Such documents include:

- Documents concerning Defendants' financial statements during the Relevant Period (as defined in the Complaint, ECF No. 1);
- Documents concerning Defendants' SEC filings during the Relevant Period;
- Documents concerning press releases, earnings calls, and investor presentations during the Relevant Period;
- Documents concerning calculation of AFFO;
- Documents concerning AFFO guidance;
- Documents concerning equity awards; and
- Documents concerning related-party transactions.

The foregoing documents are primarily located at, or in the case of electronic documents are accessible from, Defendants' offices or electronic servers.

6

1

**III.    CALCULATION OF DAMAGES**

2

At this time, Defendants are not asserting any claim for damages against

3

Plaintiffs but reserve the right to seek fees and costs.  Defendants also reserve the right

4

to assert cross-claims and/or seek damages from other defendants or non-parties as the

5

facts develop and the case proceeds.

6

**IV.    INSURANCE POLICIES**

7

Defendants will produce under separate cover materials, if any, required by Rule

8

26(a)(1)(A)(iv).

9

**V.    AMENDMENT AND SUPPLEMENTATION**

10

Defendants reserve the right to amend, correct, or supplement these initial

11

disclosures pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.  The above

12

disclosures are without prejudice to Defendants' right to identify additional witnesses or

13

to produce evidence at trial regarding any subsequently discovered documents or

14

evidence.

15

DATED this 9th day of November, 2016.

16

OSBORN MALEDON, P.A.

17

By:/s/David B. Rosenbaum
David B. Rosenbaum, 009819

18

Maureen Beyers, 017134
Joseph N. Roth, 025725

19

2929 N. Central Avenue, Suite 2100

20

Phoenix, AZ  85012-2794

21

Scott A. Edelman (*Pro Hac Vice*)
Antonia M. Apps (*Pro Hac Vice*)

22

Jed M. Schwartz (*Pro Hac Vice*)
Jonathan Ohring (*Pro Hac Vice*)

23

MILBANK, TWEED, HADLEY &
   McCLOY LLP

24

28 Liberty Street
New York, NY  10005-1413

25

Attorneys for Defendants VEREIT,

26

Inc. and VEREIT Operating
Partnership, L.P.

27

28

7

Copy of the foregoing served via
e-mail this 9th day of November, 2016,
to:

Keith Beauchamp
Shelley Tolman
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ  85004
kbeauchamp@cblawyers.com
stolman@cblawyers.com

Jonathan Sherman (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
jsherman@bsfllp.com

Edward Normand (*Pro Hac Vice*)
Joseph Kroetsch (*Pro Hac Vice*)
Nathan Holcomb (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
enormand@bsfllp.com
jkroetsch@bsfllp.com
nholcomb@bsfllp.com

Beko Reblitz-Richardson (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
brichardson@bsfllp.com

*Attorneys for Plaintiffs*

Theodore V. Wells Jr. (*Pro Hac Vice*)
Lorin L. Reisner (*Pro Hac Vice*)
Audra J. Soloway (*Pro Hac Vice*)
Justin D. Lerer (*Pro Hac Vice*)
Joshua D. Kaye (*Pro Hac Vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
twells@paulweiss.com
lreisner@paulweiss.com
asoloway@paulweiss.com
jlerer@paulweiss.com
jkaye@paulweiss.com

*Attorneys for Defendant Nicholas S. Schorsch*


Michael C. Miller (*Pro Hac Vice*)
Michael G. Scavelli (*Pro Hac Vice*)
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
mmiller@steptoe.com
mscavelli@steptoe.com

Aaron J. Lockwood
STEPTOE & JOHNSON LLP
201 E. Washington Street, Suite 1600
Phoenix, AZ 85004
alockwood@steptoe.com

Lara E. Romansic (*Pro Hac Vice*)
Molly Bruder Fox (*Pro Hac Vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
lromansic@steptoe.com
mbfox@steptoe.com

*Attorneys for Defendant Brian S. Block*

Reid M. Figel (*Pro Hac Vice*)
Rebecca A. Beynon (*Pro Hac Vice*)
Andrew E. Goldsmith (*Pro Hac Vice*)
Bradley E. Oppenheimer (*Pro Hac Vice*)
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
rfigel@khhte.com
rbeynon@khhte.com
agoldsmith@khhte.com
boppenheimer@khhte.com

*Attorneys for Defendants AR Capital LLC and ARC Properties Advisors LLC*

Guy Petrillo (*Pro Hac Vice*)
PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, New York 10017
gpetrillo@pkbllp.com

*Attorneys for Defendant Lisa Beeson*

James P. Gillespie (*Pro Hac Vice*)
Jason R. Parish (*Pro Hac Vice*)
Elizabeth Mueller (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Suite 1200
Washington, DC 20005
James.gillespie@kirkland.com
jparish@kirkland.com

Mark J. DePasquale
MARK J. DEPASQUALE, P.C.
3300 N. Central Avenue, Suite 2070
Phoenix, AZ 85012
mjd@markdepasquale.com

*Attorneys for Defendant David Kay*

10

Dwight P. Bostwick (*Pro Hac Vice*)
Adam L. Fotiades (*Pro Hac Vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
dbostwick@zuckerman.com
afotiades@zuckerman.com

*Attorneys for Defendant Lisa P. McAlister*


/s/David S. Marcou

11

# EXHIBIT 12

# MILBANK, TWEED, HADLEY & MᶜCLOY LLP

**28 LIBERTY STREET**
**NEW YORK, NY 10005**

_____

212-530-5000

FAX: 212-530-5219

Antonia M. Apps
Partner
DIRECT DIAL NUMBER
212-530-5357
E-MAIL: AApps@milbank.com

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

April 21, 2017

<u>**VIA EMAIL**</u>

Mr. Beko O. Reblitz-Richardson, Esq.
Boies, Schiller & Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

      Re:     *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
              <u>No. 2:15-cv-02157-ROS</u>

Dear Mr. Reblitz-Richardson:

        We write on behalf of Defendants VEREIT, Inc. and VEREIT Operating Partnership, L.P. (collectively, the "<u>ARCP Defendants</u>") in response to your April 14, 2017 letter, and to address some open items from your March 2, 2017 and March 20, 2017 letters. We welcome discussion of any of the proposals or positions set forth below during our telephonic meet-and-confer next Thursday, April 27.

        <u>Custodians</u>

        In your April 14, 2017 letter, you ask whether the ARCP Defendants will agree to include William Gribbin and Gavin Brandon as custodians. As you acknowledged in your March 2, 2017 letter, we already informed you that the ARCP Defendants would include Mr. Gribbin as a custodian during our February 21, 2017 telephonic meet-and-confer. We expect to make a production of his documents next week.

        With respect to Mr. Brandon, adding him as a custodian would result in 13,735 ***new*** "hits" based on the search terms applied to existing custodians, even after de-duplication for

Mr. Beko O. Reblitz-Richardson, Esq.
April 21, 2017
Page 2

documents previously reviewed.  Many, if not most, of these documents will be irrelevant and reviewing them would be disproportionate to the needs of the case because from the time that Mr. Brandon joined ARCP upon the closing of the Cole merger through approximately October 28, 2014, Mr. Brandon held positions within the ***Private Capital Markets segment for which Cole Capital was the sponsor***.[1]  That segment was not the subject of any changes to financial statements or operations identified in the March 2, 2015 restatement, and is not the subject of the allegations in the Complaint.  Indeed, the ARCP Defendants conducted a review of a sample set of these documents, which confirmed that they are irrelevant and that further review would be disproportionate to the needs of the case.

<u>Plaintiffs' Proposed Searches</u>

In your April 14, 2017 letter, you ask whether the ARCP Defendants will provide hit counts based on the search terms proposed by Plaintiffs in Exhibits A and B to your March 2, 2017 letter.  Please find those hit counts in the table set forth below.  The hit counts for each search term are inclusive of document families, and exclude documents previously produced or withheld as privileged in connection with productions to regulators or productions in the SDNY actions (and accordingly, this action).  Exhibit A searches also exclude all documents reviewed in connection with the SDNY actions.[2]  Each search was run across all previously-agreed custodians (including Mr. Gribbin), for the time period February 13, 2012 through March 31, 2015, except where otherwise requested in your March 2, 2017 letter.

Running all of the search terms in Exhibits A and B together would result in 612,664 ***additional*** unique hits.  Review of these documents would be unduly burdensome and disproportionate to the needs of the case, particularly in light of the more than 2,378,000 pages of documents already produced.  Indeed, the ARCP Defendants have already reviewed documents responsive to variations of many of these searches.  In an effort to reach a compromise, however, the ARCP Defendants would be willing to perform certain of these proposed additional searches if Plaintiffs agree that these searches would fully satisfy their requests for additional searches.  Set forth in the far-right column of the table is the ARCP Defendants' position with respect to each of Plaintiffs' proposed searches.  Green cells in the table indicate that the ARCP Defendants are willing to adopt a version of Plaintiffs' proposed search subject to Plaintiffs' agreement that the ARCP Defendants' proposed compromise is

---

[1] From the time of the Cole merger through approximately September 12, 2014, Mr. Brandon was Senior Vice President and Principal Accounting Officer of ARCP's Private Capital Markets segment, the sponsor of which was Cole Capital, and from approximately September 12, 2014 through approximately October 28, 2014, he was Chief Financial Officer and Treasurer, Managed Office and Industrial REITs, Private Capital Markets.  On October 28, 2014, he was appointed Chief Accounting Officer of ARCP.  *See* ARCP, Current Report (Form 8-K) (Oct. 29, 2014).

[2] Accordingly, a document that was previously reviewed in the SDNY actions and marked non-responsive would be excluded from an Exhibit A search, but not excluded from an Exhibit B search.  This differentiation is appropriate because the Exhibit B searches target documents that would not be relevant to the SDNY actions, and may have been marked non-responsive in prior review.

Mr. Beko O. Reblitz-Richardson, Esq.
April 21, 2017
Page 3

acceptable.  Orange cells indicate that the ARCP Defendants have already reviewed documents responsive to a variation of Plaintiffs' proposed search.

    To be clear, the ARCP Defendants are prepared to conduct the identified searches only on the condition that Plaintiffs do not continue to seek additional searches from the ARCP Defendants.  To that end, your statement in your April 14, 2017 letter that Plaintiffs believe that unidentified "additional search terms" are necessary to account for code names for acquisitions[3] and to identify documents responsive to Plaintiffs' third set of document requests is not productive.  The prospect of a never-ending cycle of requested search terms is unmanageable.  If Plaintiffs have additional proposed searches, please identify them in advance of our meet-and-confer next week so that we can evaluate them in context and so that we can assess the burden of conducting all of Plaintiffs' proposed searches.  In any event, the need for additional search terms to account for code names for acquisitions and to identify documents responsive to Plaintiffs' third set of document requests is unclear, given that the subject matter of these additional search terms would primarily be the Cole merger, and those search terms would overlap with the search terms Plaintiffs have already proposed relating to Cole and would result in irrelevant false hits.

**Exhibit A Searches:**

| | **Search String** | **Document "Hits"** | **ARCP Defendants' Position** |
|---|---|---|---|
| 1 | AFFO or "adjusted funds from operations" or "adj! funds" | 52,428 | ARCP previously searched the terms AFFO and "adjusted funds from operations" across a subset of custodians most likely to have relevant documents, as identified in our December 2, 2016 letter.[4]  The ARCP Defendants will not run the additional search term "adj! funds" or use additional custodians. |
| 2 | "non-controlling interest!" or "noncontrolling interest!" or NCI or NCIs | 35,255 | ARCP previously searched these terms across a subset of custodians most likely to have relevant documents, as identified in our December 2, 2016 letter.[5]  The ARCP |

---

[3] Your April 14, 2017 letter requested a list of code names used for ARCP's acquisitions.  This information is readily available in the documents that have been produced to Plaintiffs.  *See, e.g.*, ARCP_VANGUARD_00422505 (identifying Project Poker and Project Quarry); ARCP_VANGUARD_01407352 (identifying Project Carbon).

[4] This search was initially run through October 29, 2014.  The ARCP Defendants later extended this search through March 31, 2015 for the custodians Monica Alvarez, Thomas Andruskevich, Adam Armiger, Lisa Beeson, Alysia Cherry, Roman Eskue, Bill Gribbin, David Kay, Patrick Kelley, Ali Kozlica, Taylor Leonard, Lisa McAlister, Matthew Peel, Michael Reiter, Brandon Rudd, Kevin Siko, William Stanley, Ryan Steel, and Casey Wilson (the "Extension Custodians").

[5] This search was initially run through October 29, 2014.  The ARCP Defendants later extended the search term NCI, and the modified search string ("Non-controlling interest!" or "noncontrolling interests" or NCIs) w/10 (2014 or 2013 or 2012 or 2011 or previous!) through March 31, 2015 for the Extension Custodians.

Mr. Beko O. Reblitz-Richardson, Esq.
April 21, 2017
Page 4

| | | | |
|---|---|---|---|
| | | | Defendants will not run these terms over additional custodians. |
| 3 | fraud! or conceal! or fals! or lie or unlawful or unethical or erroneous or manipulate! or decept! or mistake! or wrong or improp! or disaster or terrible or "red flag" or incorrect or violat! or misclassif! or overstat! or understat! or non-compliant or inappropriate | 220,860 | These terms are "Accounting Adjectives" as defined in our December 2, 2016 letter.  These terms were previously searched in proximity to fourteen other search terms.  The ARCP Defendants will not perform the broader search requested by Plaintiffs. |
| 4 | "net loss" w/15 NAREIT | 0 | This search yields zero additional hits. |
| 5 | restat! | 58,523 | The ARCP Defendants will not perform this additional search. |
| 6 | previously w/2 issued w/3 financial! | 5,187 | The ARCP Defendants would be willing to perform this search. |
| 7 | "Audit Committee" | 26,372 | The ARCP Defendants have produced all communications between the Audit Committee and certain key custodians, as identified in our December 2, 2016 letter.  The ARCP Defendants will not perform the additional search requested by Plaintiffs. |
| 8 | Ernst w/3 Young | 23,862 | This search term seeks information subject to the attorney work product doctrine and other applicable privilege or protection.  The ARCP Defendants will not perform this additional search. |
| 9 | "outperformance plan" or "out-performance plan" or OPP | 40,257 | The ARCP Defendants would be willing to perform this search as limited to the relevant months of October 2013 and May 2014.[6] |
| 10 | exec! w/3 (bonus! or comp!) | 47,759 | The ARCP Defendants will not perform this additional search. |
| 11 | equity w/3 incentive! | 7,398 | The ARCP Defendants would be willing to perform this search. |
| 12 | internal w/3 control! | 27,161 | The ARCP Defendants will not perform this additional search. |

---

[6] ARCP's Multi-Year Outperformance Plan receives perfunctory mention in a large number of SEC filings and the many drafts of those filings.  Additionally, the abbreviation "OPP" brings in thousands of false hits for other abbreviations like "Growth Opp." and real estate listings including property in the city of Opp, Alabama.  The ARCP Defendants would therefore more appropriately target the search by limiting it to the months of ARCP's board approval of the Multi-Year Outperformance Plan and the subsequent shareholder vote.

Mr. Beko O. Reblitz-Richardson, Esq.
April 21, 2017
Page 5

| 13 | material w/3 weakness! | 6,643 | The ARCP Defendants will not perform this additional search. |
|----|----|----|----|
| 14 | ("previously issued financial!" or "Audit Committee") AND ((grant w/3 thornton) or GT or (ernst w/3 young) or "e&y" or "ey" or deloitte or "!@us.gt" or "!ey.com") | 12,625 | The ARCP Defendants have previously searched communications with Grant Thornton, as identified in our December 2, 2016 letter. The ARCP Defendants will not perform the additional search requested by Plaintiffs. |
| 15 | "investor day" or "REIT forum" | 7,860 | The ARCP Defendants previously reviewed these terms for the relevant period of September 1, 2014 through September 24, 2014 for those custodians most likely to have relevant documents in connection with the SDNY "Direct Actions." The ARCP Defendants will produce to Plaintiffs a copy of the corresponding production. |
| 16 | "audit opinion" | 805 | The ARCP Defendants would be willing to perform this search. |
| 17 | whistleblower or "code of conduct" | 4,383 | The ARCP Defendants would be willing to perform this search. |
| | **EXHIBIT A TOTAL** | 342,877 | |

**Exhibit B Searches:**

| | Search String | Document "Hits" | ARCP Defendants' Position |
|----|----|----|----|
| 1 | Cole* [through February 7, 2014] | 55,927 | The ARCP Defendants will not perform this additional search. |
| 2 | Arizona or AZ or Phoenix or Scottsdale or Camelback [through February 7, 2014] | 28,342 | The ARCP Defendants will not perform this additional search. |
| 3(a) | (Arizona or AZ or Phoenix or Scottsdale or Camelback) and (10-Q or 10Q or 10-K or 10K "financial statement*" or SOX) [through October 29, 2014] | 32,094 | The ARCP Defendants will not perform this additional search. |
| 3(b) | (Arizona or AZ or Phoenix or Scottsdale or Camelback) and ("securities & exchange" or "securities and exchange" or SEC) [through October 29, 2014] | 77,510 | The ARCP Defendants will not perform this additional search. |
| 3(c) | (Arizona or AZ or Phoenix or Scottsdale or Camelback) and ("financial results" or "quarterly results") [through October 29, 2014] | 12,296 | The ARCP Defendants will not perform this additional search. |

Mr. Beko O. Reblitz-Richardson, Esq.
April 21, 2017
Page 6

| | | | |
|---|---|---|---|
| 3(d) | (Arizona or AZ or Phoenix or Scottsdale or Camelback) and (accountant* or accounting or audit* or analyst* or investor*) [through October 29, 2014] | 250,160 | The ARCP Defendants will not perform this additional search. |
| 3(e) | (Arizona or AZ or Phoenix or Scottsdale or Camelback) and (Schorsch or (David w/2 Kay) or (Brian w/2 Block) or (Lisa w/2 McAlister) or (Lisa w/2 Beeson)) [through October 29, 2014] | 191,070 | The ARCP Defendants will not perform this additional search. |
| 4 | Arizona or AZ or Phoenix or Scottsdale or Camelback [in calendars or schedules] | 9,931 | The ARCP Defendants will not perform this additional search. |
| 5 | VFTC* | 11 | The ARCP Defendants would be willing to perform this search. |
| 6 | Vanguard and (ARCP* or "American Realty Capital" or "ARC Properties") | 24,379 | The ARCP Defendants would be willing to search "Vanguard" within the to/from/cc/bcc fields of emails. |
| | **EXHIBIT B TOTAL** | **408,055** | |

<u>Document Transfer</u>

        With respect to your request for information relating to the ARC Defendants'
transfer of documents to the ARCP Defendants, we have conducted additional inquiries but are
not yet in a position to fully respond to your request.  We can discuss a date by which we expect
to complete our review during our meet-and-confer next week.

                                Sincerely,

                                *Antonia M. Apps* /jo

                                Antonia M. Apps

cc:     Rebecca Beynon (*via email*)

# EXHIBIT 13

# MILBANK, TWEED, HADLEY & McCLOY LLP

**28 LIBERTY STREET**
**NEW YORK, NY 10005**
_____

212-530-5000

FAX: 212-530-5219

Jonathan Ohring
DIRECT DIAL NUMBER
212-530-5147
E-MAIL: JOhring@milbank.com

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

January 9, 2018

**VIA EMAIL**

Mr. Beko O. Reblitz-Richardson, Esq.
Boies, Schiller & Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

> Re:   *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
>        No. 2:15-cv-02157-ROS

Dear Mr. Reblitz-Richardson:

      We write on behalf of Defendants VEREIT, Inc. and VEREIT Operating Partnership, L.P. (collectively, the "VEREIT Defendants") as a follow-up to our January 3, 2018 letter to address additional issues raised in your recent letters and in our telephonic meet-and-confers held on December 19, 2017, and December 21, 2017.

AR Capital Email Archiving System

      Your January 5, 2017 letter baselessly asserts that the VEREIT Defendants "withheld" information regarding AR Capital's email archiving system. The VEREIT Defendants did not withhold anything. As explained in our recent letters and during the December 19, 2017 meet-and-confer, the VEREIT Defendants engaged in a thorough investigation, including interviews of various individuals, some of whom were not in our control, in order to better understand the email archiving system and the transfer of documents following commencement of litigation. The VEREIT Defendants were under no obligation to provide Plaintiffs with real-time updates regarding their efforts to collect potentially responsive

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 2

documents, particularly given that documents are being produced well before the depositions of any individuals with respect to whom these productions relate.

We believe that your remaining questions regarding AR Capital's email archiving system are best directed to the ARC Defendants.

Instant & Text Messages

Your question regarding the ARC Defendants' production of instant messages and text messages is best directed to the ARC Defendants.

Plaintiffs' Proposed Additional Search Terms

Your December 20 letter included a revised set of proposed additional search terms that "superseded" Plaintiffs' prior proposals. You asked us to provide hit counts for those search terms (i) across all custodial documents (including families), and (ii) separately for just custodial emails, instant messages, and text messages (including families), subject to any limitations set forth in your proposal. Please find those hit counts in the table set forth below.[1]

As indicated below, running all of the search terms in Appendix A to your letter would result in 219,627 additional unique hits across all custodial documents and 213,970 additional unique hits across all custodial emails (including families), instant messages, and text messages. Review of these documents would be unduly burdensome and grossly disproportionate to the needs of the case, particularly in light of the more than 250,000 documents (comprising more than 3,618,000 pages of documents) already produced by the VEREIT Defendants.

The unduly burdensome and disproportionate nature of Plaintiffs' proposed additional search terms is underscored by the fact that Plaintiffs have already received a combined total of 316,111 documents hitting on these very same search terms from the VEREIT Defendants and the ARC Defendants (184,179 documents from the VEREIT Defendants and 131,932 documents from the ARC Defendants). Note, in particular, that Plaintiffs have already received from the VEREIT Defendants and the ARC Defendants over 110,000 documents—

---

[1] The hit counts for each search term are subject to the limitations set forth in your proposal, inclusive of document families, and exclude documents previously produced or withheld as privileged in connection with productions to regulators or productions in the SDNY actions (and accordingly, this action). Searches corresponding to search nos. 1 through 8 in Appendix A to your letter also exclude all documents reviewed in connection with the SDNY actions. Accordingly, a document that was previously reviewed in the SDNY actions and marked non-responsive would be excluded from a search corresponding to search nos. 1 through 8 in Appendix A to your letter, but not excluded from a search corresponding to search nos. 9 through 21 in Appendix A to your letter. This differentiation is appropriate because search nos. 9 through 21 in Appendix A to your letter target documents that were not the subject of document requests in the SDNY actions, and thus may have been marked non-responsive in prior review. Each search was run across all previously-agreed custodians, for the time period February 13, 2012 through March 31, 2015, except where otherwise indicated in Appendix A to your letter.

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 3

without even including families—containing the search term "Cole".[2]  The number of documents already produced by the VEREIT Defendants and the ARC Defendants that hit on each of Plaintiffs' proposed additional search terms are set forth in the table below.

In sum, Plaintiffs have not come close to justifying the need for the proposed additional search terms within the framework of Rule 26 of the Federal Rules of Civil Procedure. Nonetheless, in an effort to reach a compromise and obtain closure on this issue, the VEREIT Defendants would be willing to perform certain searches, as indicated in the column labeled "VEREIT Defendants' Position" in the table below, only on the condition that Plaintiffs agree that these searches would fully satisfy their requests for additional searches.  Green cells in the table indicate that the VEREIT Defendants are willing to adopt a version of Plaintiffs' proposed search subject to Plaintiffs' agreement that the VEREIT Defendants' overall proposed compromise is acceptable.  Orange cells indicate that the VEREIT Defendants are willing to review documents responsive to a variation of Plaintiffs' proposed search subject to such an agreement.

[*Table appears on the next page.*]

---

[2] Specifically, Plaintiffs have received 113,545 documents (not including families) containing the search term "Cole", including 75,871 from the VEREIT Defendants and 37,674 from the ARC Defendants.

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 4

| Search # | Search String | "Hits" on All Custodial Documents | "Hits" on Custodial Emails, Instant Messages and Text Messages | "Hits" on Documents Already Produced by VEREIT and ARC Defendants [3] | VEREIT Defendants' Position |
|---|---|---|---|---|---|
| 1 | (Accounting or GAAP or Audit or "Financial Reporting") w/15 (fraud* or conceal* or fals* or lie or unlawful or unethical or erroneous or manipulate* or decept* or mistake* or wrong or improp* or disaster or terrible or "red flag" or incorrect or violat* or misclassif* or overstat* or understat* or non-compliant or inappropriate) | 9,385 | 8,778 | 21,923 | The VEREIT Defendants will not perform this search. |
| 2 | previously w/2 issued w/3 financial* | 7,288 | 7,007 | 19,840 | The VEREIT Defendants will not perform this search. |
| 3 | "outperformance plan" or "outperformance plan" or OPP | 4,859 | 4,639 | 68,506 | The VEREIT Defendants will not perform this search. |
| 4 | equity w/3 incentive* | 10,850 | 10,402 | 31,445 | The VEREIT Defendants will not perform this search. |
| 5 | internal w/3 control* | 43,286 | 41,866 | 57,407 | The VEREIT Defendants will not perform this search. |
| 6 | material w/3 weakness* | 10,439 | 10,111 | 24,064 | The VEREIT Defendants will not perform this search. |
| 7 | "audit opinion" | 1,047 | 981 | 3,359 | The VEREIT Defendants will not perform this search. |
| 8 | whistleblower or "code of conduct" | 7,061 | 6,960 | 9,390 | The VEREIT Defendants will not perform this search. |

---

[3] This column is not limited by the time periods or custodians specified in your proposal.

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 5

| | | | | | |
|---|---|---|---|---|---|
| 9 | (Cole* or CCPT) w/50 (fraud* or conceal* or fals* or lie or unlawful or illegal or unethical or erroneous or manipulate* or decept* or mistake* or improper* or disaster or terrible or "red flag" or incorrect or violat* or missclassif* or overstat* or understat* or non-compliant or inappropriate or index or mutual* or Vanguard or "net lease" or AFFO or FFO or income or multipl* or earning or fee or OPP or outperformance or bonus or incentive or gross or net or "per share" or GAAP or accounting or reporting or liab* or expos* or disclos* or guid* or compensate* or benefit or analys* or SEC or overstate* or understate* or control* or engineer* or Arizona or AZ or Scottsdale or Camelback) | 59,627 | 57,426 | 190,958 | The VEREIT Defendants would be willing to perform a modified search, subject to the limitations set forth in your proposal, as follows: (Cole* or CCPT) w/10 (fraud* or conceal* or fals* or lie or unlawful or illegal or unethical or erroneous or manipulate* or decept* or mistake* or improper* or disaster or terrible or "red flag" or incorrect or violat* or missclassif* or overstat* or understat* or non-compliant or inappropriate) |
| 10 | Arizona or AZ or Phoenix or Scottsdale or Camelback | 55,932 | 54,395 | 170,954 | The VEREIT Defendants will not perform this search. |
| 11 | (Arizona or AZ or Phoenix or Scottsdale or Camelback) and (10-Q or 10Q or 10-K or 10K or "financial statement*" or SOX or "financial results" or "quarterly results") | 49,798 | 47,812 | 77,632 | The VEREIT Defendants will not perform this search. |
| 12 | Arizona or AZ or Phoenix or Scottsdale or Camelback | 16,094 | 16,094 | 170,954 [4] | The VEREIT Defendants will not perform this search. |
| 13 | VFTC* | 15 | 11 | 0 | The VEREIT Defendants would be willing to perform this search across all custodial documents. |

_____
[4] Across all documents, not just calendar entries.

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 6

| 14 | Vanguard | 126 | 126 | 16,992 | The VEREIT Defendants would be willing to perform this search pursuant to the limitations set forth in your proposal. |
|----|----------|-----|-----|--------|------|
| 15 | "Vanguard REIT" | 522 | 510 | 910 | The VEREIT Defendants would be willing to perform this search across all custodial documents. |
| 16 | Vanguard and (index* or indices) | 6,379 | 6,220 | 5,576 | The VEREIT Defendants would be willing to perform a modified search as follows: Vanguard /10 (index* or indices) and [@arcpreit.com or @arlcap.com within "from" field in email] |
| 17 | @cole! | 547 | 547 | 220,889 | The VEREIT Defendants would be willing to perform this search pursuant to the limitations set forth in your proposal. |
| 18 | Camel or Geronimo or "Windy City" or "Project Chicago" | 13,716 | 13,362 | 18,338 | The VEREIT Defendants would be willing to perform a modified search, subject to the limitations set forth in your proposal, as follows: "Project Camel" or Geronimo or "Windy City" or "Project Chicago" |
| 19 | @gs* or @barclays* | 5,227 | 5,227 | 143,747 | The VEREIT Defendants will not perform this search. |
| 20 | (ARCP or "American Realty") w/20 index* | 28,544 | 27,463 | 55,729 | The VEREIT Defendants will not perform this search. |

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 7

| 21 | "financial engineering" | 15,584 | 15,573 | 458 | The VEREIT Defendants would be willing to perform a modified search as follows: "financial engineering" and not (dwight /2 grant)[5] |
|---|---|---|---|---|---|
| | **TOTALS** | 219,627 | 213,970 | 316,111 | |

---

[5] One of the contacts in Ms. McAlister's Microsoft Outlook calendar, Dwight Grant, Ph.D., has the title of "Managing Director, Financial Engineering Services" at Duff and Phelps, LLC, and triggers over 15,000 false hits.  The VEREIT Defendants' proposed compromise search is designed to remove documents hitting on Mr. Grant's title.

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 8

<u>Plaintiffs' Second & Third Sets of Document Requests</u>

In your December 28, 2017 letter, you state that the VEREIT Defendants'
responses and objections to Plaintiffs' document requests "fail to specify the extent to which
[they] will produce documents to Plaintiffs."[6]  You request that the VEREIT Defendants state
their position "regarding what documents they are willing to produce in connection with any
additional review based on the additional proposed search terms," and you request that the
VEREIT Defendants "explain the criteria [they] used to identify responsive documents
previously, so that [Plaintiffs] can evaluate that criteria in connection with our requests."

As an initial matter, the VEREIT Defendants disagree with your assertion that
their responses and objections to Plaintiffs' document requests "fail to specify the extent to
which [they] will produce documents to Plaintiffs."  But at bottom, the VEREIT Defendants'
position regarding what they are willing to produce is as follows:  For document requests for
which the VEREIT Defendants agreed to meet-and-confer, the VEREIT Defendants would be
willing to review documents that hit on search terms that result in a review population that is not
unduly burdensome and disproportionate to the needs of the case, and then to produce any such
documents that are responsive to those document requests and not privileged.

We do not understand your request that we "explain the criteria [the VEREIT
Defendants] used to identify responsive documents previously."  As a general matter, if
documents hit on agreed-upon search terms in the SDNY Actions, the VEREIT Defendants
reviewed those documents to determine whether they were responsive to the SDNY Plaintiffs'
document requests and whether they were privileged.  We do not otherwise know what
information you are seeking by asking that we "explain the criteria [the VEREIT Defendants]
used to identify responsive documents previously," nor do we acknowledge any obligation to
provide such information.

<u>Custodians</u>

During our December 21, 2017 meet-and-confer, Plaintiffs asked whether the
VEREIT Defendants would agree to include Gavin Brandon as a custodian in exchange for
Plaintiffs including Matthew Walker as a custodian.  As explained in our April 21, 2017 letter,
most of Mr. Brandon's pre-October 28, 2014 custodial documents will be irrelevant and
reviewing them would be disproportionate to the needs of the case because from the time that
Mr. Brandon joined ARCP upon the closing of the Cole merger through approximately October
28, 2014, Mr. Brandon held positions within the Private Capital Markets segment for which Cole
Capital was the sponsor.  Additionally, the VEREIT Defendants have already produced

---

[6] Also in your December 28, 2017 letter, you state that you "were prepared to meet and confer on December 21
regarding each of those requests, but Mr. Ohring stated that he instead wanted to consider our position further."
That assertion is not correct.  As I indicated during the meet-and-confer call, the VEREIT Defendants were prepared
to go through the requests one-by-one, but all parties on the call agreed that such an approach was not necessary and
that instead the dispute could be addressed by the VEREIT Defendants clarifying the extent to which they were
producing documents on a general basis.

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 9

approximately 7,744 emails sent or received by Mr. Brandon (14,380 total documents when including families).

         Because Plaintiffs have already received a large volume of Mr. Brandon's documents, and considering the limited relevance and undue burden of reviewing Mr. Brandon's documents prior to October 28, 2014, the VEREIT Defendants would be willing to add Mr. Brandon as a custodian for de-duplicated documents hitting on the search terms set forth below for the date range of October 28, 2014 through March 31, 2015, provided that (1) Plaintiffs agree that these searches would fully satisfy their requests for searches for Mr. Brandon, and (2) Plaintiffs agree to add Mr. Walker as a custodian and to use the same search terms set forth in your October 19, 2017 letter, and for a date range consistent with that used for Plaintiffs' other custodians.

| Search # | Search Term |
|---|---|
| 1 | AFFO or "adjusted funds from operations" |
| 2 | ("Non-controlling interest*" or "noncontrolling interest*" or NCI or NCIs) w/10 (2014 or 2013 or 2012 or previous*) |
| 3 | (Accounting or GAAP or Audit or "Financial Reporting") w/10 (fraud* OR conceal* OR fals* OR lie OR unlawful OR unethical OR error* OR erroneous OR manipulate* OR decept* OR mistake* OR wrong OR improp* OR disaster OR terrible OR "red flag" OR incorrect OR violat* OR misclassif* OR overstat* OR understat* OR inflat* OR non-compliant OR inappropriate) |
| 4 | SOX w/5 certif* or sarb* |
| 5 | "Audit opinion*" |
| 6 | "Securities violations" or "securities fraud" or "intentionally false" or "intentionally not corrected" or (intentional* w/3 error*) or "bad judgment" |
| 7 | (Schorsch or McAlister or Block or Kay) w/10 (liar or lies or lied or fraud* or unethical* or ethic* or fuck* or conceal* or shit* or crap* or sham or prison or jail or indict* or retaliat*) |

<u>Documents of Former Cole Employees</u>

         In your December 18, 2017 letter, you requested—for the first time in this litigation, and nearly fourteen months after the commencement of discovery—a list of former Cole employees for whom the VEREIT Defendants have retained documents, and you asked whether Christopher Cole's and Marc Nemer's documents have been collected and produced. Your question regarding Mr. Cole and Mr. Nemer is surprising, given that (i) the VEREIT Defendants identified the custodians for whom they were producing documents more than a year ago in Ms. Apps' December 2, 2016 letter, (ii) Mr. Cole and Mr. Nemer were not on that list, and (iii) Plaintiffs never made any request that Mr. Cole or Mr. Nemer be added. Your statement in your January 5, 2018 letter that the VEREIT Defendants "have not agreed to include Mr. Cole as

Mr. Beko O. Reblitz-Richardson, Esq.
January 9, 2018
Page 10

a custodian" is misleading at best, given that Plaintiffs have never requested that the VEREIT Defendants add Mr. Cole as a custodian.

To the extent that Plaintiffs are suggesting that the VEREIT Defendants should add Mr. Cole as a custodian, the suggestion is not only untimely, but Plaintiffs also have provided no justification for why Mr. Cole should be included as a custodian, particularly in light of the massive document production by the VEREIT Defendants in this litigation.  The mere fact that the SDNY plaintiffs noticed Mr. Cole for a deposition is not a sufficient basis for the VEREIT Defendants to be required to add him as a custodian.  Indeed, the SDNY plaintiffs have identified 57 individuals and entities that they wish to depose, and the notion that Defendants should be required to produce custodial documents for every single one of those individuals would contravene the proportionality requirements of Rule 26.  Notably, the SDNY plaintiffs seem to agree, as they never have requested that Mr. Cole be included as a custodian despite noticing his deposition.  The VEREIT Defendants therefore decline Plaintiffs' request for a list of Cole employees for whom the VEREIT Defendants have retained documents, which is nothing more than a transparent, late-in-the-game attempt to procure the review and production of tens of thousands of additional documents without adequate justification.

            Additional Issues

We will write separately regarding additional issues discussed in the parties' recent letters and during our meet-and-confers.

                        Sincerely,

                        Jonathan Ohring

                        Jonathan Ohring

# EXHIBIT 14
# REDACTED

# MILBANK, TWEED, HADLEY & McCLOY LLP

**28 LIBERTY STREET**

**NEW YORK, NY 10005**

————————

212-530-5000

FAX: 212-530-5219

Thomas A. Quinn
DIRECT DIAL NUMBER
212-530-5265
E-MAIL: TQuinn@milbank.com

May 21, 2018

**CONFIDENTIAL**

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

**VIA EMAIL**

Mr. Beko O. Reblitz-Richardson, Esq.
Boies, Schiller & Flexner LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612

> Re:   *Vanguard Specialized Funds, et al. v. VEREIT, Inc., et al.*,
>        No. 2:15-cv-02157-ROS

Dear Mr. Reblitz-Richardson:

We write on behalf of Defendants VEREIT, Inc. and VEREIT Operating Partnership, L.P. (collectively, the "VEREIT Defendants") to follow up on our recent correspondence concerning Plaintiffs' requested additional document discovery and our telephonic meet-and-confer held on May 14, 2018.

**Plaintiffs' Request for Additional Document Custodians**

Cole Executives

On December 20, 2016, the VEREIT Defendants provided Plaintiffs with a list of 24 individuals for whom the VEREIT Defendants would be producing custodial documents (referred to herein as "custodians").[1]  On April 10, 2018—more than 15 months later—Plaintiffs

---

[1] The VEREIT Defendants subsequently added two more custodians (William Gribbin and Kevin Siko), bringing the total number of custodians to 26.

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 2

sent a letter requesting, for the first time, that the VEREIT Defendants add five former executives of Cole Real Estate Investments, Inc. ("Cole")—Christopher Cole, Marc Nemer, Jeffrey C. Holland, Kirk McAllaster, and Stephan Keller—as document custodians and "promptly produce their documents." Plaintiffs proposed certain search terms while stating that they were reserving the right to request additional search terms.

The VEREIT Defendants promptly collected custodial documents for these five former Cole executives and applied Plaintiffs' proposed search terms and date ranges for the purpose of assessing the burden of reviewing and producing these individuals' custodial documents. The VEREIT Defendants also consulted with counsel for the former Cole executives regarding their respective roles in the ARCP-Cole merger, given that Plaintiffs had asserted that these individuals' documents were relevant based on Plaintiffs' expectation that they would have had some role in the merger.

Plaintiffs' proposed search terms, when applied to all five former Cole executives for the requested time period of January 1, 2012 through March 31, 2015, de-duplicated, and excluding all documents already produced in this action, all documents withheld for privilege, and all documents produced pursuant to the F.R.E. 502(d)-(e) Consent Order, would result in the review of 31,924 additional documents, which is unduly burdensome and disproportionate to the needs of the case for the reasons stated during our telephonic meet-and-confer held on May 14, 2018. Accordingly, we proposed a compromise with respect to searches of the former Cole executives' documents. First, we proposed amended search terms designed to target relevant documents and eliminate "false positive" hits, namely:

1.     eliminating false hits on searches designed to target documents relating to the Company's former CFO, Brian Block, by changing the search term "block" to (brian w/3 block), and false hits related to former employee Michael Reiter by changing the search term "reiter" to (michael w/3 reiter);

2.     removing "@arlcap or @rcscapital or @arcpreit" as a search term because the search would capture every communication with ARCP or RCS employees over the designated time period, regardless of subject matter, and the VEREIT Defendants (along with the AR Capital Defendants) have already applied search terms designed to target relevant documents from ARCP custodians;

3.     modifying the term "Chicago" to "Project Chicago" to target documents related to a code name used for the Cole merger, rather than any mention of the city of Chicago in the documents of employees of a real estate company; and

4.     adding a condition that searches for "Vanguard or VFTC" remove hits for "Vanguard Car" to eliminate false positives resulting from one of Cole's tenants, "Vanguard Car Rental."

Second, we proposed two separate date ranges, designed to target communications during the specific periods in which ARCP and Cole were engaged in

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 3

discussions regarding a potential merger, as follows: (1) January 15, 2013 – April 15, 2013, targeting documents relating to ARCP's attempted acquisition of Cole's predecessor, Cole Capital Property Trust III, Inc., and (2) August 1, 2013 – November 1, 2013, targeting documents relating to discussions leading up to and shortly following the announcement of the ARCP-Cole merger agreement in October 2013.

   Third, we proposed that the VEREIT Defendants would produce custodial documents of Messrs. Cole and Nemer (but not the other three former Cole executives) hitting on the aforementioned search terms for the date ranges set forth above, without prejudice to Plaintiffs seeking custodial documents of the remaining three individuals and the VEREIT Defendants' right to decline such production on the grounds that additional productions were unduly burdensome in comparison with the relevance of the documents. We explained that the proposal was based on the VEREIT Defendants' understanding from counsel for the Cole executives that of the five former Cole executives, Messrs. Cole and Nemer would have the most relevant documents related to the ARCP-Cole merger.

   By email dated May 15, 2018, Plaintiffs stated that they would accept the VEREIT Defendants' proposal, subject to the following conditions:

1.  Plaintiffs would reserve the right to request that the VEREIT Defendants run additional searches for Messrs. Cole and Nemer, and the VEREIT Defendants would agree that Plaintiffs' acceptance of the VEREIT Defendants' proposal would not prejudice their right to request such additional searches.

2.  Plaintiffs would agree that their acceptance of this proposal would not prejudice the VEREIT Defendants' right to oppose any request by Plaintiffs for any additional searches.

3.  The VEREIT Defendants would begin review and production of Mr. Cole's and Mr. Nemer's documents, and would provide a written estimate of when the VEREIT Defendants will complete its production of these documents.

4.  Simultaneously with No. 3, the VEREIT Defendants would send the hit counts for Messrs. Holland, Keller, and McAllaster based on the date ranges and search terms that Plaintiffs have proposed for Messrs. Cole and Nemer.

   We hereby confirm that the VEREIT Defendants agree to Plaintiffs' conditions. The VEREIT Defendants will begin reviewing Mr. Cole's and Mr. Nemer's documents pursuant to the above-described proposal promptly, and expect to complete production in or around the next four weeks, subject to any unexpected delays that may arise with respect to the review and production.

   Per your request, we also applied the above-described proposed search terms and date ranges to the documents of Messrs. Holland, Keller, and McAllaster. They result in 6,117 document hits, totaling 9,564 document hits with families. Our understanding is that Plaintiffs

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 4

will withdraw their request for the VEREIT Defendants to review and produce these individuals'
documents at this time, subject to renewal of the request should the need arise, at which time the
parties would meet and confer.

<u>Gavin Brandon</u>

By letter dated April 14, 2017, Plaintiffs requested that the VEREIT Defendants
add Gavin Brandon as a document custodian.  In our April 21, 2017 letter, we explained that
many of Mr. Brandon's documents would be irrelevant and review and production would be disproportionate to
the needs of the case because from the time that Mr. Brandon joined ARCP upon the closing of
the Cole merger on February 7, 2014 through approximately October 28, 2014, Mr. Brandon, a
former Cole employee, held positions exclusively within the Private Capital Management
("<u>PCM</u>") segment for which Cole Capital was the sponsor.[2]  The PCM segment—which
represented the former Cole non-traded REIT business—***was not the subject of any changes to
financial statements or operations identified in the March 2, 2015 restatement, and is not the
subject of the allegations in the Complaint***.  Moreover, Mr. Brandon was not involved in the
negotiations for the ARCP-Cole merger.  We can confirm that Mr. Brandon ***was not even aware
of the merger*** until it was publicly announced on October 23, 2013.

Nor have you offered any valid basis on which to produce documents for Mr.
Brandon prior to October 28, 2014.  In your April 24, 2018 letter, you claimed that Mr.
Brandon's pre-October 28, 2014 documents were relevant based on your assertion that, from the
documents produced in the case, it is "clear that Mr. Brandon was involved with the ARCP-Cole
merger planning and integration."  However, none of the documents you cite in your letter
demonstrate that Mr. Brandon had any meaningful role in ARCP-Cole merger planning and
integration in a way that is relevant to Plaintiffs' claims.  Rather, the documents show that Mr.
Brandon was primarily a passive recipient, along with many other individuals, of emails or
invitations to large group meetings regarding the integration process.  To the extent he was
involved in integration, ███████████████████████████████████████████████████
████████████████████████████████████████████████████ *see*
ARC_CIV_SDNY_0791766, and Plaintiffs have not explained why ███████████████
██████████████████████████████████████  Moreover, ***none*** of the documents
cited in your letter pre-date December 3, 2013—several months after the announcement of the
Cole-ARCP merger—rendering any request for documents from before that time period
completely unjustified.

Similarly, the justification offered in your April 10, 2018 letter—that a document
introduced at Jessica Estrada's deposition (Ex. 271, GT-ARCP DOC_00200922) purportedly

---

[2] From the time of the Cole merger through approximately September 12, 2014, Mr. Brandon was Senior Vice
President and Principal Accounting Officer of ARCP's PCM segment, and from approximately September 12, 2014
through approximately October 28, 2014, he was Chief Financial Officer and Treasurer, Managed Office and
Industrial REITs, Private Capital Markets, and his duties and responsibilities related solely to the former Cole
business.  On October 28, 2014, he was appointed Chief Accounting Officer of ARCP.  *See* ARCP, Current Report
(Form 8-K) (Oct. 29, 2014).

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 5

shows that ███████████████████████████████████████████████ provides no reason for the VEREIT Defendants to produce Mr. Brandon's documents prior to October 28, 2014.  The document you identified is from *January 2015*—well after Mr. Brandon became Chief Accounting Officer—and is related to his work on the Restatement.  The document provides no basis for producing Mr. Brandon's pre-October 28, 2014 documents given that during this earlier period he worked within the PCM segment and had no involvement in ARCP's internal investigation, which was conducted by ARCP's Audit Committee with the assistance of outside counsel and forensic accounting experts.

During our meet-and-confer on May 14, 2018, we reiterated the VEREIT Defendants' proposal to review 10,715 of Mr. Brandon's documents from October 28, 2014 through March 31, 2015.  This date range is designed to cover the time period from when Mr. Brandon stepped into the role of Chief Accounting Officer of ARCP on October 28, 2014, through the remainder of the internal investigation and Mr. Brandon's work on the Company's Restatements, and appropriately does not include documents from before this time period when Mr. Brandon's role was exclusively within the Cole business.  We understand from your letter dated May 17, 2018 that you have rejected this proposal.

As we have repeatedly explained in our prior correspondence, including during our meet-and-confer, review and production of Mr. Brandon's documents dated prior to October 28, 2014 would be unduly burdensome and disproportionate to the needs of the case due to the limited (if any) relevance of those documents.  If the VEREIT Defendants were to apply the search terms you propose for Mr. Brandon for the period you propose (January 1, 2013 through March 31, 2015), it would result in more than 26,000 additional documents (comprising over 315,000 pages) for review.[3]  For comparison purposes, the VEREIT Defendants have already produced 263,990 documents comprising *3.9 million pages*, which covered 26 custodians.  Your proposal would require the VEREIT Defendants to review nearly 10 percent of the amount already produced for a single custodian who is not alleged to have had any involvement with any of the alleged misrepresentations in this case, and whose only arguable relevance to the case is limited to his involvement in the preparation of the Company's Restatement, as to which Plaintiffs have alleged no misstatements.  In light of the fact that the VEREIT Defendants have already produced 15,401 documents on which Mr. Brandon was included, and the only documents you have identified as supporting Plaintiffs' request for his documents relate to his peripheral involvement in the mechanical process of integrating the two businesses after the announcement of the merger, insisting that the VEREIT Defendants review such an enormous number of documents is unreasonable.

---

[3] Running Plaintiffs' proposed search terms across Mr. Brandon's custodial documents from November 1, 2013 through March 31, 2015 results in 26,059 new document hits.  The VEREIT Defendants have not yet had the opportunity to run Plaintiffs' proposed search terms over Mr. Brandon's custodial documents from prior to November 1, 2013.  However, the VEREIT Defendants expect that the total hits may be significantly higher when including that earlier period.

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 6

**Plaintiffs' Request for Additional Search Terms Across All Custodians**

        Plaintiffs have requested that the VEREIT Defendants review and produce documents hitting on additional search terms beyond those already used in the production of nearly 4 million pages of documents to Plaintiffs.  The VEREIT Defendants have repeatedly sought to reach a reasonable compromise on this issue, but Plaintiffs' proposed searches would result in the VEREIT Defendants having to review hundreds of thousands of additional documents.

        In Plaintiffs' most recent proposal, from your letter dated May 2, 2018, Plaintiffs requested that the VEREIT Defendants review and produce documents for all 26 previously-agreed custodians pursuant to 19 additional search terms.  Review of those documents would result in the review of ***155,985 additional documents (totaling 2,160,303 pages)*** beyond the 263,990 documents (totaling 3,931,271 pages) already produced to Plaintiffs, as shown in the below chart.  In light of the VEREIT Defendants' extensive prior productions, Plaintiffs' request that the VEREIT Defendants review 155,985 new documents is both unduly burdensome and grossly disproportionate to the needs of the case, as discussed in more detail below.

        Plaintiffs' overly broad search terms result in the following number of hits:

| Search # | Search Term | Documents with hits | Documents with hits, including family |
|---|---|---|---|
| | **Category 1 - Arizona** | | |
| 1 | Arizona or AZ or Phoenix or Scottsdale or Camelback | 25,595 | 52,039 |
| 2 | (Arizona or AZ or Phoenix or Scottsdale or Camelback) and (10-Q or 10Q or 10-K or 10K or "financial statement*" or SOX or "financial results" or "quarterly results") | 22,133 | 43,696 |
| 3 | Arizona or AZ or Phoenix or Scottsdale or Camelback [in calendars or schedules] | 8,552 | 15,777 |
| | **Category 2 – Cole Merger** | | |
| 4 | (Cole* or CCPT) w/25 (fraud* or conceal* or fals* or lie or unlawful or illegal or unethical or erroneous or manipulate* or decept* or mistake* or improper* or disaster or terrible or "red flag" or incorrect or violat* or missclassif* or overstat* or understat* or non-compliant or inappropriate) | 1,550 | 3,383 |
| 5 | @cole! | 527 | 699 |
| 6 | "Project Camel" or Geronimo or "Windy City" or "Project Chicago" | 2,731 | 4,851 |
| | **Category 3 – Vanguard Communications** | | |
| 7 | VFTC* | 9 | 15 |
| 8 | Vanguard | 126 | 134 |
| 9 | "Vanguard REIT" | 294 | 482 |

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 7

| | | | |
|---|---|---|---|
| 10 | Vanguard and (index* or indices) | 2,511 | 5,662 |
| **Category 4 – Other/AR Capital** | | | |
| 11 | (Accounting or GAAP or Audit or "Financial Reporting") w/15 (fraud* or conceal* or fals* or lie or unlawful or unethical or erroneous or manipulate* or decept* or mistake* or wrong or improp* or disaster or terrible or "red flag" or incorrect or violat* or misclassif* or overstat* or understat* or non-compliant or inappropriate) | 4,054 | 9,385 |
| 12 | previously w/2 issued w/3 financial* | 3,384 | 7,288 |
| 13 | "outperformance plan" or "outperformance plan" or OPP | 2,188 | 4,859 |
| 14 | equity w/3 incentive* | 5,107 | 10,850 |
| 15 | internal w/3 control* | 21,992 | 43,286 |
| 16 | material w/3 weakness* | 4,254 | 10,439 |
| 17 | "audit opinion" | 448 | 1,047 |
| 18 | whistleblower or "code of conduct" | 2,873 | 7,061 |
| 19 | "financial engineering" AND NOT (dwight w/2 grant) | 150 | 330 |
| | **TOTALS** | **82,242** | **155,985** |

During our May 14, 2018 meet-and-confer, we informed you that the VEREIT Defendants were willing to review and produce documents hitting on search terms in Category 3 (searches 7, 8, 9, and 10), which target documents unique to Vanguard, with the following proposed modification to search 10:

Vanguard /10 (index* or indices) and [@arcpreit.com or @arlcap.com within "from" field in emails]

This reasonable modification is designed to target emails in which ARCP employees were discussing Vanguard and to eliminate false positive document hits where ARCP employees simply received generic mass-emails mentioning Vanguard.

The remainder of your proposed search terms, however, are unduly burdensome and grossly disproportionate to the needs of this case.

*Category 1.* The proposed search terms in Category 1, regarding Arizona, are vastly overbroad. Plaintiffs propose terms such as "Arizona", "Phoenix", "AZ", "Scottsdale" and "Camelback" that are guaranteed to pull in a tremendous number of false hits given that (1) VEREIT is a real estate company which owned, and discussed, properties all over the country, including in Arizona, and (2) emails with any Phoenix-based Cole or VEREIT employee are pulled into the search results via the address line in those individuals' email signature blocks. You have claimed that Plaintiffs need these documents to identify contacts with Arizona; however, a far more efficient way of obtaining that information is to ask the relevant witnesses where relevant conduct occurred. This is precisely what Plaintiffs have done in every deposition to date.

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 8

   **Category 2.** Plaintiffs have failed to offer any justifiable rationale for including the proposed search terms in Category 2. Plaintiffs have claimed that those search terms are designed to pull in documents relating to the Cole merger that Plaintiffs claim makes their action "unique." However, the plaintiffs in the SDNY Actions assert the same claims in connection with the Cole merger—indeed, the plaintiffs there include former shareholders of Cole whose shares were converted to ARCP shares in connection with the merger—and have not requested that the VEREIT Defendants run the broad search terms requested by Plaintiffs here. Moreover, while you claim in your May 2, 2018 letter that Plaintiffs' searches "target[] communications with Cole and key documents concerning the Cole transaction," Plaintiffs' proposed search terms are grossly overbroad and likely to pull in wholly irrelevant documents, including any reference to the merger code names (Search 6), any communication with a Cole representative (Search 5), and other documents hitting on often-used general terms (Search 4). Plaintiffs have provided no justification (other than mere speculation) for why these search terms are necessary to prove their claims.

   **Category 4.** The proposed search terms in Category 4 are general search terms that seek documents relating to various accounting issues. Unlike Plaintiffs' proposed search terms in Categories 1, 2, and 3, these proposed search terms have nothing to do with the purportedly "unique" nature of this action. These search terms are completely unnecessary. They seek documents relating to the same alleged accounting issues that are at issue in the SDNY actions, and the SDNY plaintiffs have not sought to have the VEREIT Defendants add these overly broad and duplicative terms. Plaintiffs' proposed search terms in Category 4 would result in tens of thousands of additional document hits, rendering them unduly burdensome and grossly disproportionate to the needs of the case. Plaintiffs have asserted that the VEREIT Defendants should nevertheless add these search terms because the AR Capital Defendants have utilized these search terms in their document productions. But there is no requirement that every defendant use the same search terms (just as the AR Capital Defendants did not run all of the search terms used by the VEREIT Defendants). Indeed, whether these search terms were employed by other Defendants is completely irrelevant to assessing whether review of documents responsive to these terms would be unduly burdensome on the VEREIT Defendants and disproportionate to the needs of the case.

   Therefore, the VEREIT Defendants are prepared to review and produce documents responsive to the search terms in Category 3, subject to our proposed modification set forth above, but the remaining searches are unduly burdensome and grossly disproportionate to the needs of this case.

## Responses and Objections

   During the May 14, 2018 meet-and-confer, we stated that amending the VEREIT Defendants' responses and objections to Plaintiffs' document requests would be unnecessary and that we can resolve any questions that Plaintiffs may have concerning the contents of any future document production responsive to those document requests by offering a written representation regarding the contents of any such productions. In your letter dated May 17, 2018, you indicated

**CONFIDENTIAL**

Mr. Beko O. Reblitz-Richardson, Esq.
May 21, 2018
Page 9

that Plaintiffs would like to continue to meet and confer on this issue. The VEREIT Defendants are available to do so.

Sincerely,

Thomas A. Quinn

CONFIDENTIAL